IMANAKA ASATO, LLLC

STEVEN K. S. CHUNG          1751
CHANELLE M. C. FUJIMOTO     8859
MICHAEL L. IOSUA            9851
745 Fort Street Mall, 17th Floor
Honolulu, Hawai`i 96813
Telephone No.:    (808) 521-9500
Facsimile No.:    (808) 541-9050

Attorneys for Plaintiffs
RUDY AKONI GALIMA and
ROXANA BEATRIZ GALIMA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| RUDY AKONI GALIMA and ROXANA BEATRIZ GALIMA | ) ) ) | CIVIL NO. 16-00023 LEK-KSC |
| Plaintiffs, | ) ) ) ) ) ) ) | **PLAINTIFFS RUDY AKONI GALIMA AND ROXANA BEATRIZ GALIMA'S MEMORANDUM IN OPPOSITION TO DEFENDANT** |
| vs. | ) ) ) ) ) ) | **BRYSON CHOW'S MOTION TO DISMISS [DKT. 34] SECOND AMENDED COMPLAINT, FILED OCTOBER 31, 2016;** |
| ASSOCIATION OF APARTMENT OWNERS OF PALM COURT, by and through its Board of Directors; and BRYSON CHOW, | ) ) ) ) ) | **DECLARATION OF STEVEN K. S. CHUNG, EXHIBITS "A"- "B"; CERTIFICATE OF SERVICE** |
| | ) ) ) | Hearing Date: December 5, 2016 Time: 9:45 a.m. Judge: Honorable Leslie E. Kobayashi |
| Defendants. | ) ) ) ) | |
| | ) ) ) | Trial Judge: Leslie E. Kobayashi Trial Date: September 19, 2017 |
| | ) ) | Related to Doc. No. 56 |

**PLAINTIFFS RUDY AKONI GALIMA AND ROXANA BEATRIZ GALIMA'S MEMORANDUM  IN OPPOSITION TO DEFENDANT BRYSON CHOW'S MOTION TO DISMISS [DKT. 34] SECOND AMENDED COMPLAINT, FILED OCTOBER 31, 2016**

# TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................... 1

II.    BACKGROUND OF NONJUDICIAL FORECLOSURE ........................... 2

III.   ARGUMENT ................................................................................... 5

      A. AOAO was not required to use Part I ..................................... 5

         1. Part I Requires an Actual Mortgage to Function, and the AOAO Did Not Hold a Mortgage ................................................................... 5

         2. An AOAO could only use methods of foreclosure "authorized" by Chapter 667, such as Part II or 667-1 .................................................. 8

      B. Chow's interpretation creates due process issues which the Galima's interpretation avoids ............................................................... 11

      C. Subsequent legislative history is damning for Chow's interpretation 16

      D. Judge Chang did not confirm Chow's statutory analysis .................. 18

      E. Attorney liability for unfair and deceptive practices in foreclosure situations is not a settled question under Hawai`i law ...................... 19

         1. Attorney liability for unfair and deceptive practices in foreclosure situations is not a settled question under Hawai`i law....................19

         2. Attorneys are liable in other states for negligent misrepresentations and other deceptive acts to third parties................................. 21

      F. The Fair Debt Collection Practices Act Claim is Valid .................... 22

      G. This case presents a novel legal issue with no binding precedent, and the Court should Certify the Question rather Than Dismiss the Complaint ........................................................................... 24

IV.   CONCLUSION .............................................................................. 25

# TABLE OF AUTHORITIES

## SUPREME COURT CASES

*Heintz v. Jenkins*, 514 U.S. 291 (1995) ................................................ 23

*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 599 U.S. 573 (2010) 20

*Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350 (1991) .. 24

*Posadas v. Nat'l City Bank*, 296 U.S. 497 (1936) ................................. 14

## FEDERAL COURT CASES

*Apao v. Bank of N.Y.*, 324 F.3d 1091 (9th Cir. 2003) ......................... 12

*Barria v. Wells Fargo Bank*, No. 2:15-cv-01413-KJM-AC, 2016 U.S. Dist. LEXIS 15148 (E.D. Cal. Feb. 8, 2016) ................................................. 22

*Flores v. Shapiro & Kreisman*, 246 F. Supp. 2d 427 (E.D. Pa. 2002) ................ 20

*Harvey G. Ottovich Revocable Living Tr. Dated May 12, 2006 v. Wash. Mut., Inc.*, No. C 10-02842 WHA, 2010 U.S. Dist. LEXIS 99161
(N.D. Cal. Sept. 22, 2010) ................................................... 23

*Mangum v. Action Collection Serv., Inc.*, 575 F.3d 935 (9th Cir. 2009) ............. 23

*Natividad v. Wells Fargo Bank*, No. 3:12-cv-03646 JSC, 2013 U.S. Dist. LEXIS 74067 (N.D. Cal. May 24, 2013) ............................................... 23

*Turner v. Lerner, Sampson & Rothfuss*, 776 F. Supp. 2d 498
(N.D. Ohio 2011) ............................................................ 20

*Wallace v. Wash. Mut. Bank, F.A.*, 683 F.3d 323 (6th Cir. 2012) ....................... 20

## HAWAII STATE CASES

*Aames Funding Corp. v. Mores*, 107 Haw. 95, 110 P.3d 1042 (2005) ............ 14, 15

*Ben. Haw., Inc. v. Kida*, 96 Haw. 289, 30 P.3d 895 (2001) .................................. 10

*Cieri v. Leticia Query Realty*, 80 Haw. 54, 905 P.2d 29 (1995) .................... 19, 20

*Courbat v. Dahana Ranch, Inc.*, 111 Haw. 254, 262, 141
P.3d 427, 435 (2006) ........................................................ 22

*Ek v. Boggs*, 102 Haw. 289, 75 P.3d 1180 (2003) ......................................... 12

*Fought & Co. v. Steel Eng'g & Erection*, 87 Haw. 37, 951 P.2d 487 (1998) ....... 19

*Franks v. Honolulu*, 74 Haw. 328, 843 P.2d 668 (1993) ........................................ 5

*Fuller v. Pac. Med. Collections*, 78 Haw. 213, 891 P.2d 300 (App. Ct. 1995) .... 20

*Haole v. State*, 111 Haw. 144, 140 P.3d 377 (2006) ................................................ 6

*Haw. Med. Ass'n v. Haw. Med. Serv. Ass'n*, 113 Haw. 77, 148 P.3d 1179 (2006) 19

*KNG Corp. v. Kim*, 107 Haw. 73, 110 P.3d 397 (2005) ......................................... 12

*Kondaur Capital Corp. v. Matsuyoshi*, 136 Haw. 227,
361 P.3d 454 (2015) ................................................................................ 13, 21

*Lee v. HSBC Bank USA*, 121 Haw. 287, 218 P.3d 775 (2009) ............................. 13

*Matrix Fin. Servs. v. Campbell*, No. 24412, 2003 Haw. App. LEXIS 5
(App. Ct. Jan. 15, 2003) ...................................................................................... 12

*Richardson v. City & Cty. of Honolulu*, 76 Haw. 46, 868 P.2d 1193 (1994) ....... 14

*Santiago v. Tanaka*, 137 Haw. 137, 366 P.3d 612 (2015) ..................... 9, 10, 24

*State v. Kuuku*, 61 Haw. 79, 595 P.2d 291 (1979) .............................................. 14

*State v. McKnight*, 131 Haw. 379, 319 P.3d 298 (2013) ...................................... 6

*State v. Reis*, 115 Haw. 79, 165 P.3d 980 (2007) ................................................ 10

*Strouss v. Simmons*, 66 Haw. 32, 657 P.2d 1004 (1982) ...................................... 6

*U.S. Bank Nat'l Ass'n v. Ass'n of Apt. Owners*, 133 Haw. 512,
331 P.3d 490 (2014) ............................................................................................. 6

*Ulrich v. Sec. Inv. Co.*, 35 Haw. 158 (1939) ........................................... 20, 21, 22

*Wailuku Sugar Co. v. Dean*, 8 Haw. 108 (1890) .............................................. 21

## OTHER STATE CASES

*Biakanja v. Irving*, 320 P.2d 16, 19 (Cal. Sup. Ct. 1958) .................................... 22

*Clagett v. Dacy*, 420 A.2d 1285, 1289 (Md. App. 1980) .................................... 21

*Pelham v. Griesheimer*, 440 N.E.2d 96, 99 (Ill. Sup. Ct. 1982) .......................... 21

## HAWAII STATE STATUTES

Haw. Rev. Stat. § 1-14 ........................................................................................ 6

Haw. Rev. Stat. § 480-2(a) ................................................................................ 19

Haw. Rev. Stat. § 480-13(b)(1) ......................................................................... 19

Haw. Rev. Stat. § 506-1 ...................................................................................... 6

Haw. Rev. Stat. § 506-4 ...................................................................................... 7

Haw. Rev. Stat. § 507-5 .................................................... 7

Haw. Rev. Stat. § 514A-1.5 ............................................... 2

Haw. Rev. Stat. § 514A-15 ................................................ 6

Haw. Rev. Stat. § 514A-82 ................................................ 4

Haw. Rev. Stat. § 514A-82(b)(13) ....................... 4, 8, 9, 10, 11, 12, 13

Haw. Rev. Stat. § 514A-90 (1998) ................................. 3, 4

Haw. Rev. Stat. § 514A-90 (1999) ................... 4, 5, 7, 8, 9, 10, 11, 13

Haw. Rev. Stat. § 514A-90 (2016) ................................. 17

Haw. Rev. Stat. § 514B-21 ................................................ 2

Haw. Rev. Stat. § 514B-146 (2004) ............................... 5, 7

Haw. Rev. Stat. § 667-1 ........................................ 2, 3, 7, 8, 9

Haw. Rev. Stat. § 667-5   1, 2, 3, 4, 6, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 21, 23,
.................................................... 24, 25

Haw. Rev. Stat. § 667-10 ................................................. 2

Haw. Rev. Stat. § 667-21 ............................................... 2, 3

Haw. Rev. Stat. § 667-22(a)(7) ........................................ 3

Haw. Rev. Stat. § 667-22(b) ............................................ 3

Haw. Rev. Stat. § 667-22(e)(1) ........................................ 3

Haw. Rev. Stat. § 667-25 ................................................ 3

Haw. Rev. Stat. § 667-26 ................................................ 4

Haw. Rev. Stat. § 667-31(a) (1998) ................................. 4

Haw. Rev. Stat. § 667-34 (1998) ..................................... 4

Haw. Rev. Stat. § 667-38 ................................................ 4

Haw. Rev. Stat. § 667-40 ................................... 4, 5, 12, 13

Haw. Rev. Stat. § 667-50 ................................................ 2

Haw. Rev. Stat. § 667-91 ................................................ 5

Haw. Rev. Stat. § 667-92(c) ............................................ 5

Haw. Rev. Stat. § 667-92(e) ............................................ 5

Haw. Rev. Stat. § 667-92(f)(2) ........................................ 5

Haw. Rev. Stat. § 667-95(a) ............................................ 5

Haw. Rev. Stat. § 667-104 ................................................................ 24, 25

**OTHER**

Hawai`i Rules of Appellate Procedure, Rule 13 (2000) ..................................... 23

## I.   INTRODUCTION

Plaintiffs RUDY AKONI GALIMA and ROXANA BEATRIZ GALIMA ("Galimas" or Plaintiffs) file this memorandum in opposition to the motion to dismiss filed by Defendant Bryson Chow ("Chow" or Defendant).  Chow's motion to dismiss rests on interpretations of the relevant statutes which are not supported by Hawai`i precedent or the rules of statutory interpretation, and should therefore be denied.  The facts and law show that Chow, acting as the agent and instrumentality of Defendant Association of Apartment Owners of Palm Court (the "AOAO"), acted in a manner contrary to law and in contravention of his duties by impermissibly using a nonjudicial foreclosure process that could be used only when a mortgage explicitly contains a power of sale. Because this case rests on a point of state law with regard to which there may be no binding precedent, Plaintiffs request that the court certify this central issue to the Hawai`i Supreme Court.

The central issue in this case is whether Chow, acting as the agent for the AOAO, illegally used the nonjudicial foreclosure process set forth in Hawai'i Revised Statutes ("HRS") §667-5 ("Part I") to foreclose a lien for unpaid common expenses.  Before its repeal in 2012, Part I provided that only a mortgagee holding a mortgage containing a power of sale could use the nonjudicial foreclosure process contained therein.  Here, Chow and the AOAO were not mortgagees, nor did they hold a mortgage with a power of sale. Yet the publication notice provided by Chow falsely stated Defendants had the authority to foreclose under Part 1. If Defendants were not permitted to use the process set forth in Part I, then all actions

taken by them are void or voidable, and Plaintiffs are entitled to losses sustained, damages, emotional distress injuries, and restitution.[1]

## II. BACKGROUND OF NONJUDICIAL FORECLOSURES IN HAWAII

In October 2010, Chow, as the AOAO's agent, initiated a nonjudicial foreclosure pursuant to Part I to foreclose a lien for Galimas' unpaid common-area expenses. Condominium association ("association") foreclosures for unpaid common assessments ("assessments") are governed by several statutes with a complex interrelated history.

The authority of an association to foreclose its lien for unpaid assessments comes from the two condominium property acts, Chapters 514A and 514B of the *Hawai`i Revised Statutes* ("HRS"). Chapter 514A is applicable to condominiums created prior to July 1, 2006, while Chapter 514B applies to condominiums created after July 1, 2006. HRS § 514A-1.5, HRS § 514B-21. The foreclosures themselves are governed by HRS Chapter 667, which in 2010 consisted of Part I (HRS §§667-1 to 667-10) and Part II (HRS §§ 667-21 to 667-50). Because these statutes have been enacted piecemeal and repeatedly revised, a brief summary of their legislative history is provided below.

Part I was enacted in the 19th century, long before Hawai`i's statehood. Part I includes HRS § 667-1, allowing foreclosure by action, as well as HRS § 667-5 ("667-5"), a nonjudicial foreclosure process for mortgages containing a power of sale. By its terms, 667-5 could only be used "when a power of sale is contained in a mortgage." Section 667-5 required the foreclosing party to "give any notices and do all acts as are authorized or required by the power contained in the mortgage." It also required the mortgagee to "give notice of the … intention to foreclose the

---

[1] Plaintiffs seek to amend the SAC to assert restitution claims. Docket No. 43. That motion is set for hearing on January 3, 2017. Docket No. 60.

mortgage and of the sale of the mortgaged property" by publishing notice of public sale once a week for three successive weeks. The mortgagee could then hold a public sale no less than fourteen days after the final notice was published, allowing a nonjudicial foreclosure to take place in as little as five weeks. HRS § 667-5 (2010). For over a century, 667-5 was the only nonjudicial foreclosure process in Chapter 667.

The Hawai'i legislature passed Chapter 514A, the Condominium Property Act, in 1977. It included § 514A-90 ("514A-90"), which authorized associations to place a lien on apartments for unpaid assessments. As originally enacted, 514A-90 only allowed an association to enforce the lien for unpaid assessments (the "assessment lien") by judicial action. 514A-90 provided that the lien "may be foreclosed by action by the manager or board of directors, acting on behalf of the apartment owners, in like manner as a mortgage of real property." HRS §514A-90 (1998). This meant that associations could only utilize 667-1 to enforce liens.

In 1998, both lenders and homeowner associations sought a nonjudicial foreclosure option.[2] In response, the legislature enacted an "Alternate Power of Sale Foreclosure Process," codified at HRS §§ 667-21 through 667-42 ("Part II"). Because of concerns regarding the rights and interests of homeowners, Part II contained "substantial safeguards" to protect those rights.[3] These safeguards included: (1) the homeowner be given at least sixty days to cure any default (HRS §667-22(a)(7)); (2) a recommendation to consult with an attorney (HRS §667-22(b)); (3) actual service of a notice of default on the homeowner (HRS §667-22(e)(1)); (4) at least sixty days advance notice before the public sale (HRS § 667-25); (5) at least two open houses of the mortgaged property (HRS § 667-26); (6)

---

[2] H.B. 2506, H.D. 1, 19th Leg., Reg. Sess. (1998).
[3] *Id.*

the homeowner sign the conveyance document (HRS § 667-31(a) [1998]); and (7) a bar against deficiency judgments (HRS § 667-38). If a foreclosing party complied with these provisions, the foreclosure would be "conclusively presumed to have been conducted in a legal, fair, and reasonable manner." HRS § 667-34 (1998). Pursuant to HRS § 667-40, the nonjudicial foreclosure process contained in Part II was specifically made available to associations "where a law or written document contains, authorizes or provides for a power of sale, a power of sale remedy, or a nonjudicial foreclosure."

However, despite the enactment of Part II, 514A-90 was not changed and continued to provide that the lien for unpaid assessments had to be foreclosed "by action... in like manner as a mortgage of real property." HRS § 514A-90 (1998). In 1999, the legislature sought to "clarify that associations of apartment owners may enforce liens for unpaid common expenses by non-judicial and power of sale foreclosure procedures, as an alternative to legal action." 1999 Act 236, §1.4. Pursuant to Act 236, 514A-90 was amended to state that liens could be foreclosed "by action or non-judicial or power of sale procedures set forth in chapter 667."[4] HRS § 514A-90 (1999). The legislature simultaneously amended HRS § 514A-82 to provide that the lien under 514A-90 could be enforced "By the association in any manner permitted by law, including non-judicial or power of sale foreclosure procedures authorized by chapter 667, as that chapter may be amended from time to time." HRS § 514A-82(b)(13) (1999). By these amendments, the legislature did not indicate any intent to allow associations the use of 667-5, which was left unchanged, and remained available only when a "power of sale is contained in a mortgage." HRS § 667-5 (1999). In contrast, the amendment of HRS § 514A-82

---

[4] If 514A-90 is referred to without a year, it is referring to HRS § 514A-90 (1999). The relevant statutory provision was unchanged between 1999 and 2010.

was intended to provide associations with the "law or written document" which would allow them to use the nonjudicial foreclosure process set forth in Part II. HRS § 667-40. When Chapter 514B, a revised version of Hawai'i's condominium property act applicable to condominiums created after July 1, 2006 was enacted, Chapter 514B incorporated the text of HRS § 514A-90 into HRS § 514B-146. *See* HRS §514B-146 (2004).[5]

Because of the repeated abuse of Part I, which was used to strip homeowners of their homes, a moratorium was placed on its use in 2011, and it was repealed in 2012 before the moratorium ended. Today, an association may only foreclose by action, using Part II, or using an alternative process codified as HRS §§ 667-91 to 667-104 ("Part VI"), which was enacted in 2012 and contains many of the consumer safeguards the original version of Part II possessed, including an explicit requirement to serve the notice of foreclosure on the owner (HRS § 667-92(e)) or in the alternative give the unit owner one year to redeem while barring the association from deficiency judgments (HRS § 667-92(f)(2)), a requirement for sixty days of public notice (HRS § 667-95(a)), and a requirement for an association to accept a reasonable payment plan (HRS § 667-92(c)).

## III. ARGUMENT

### A. Defendants AOAO and Chow Were Not Authorized to Use Part I

#### 1. Part I Requires an Actual Mortgage to Function, and the Defendant AOAO Did Not Hold a Mortgage

The foremost obligation of a court when construing a statute is "to ascertain and give effect to the intention of the legislature." *Franks v. Honolulu*, 74 Haw.

---

[5] Chapter 514A is applicable to condominium property regimes created before 2006, while 514B is applicable to condominium property regimes created after 2006.

328, 335, 843 P.2d 668, 671 (1993). If the statutory language is ambiguous, "courts may take legislative history into consideration in construing a statute." *Id.* The court must construe a statute "in a manner consistent with its purpose" and with reference to other laws regarding the same issue. *Haole v. State*, 111 Haw. 144, 149, 140 P.3d 377, 382 (2006). The court must reject "absurd or unjust" results or ones which are "clearly inconsistent with the purposes and policies of the statute." *State v. McKnight*, 131 Haw. 379, 389, 319 P.3d 298, 308 (2013) (citation omitted). Furthermore, a term used in a statute has its "general or popular use or meaning" unless it is expressly defined. HRS § 1-14.

Under 667-5, the foreclosing party may only act "upon breach of a condition in the mortgage" and must "give any notices and do all acts as are authorized or required by the power contained in the mortgage." HRS § 667-5. An association does not hold a mortgage, and therefore cannot have a power of sale "contained in" a mortgage. It cannot act upon "breach of a condition in the mortgage," and cannot "give any notices and do all acts as are... required by" the mortgage. Therefore, Chow's interpretation that Defendant AOAO of Palm Court ("Defendant AOAO") was authorized to use 667-5 is absurd.

A mortgage is a type of lien, but not all liens are mortgages. HRS § 506-1 ("lien of mortgages"); *see also Strouss v. Simmons*, 66 Haw. 32, 38, 657 P.2d 1004, 1009 (1982) (refers to a mortgage as a "mortgage lien"). Under Hawaiʻi law, a mortgage is defined as a "transfer of an interest in real property or fixtures made as security for the performance of another act ..." HRS §506-1. Here, there was no transfer of an interest in real property or fixtures by Galimas to Defendant AOAO. Instead, Defendant AOAO had a statutory lien as a result of unpaid assessments. *See* HRS §§514A-15, 514B-41. This does not fit the definition of a mortgage. *See United States Bank Nat'l Ass'n v. Ass'n of Apt. Owners*, 133 Haw.

512, 331 P.3d 490 (Haw. App. 2014)(a lien pursuant to HRS §514B-146 "is not based on a mortgage, but rather outstanding common expenses owed on the Unit.")

Interpreting 514A-90 as transforming an association lien into a mortgage leads to absurd conclusions. For example, certain liens, such as ones attaching to personal property in possession of a bailee, may be foreclosed in a manner "similar to proceedings to foreclose a mortgage of real property." HRS § 507-5. And while mortgages must be recorded under HRS § 506-4, this cannot reasonably be applied to HRS § 507-5, because if it did, a bailee's lien would not attach until a mortgage-like instrument was recorded. The language used in HRS § 507-5 relating to mortgages supports the conclusion that 514A-90 was intended to allow associations to foreclose liens using 667-1—its actual original purpose—rather than transforming an association's lien into a mortgage containing a power of sale.

An association lien is also treated differently from a mortgage. For example, under HRS § 514A-90(g)(2), an association's lien can survive the foreclosure of a superior mortgage as a "special assessment." In addition, under HRS § 514A-90(e), an association lien can be enforced by denying the owner of the delinquent apartment access to common elements and association services. As mortgages do not have these rights or attributes, it is clear that 514A-90 does not transform an association's lien into a mortgage.

Chow argues that Galimas' interpretation of the statutes at issue renders 514A-90 a "nullity," but that argument is flawed. Section 667-1 does not require a creditor to hold a mortgage containing a power of sale, and 514A-90 provides explicit authorization for that statute's use to foreclose a lien. Meanwhile, Part II specifically authorizes that part to be used by associations. In fact, Chow touches upon why 514A-90 exists—without it, an association could not use Chapter 667 *at all*, as 667-1 only allows a circuit court to "assess the amount due upon a **mortgage**." (emphasis added). ECF No. 56-1 at 26-27. The phrase "in like

7

manner as a mortgage" in 514A-90 exists because the legislature intended to allow for associations to use 667-1, not 667-5. HRS §667-1 allows for a circuit court to "assess the amount due upon a mortgage." Reading 667-1 in harmony with 514A-90, the two statutes allow the circuit court to "assess the amount due" upon an association lien, "in like manner as a mortgage of real property."

The statutes and their legislative history, along with Hawai'i case law, require this Court to conclude that Defendant AOAO acted wrongfully when it used 667-5 to foreclose the lien, as its use is not "authorized by chapter 667" without a mortgage containing a power of sale. Likewise, 514A-90 does not give an association's lien the qualities of a mortgage, but rather only allows the use of mortgage foreclosure methods which would otherwise only apply to mortgages that do not contain a power of sale.

> **2. Defendants AOAO and Chow as its Agent could only use methods of foreclosure "authorized" by Chapter 667, such as 667-1 or Part II.**

HRS § 514A-82(b)(13) ("514-A-82(b)(13)") states that an association may enforce its lien "in any manner permitted by law, including nonjudicial or power of sale foreclosure proceedings **authorized** by chapter 667." This language clearly indicates that the legislature did not intend to allow an association to choose between Part I and Part II because Part I could only be used by a creditor holding a mortgage containing a power of sale and associations do not hold such mortgages. Instead, it was intended to provide associations with the "law or written document" that associations needed in order to be able to use Part II. The conclusion that the legislature did not intend to give associations carte blanche authority to use both Part I and Part II is compelled by the inclusion of the word "authorized." Since 667-5 can only be used by a creditor holding a mortgage containing a power of

sale, associations were not authorized to use Part I. They were only authorized to use 667-1, to foreclose by action, or Part II, to conduct a public sale.

Section 667-5 does not confer authority to conduct a nonjudicial foreclosure or grant a power of sale. *Santiago v. Tanaka*, 137 Haw. 137, 155, 366 P.3d 612, 630 (2015). (citing *Lee v. HSBC Bank USA*, 121 Haw. 287, 218 P. 3d 775 (2009)). Instead, it only authorizes the creation of a nonjudicial power of foreclosure "within the four corners of a contract." *Id.* at 155. The right to use 667-5 is explicitly required to be "contained in a mortgage," and the legislature intended for that right to be "agreed upon contractually." *Id.* at 156. Therefore, for an association to be authorized to conduct a nonjudicial foreclosure under 667-5, the association has to hold a mortgage containing a power of sale. However, 514A-82(b)(13) and 514A-90 do not transform an association's lien into a mortgage containing a power of sale. Instead, they merely authorize associations to use the applicable provisions of Chapter 667, which are 667-1 for judicial foreclosures and Part II for nonjudicial foreclosures.

Section 514A-90 says only that the lien "may be foreclosed by action or by non-judicial or power of sale procedures set forth in chapter 667... in like manner as a mortgage of real property." Section 667-5 requires a mortgage containing an explicitly contracted-for power of sale to be used. Section 667-5 "does not provide the nonjudicial power of foreclosure, but only allows its creation, if the parties choose to do so, within the four corners of a contract." *Santiago*, 137 Haw. at 155. The language "may be foreclosed... in like manner as a mortgage of real property" echoes the language found in *Santiago*, where the mortgage in question provided that the mortgagee may "...foreclose this Mortgage... as now or then provided by law..." *Id.* The court held that Part I is "the only source from which the Mortgage's power to foreclose may be derived. However, HRS §667-5 does not independently provide for a power of sale, and, as noted, it only authorizes such a

sale where such a power is contained in a mortgage." *Id.* Even if "as now or then provided by law" could create a power of sale sufficient to use Part I, the court held that this was insufficient. *Id.* In that case, there would be an ambiguous "chicken-and-egg situation" because the "Mortgage defers to the statute, but the statute similarly defers to the Mortgage." *Id.* This would be strictly construed against the drafter-in this case, the association-and thus fail to provide a power of sale sufficient for 667-5.

As *Santiago* holds, 667-5 requires a clear contractual power of sale to exist independent of the statute, which 514A-82(b)(13) explicitly denies. HRS §514A-82(b)(13) states that liens created pursuant to 514A-90 can be enforced by "power of sale foreclosure procedures **authorized by** chapter 667." (emphasis added). The phrase "authorized by chapter 667" makes it clear that 514A-82(b)(13) requires that chapter 667 authorize the foreclosure procedure chosen by the association. 667-5 does not authorize any nonjudicial power of foreclosure. HRS §514A-82(b)(13); *Santiago*, 137 Haw. at 155. As this is the text incorporated into association bylaws, associations are only given the right to enforce their liens by the "power of sale foreclosure processes authorized by chapter 667." This, of course, means Part II.

The canons of statutory interpretation also support this conclusion. A court is bound to give effect to the plain meaning of unambiguous statutory language absent an unjust or absurd result. *State v. Reis*, 115 Haw. 79, 84, 165 P.3d 980, 985 (2007), *Ben. Haw., Inc. v. Kida*, 96 Haw. 289, 309, 30 P.3d 895, 915 (2001). No "clause, sentence, or word shall be construed as superfluous, void, or insignificant if a construction can be legitimately found which will give force to and preserve all words of the statute." *Id.* The plain meaning of "authorized by chapter 667" is clear and unambiguous—it means that Chapter 667 must authorize an association to make use of the foreclosure process. Part II of Chapter 667

explicitly did so. The association could not use 667-5, because 667-5 required an explicit, contractual power of sale, conditions within that power of sale, notice provisions contained in that power of sale, and an explicit breach of that power of sale. In addition, 667-5 requires the mortgagor to "give any notices and do all acts as are authorized or required by the power contained in the mortgage" when there is a "breach of a condition of the mortgage" to foreclose. This is obviously impossible to comply with as there is no mortgage condition to be breached and there are no requirements for any notices or acts in either 514A-82(b)(13) or 514A-90.

Furthermore, Galimas' interpretation does not contradict the purposes of the legislature. The legislature sought to "clarify that associations of apartment owners may enforce liens for unpaid common expenses by non-judicial and power of sale foreclosure procedures, as an alternative to legal action," but this does not mean that the legislature intended to allow the use of 667-5. Act 236, §1.4. Because courts are mandated under Hawai`i law to give effect to the intent of the legislature, as well as the plain language of the statutes in its entirety, Galimas' interpretation of the statute meets the requirements of statutory interpretation and should be followed.

### B. Chow's interpretation creates due process issues which Galimas' interpretation avoids

The interpretation Chow supports creates potential due process issues as well, while Galimas' interpretation does not. Because this case involves state action, both in the pure statutory, non-contractual lien created by the legislature as well as the legislatively created enforcement process, a Constitutional due process issue arises under Chow's interpretation.

Procedural due process requires that a party have "notice and opportunity to be heard at a meaningful time and a meaningful manner before governmental

deprivation of a significant liberty interest." *Ek v. Boggs*, 102 Hawai'i 289, 298, 75 P.3d 1180, 1189 (2003). Without a contractually agreed upon power of sale provision, an association utilizing 667-5 can sell the homeowner's property without giving the homeowner actual notice of default or notice of the public sale. Under Hawai'i law, due process must be provided before citizens can be stripped of their homes. *KNG Corp. v. Kim*, 107 Haw. 73, 80, 110 P.3d 397, 404 (2005). Also, the ICA has held that in a non-judicial foreclosure based on a power of sale, there must be a notice of default which includes the amount needed to cure. *Matrix Fin. Servs. v. Campbell*, No. 24412, 2003 Haw. App. LEXIS 5, at *17 (App. Jan. 15, 2003). Chow's interpretation of 667-5 results in the possibility that a nonjudicial foreclosure can proceed without actual notice to the homeowner, leading to situations like the present one, where Galimas had no knowledge that their home was being sold.

The present case can be distinguished from *Apao v. Bank of New York*, 324 F.3d 1091 (9th Cir. 2003), as *Apao* involved the foreclosure of an actual mortgage with a power of sale. Since the power of sale arose by contract between the parties, no state action was involved. In this case, Galimas did not contractually provide Defendant AOAO with a power of sale, and state action was involved in both the creation of the lien and the method of enforcement. In contrast, under Galimas' interpretation of the statutes at issue, there are no due process issues. Chow's interpretation fails to give effect to the wording and intent of the statutes.

Chow's interpretation does not construe the statutes in line with their purpose and does not give effect to all of their parts. Instead, Chow's interpretation of Chapters 514 and 667 selectively ignores words or phrases or results in absurd interpretations. Chow's interpretation of Chapter 514 ignores the phrase "**authorized** by chapter 667" in 514A-82(b)(13) and the fact that 667-40 is the only provision in Chapter 667 that authorizes non-judicial foreclosure by an

association. HRS § 667-40. Chow's interpretation makes this provision meaningless, and thus violates the canons of statutory interpretation.

Chow's interpretation of Part I also renders meaningless the requirement that the creditor "give any notices and do all acts" required by the power of sale contained in the mortgage, because 514A-90 has no notice or cure provisions. It is absurd to conclude that the legislature deliberately intended to allow associations to conduct nonjudicial foreclosures without providing the homeowner any notice or opportunity to cure. Chow's interpretation also goes directly against the holding in *Lee v. HSBC Bank USA*, 121 Haw. 287, 218 P.3d 775 (2009), that 667-5 demonstrates a "desire to protect the mortgagor from a wrongful loss of property." *Id.* at 291-92. It also contradicts *Kondaur*, which requires evidence of fairness and reasonableness when 667-5 is used. *Kondaur Capital Corp. v. Matsuyoshi*, 136 Haw. 227, 238 n.23, 361 P.3d 454, 465 (2015).

Ignoring the "give any notices and do all acts" required by the power of sale provision, as Chow has, leads to absurd results. Under the interpretation which he supports, a party could sell a homeowner's apartment by just publishing a notice of foreclosure in a local newspaper for three weeks without giving the apartment owner actual notice, and then selling the apartment at a public sale 2 weeks later. Members of the military services and investors not present in Hawai'i would never have actual notice of the foreclosure —as happened in this case.

There are no explicit conditions for default given in 514A-82(b)(13) nor are there any provisions relating to notice and cure that are typically found in mortgages. Without a mortgage, no breach of a condition of the mortgage could have occurred, and compliance with 667-5 is impossible. That statute requires the creditor to "give any notices and do all acts as are authorized or required by the power contained in the mortgage." 514A-90 does not contain any notice requirement, nor any requirement to allow the apartment owner to cure the default.

Chow's interpretation requires the effective repeal of Part II, which the court should reject. *Richardson v. City and County of Honolulu*, 76 Haw. 46, 55, 868 P.2d 1193, 1202 (1994) (repeal by implication is disfavored). The intention for the legislature to repeal a statute by implication must be "clear and manifest." *Posadas v. Nat'l City Bank*, 296 U.S. 497, 504 (1936); *accord State v. Kuuku*, 61 Haw. 79, 82, 595 P.2d 291, 294 (1979). Authorizing associations to use 667-5 would effectively repeal the consumer protection provisions the legislature deemed necessary to protect homeowners, and thus is a disfavored repeal by implication. Chow has failed to show clear and manifest legislative intent for the repeal of Part II in 1999.

Part II had a multitude of consumer protection provisions to guard against the very types of abuses which Defendant AOAO engaged in.[6] The legislature believed that these "additional safeguards not required in the current power of sale foreclosure law... are needed to protect the interests of consumers." *See Aames Funding Corp. v. Mores*, 107 Haw. 95, 102, 110 P.3d 1042, 1049 (2005) (*quoting* Conf. Com. Rep. No. 75, in 1998 House Journal, at 979). These safeguards cannot be given effect if a homeowner association could bypass Part II at will, as Defendant AOAO has done here, and thus allowing an association to use Part I not only fails to give effect to the clearly stated intent of the legislature, but also effectively repeals Part II.

There can be no force given to these consumer protections if any party who might use Part II could choose to use 667-5 instead and ignore Part II's protections. There is no indication in either the House or Senate journals that the legislature,

---

[6] Part II includes a multitude of consumer protections, including the requirement "that the borrower has to sign off in the conveyance of documents . . . before the [foreclosure] sale can be completed." H.B. 2506, H.D. 1, S.D. 1, C.D. 1, 19th Leg., Reg. Sess. (1998).

when Chapters 514A and 514B were revised, sought to effectively repeal Part II of Chapter 667. Had the legislature considered the safeguards in Part II unnecessary a mere year after its passage, as it would have to if Chow's interpretation holds water, they could easily have repealed those safeguards.

It is an absurd assertion to claim that despite the detailed, specific, and numerous safeguards found in Part II of Chapter 667, the legislature decided, with no discussion, that these safeguards were utterly irrelevant. Chow fails to give a single plausible scenario where the legislature would consider the numerous protections found in Part II necessary safeguards when nonjudicial foreclosures are conducted by associations, and then, scarcely a year later, declare that not only are those protections unnecessary, but even the meager notice and cure protections provided by Part I are extraneous. Under Chow's interpretation, an AOAO would be able to sell a homeowner's apartment by publishing notice of the sale three times in a local newspaper without an absentee owner ever knowing of the public sale until after losing the home—the exact situation that happened in this case.

Defendant AOAO's actions, in fact, demonstrate exactly why 667-5 was limited to a mortgage containing a power of sale. Mortgages also contain notice and cure provisions. With the only protections in 667-5 against wrongful foreclosures being those which might be found in the mortgage itself, being able to use 667-5 without a mortgage containing explicit power of sale and notice provisions leads to the absurd conclusion that an association could conduct a nonjudicial foreclosure without ever giving the homeowner notice *at all*. Such a conclusion is absurd and untenable. The legislative history of Part II shows that the legislature was concerned about the wrongful taking of homes by homeowner associations in 1998 and felt that significant consumer safeguards were necessary. *Aames*, 107 Haw. at 102. It is absurd to assert that there was a 180 in the legislature's intent in a mere year without any comment.

Chow has not given a single reason as to why the Court should believe that the legislature intended to give associations access to Part I merely a year after passing Part II, with no indication in 1998 or 1999 that the legislature intended to grant associations the use of 667-5. Chow also gives no compelling reason why the legislature would take the drastic step of allowing associations access to 667-5 merely a year after Part II was enacted, especially given the legislature's concern that even Part II lacked sufficient consumer protections.

Chow's interpretation is fatally flawed because it fails to give effect to the clearly stated legislative intent of Part II, and does not read the statutes *in pari materia* with each other. Furthermore his interpretation fails to give effect to the consumer protections extant in Part II and effectively repeals them by implication. For these reasons, Chow's interpretation should be discarded.

### C.   Subsequent legislative history is damning for Chow's interpretation

Chow suggests that "subsequent legislative history confirms the conclusion that associations could use Part I." Motion to Dismiss at 14. A review of the subsequent legislative history demonstrates the opposite. After the public sale in this case, the legislature: 1) eliminated "in like manner as a mortgage" from 514A-90, 2) enacted Part VI of Chapter 667 which contains many of the safeguards that were included in Part II 3) placed a moratorium on the use of 667, and 4) thereafter repealed Part 667-5.

The current version of 514A-90 no longer allows for associations to foreclose an association lien "in like manner as a mortgage." 514A-90 now provides that an association's lien "may be foreclosed by action or by nonjudicial or power of sale foreclosure procedures set forth in chapter 667." HRS §514A-90 (2016). If the legislature had intended for the association lien to be a mortgage-like instrument, it could have left the language intact but did not.

16

On May 5, 2011, the legislature imposed a moratorium on the use of 667-5 because the process was "one of the most draconian in the country" and "was originally designed to make it easy to take land away from Native Hawaiians." 2011 House Journal – 59th Day, Conf. Com. Rep. No. 133 and S.B. No. 651, SD 2, CD 1. When recommendations were made for the revision of Part I, many of these revisions made it clear that the legislature did not intend to give associations easy access to a nonjudicial foreclosure method as they required many of the same protections which existed in Part II. For example, the mortgage foreclosure task force recommended that 667-5 be amended to provide actual notice be served on the homeowner and prohibit deficiency judgments. Preliminary Report of the Mortgage Foreclosure Task Force to the Legislature for the Regular Session of 2011, p. 17.

Despite the additional consumer protections suggested by the recommendations, the legislature repealed 667-5 in 2012 for the same reason the Galimas are bringing the current suit—it allowed associations to trivially strip homeowners of their homes. When the legislature did so, its intent was to "provide a single nonjudicial foreclosure process under Part II of [chapter 667]." Conf. Com. Rep. 63-12, in 2012 House Journal, at 1631. Representative Herkes is on record as stating that "And in the last 10 to 15 years [667-5] had been the mechanism to non-judicially foreclose on homeowners, often without their knowledge and without providing them a fair opportunity to save their homes. In Act 48, we just put a stop to it. Now we've gotten rid of it." Conf. Com. Report No. 63-12, in 2012 House Journal, at 817.[7]

---

[7] Non-judicial foreclosures, especially by homeowner associations, have faced similar criticism in other states. *See* e.g. Keith Jurow, *Are HOA Foreclosures A Necessary Tool Or An Extortion Racket?*, Business Insider (Jul. 28, 2010, 8:27 AM), http://www.businessinsider.com/are-hoa-foreclosures-a-necessary-tool-or-

These statements clearly demonstrate that the legislature did not intend to provide associations with a nonjudicial foreclosure method which required no actual notice and minimal consumer protection. The subsequent legislative history clearly shows that the legislature did not intend to provide associations with unlimited access to 667-5, a tool used to "non-judicially foreclose on homeowners, often without their knowledge and without providing them a fair opportunity to save their homes."

### D. Judge Chang did not confirm Chow's statutory analysis

Chow also argues that Hawai`i First Circuit Judge Gary W.B. Chang agreed with his interpretation of the statute. This is incorrect, as the order granting the motion to dismiss demonstrates and the transcript reinforces. Judge Chang did not give any reason for the dismissal of the complaint, and in fact deliberately avoided doing so, asking questions instead of providing an interpretation. *See* Declaration of Steven K. S. Chung ¶¶2-3, Exhibit "A," Order Granting Defendants Ekimoto & Morris, LLLC, Arlette S. Harada, and John A. Morris' Motion to Dismiss First Amended Complaint, filed on October 10, 2016 and Exhibit "B," Transcript of Proceedings dated September 21, 2016.

As the order granting the motion to dismiss shows, Judge Chang granted the motion, but did not give any rationale for doing so. In addition, when counsel sought to make the same declarations in the order, counsel for the Galimas objected, and counsel conceded that Judge Chang did not, in fact, agree on-record with the Valencia Defendants' similar interpretation of the relevant statutes.

---

an-extortion-racket-2010-7, Diana Olick, *Homeowner Associations: The New Foreclosure*, CNBC (Jul. 15, 2010, 11:44 AM), http://www.cnbc.com/id/38260141, Hubble Smith, *Shrewd investors snap up HOA liens, rent out houses*, Las Vegas Review-Journal, http://www.reviewjournal.com/business/housing/shrewd-investors-snap-hoa-liens-rent-out-houses.

### E. Chow is liable for his unfair and deceptive acts and practices.

#### 1. Attorney liability for unfair and deceptive practices in foreclosure situations is not a settled question under Hawai`i law

Attorney liability in similar foreclosure situations is not a settled question under Hawai`i law, and the Supreme Court has in fact granted *certiorari* to multiple cases on the very topic. Because of these pending cases, it would be premature to dismiss claims based on Chow's assertion that the liability issue is settled, and the court should instead wait until the Hawai`i Supreme Court weighs in on this very topic. In addition, the weight of authority in Hawai`i suggests that a reading of the unfair and deceptive acts and practices ("UDAP") statute, HRS Chapter 480, does allow for an attorney who acts as a homeowner's attorney-in-fact in a power of sale to be sued by a consumer.

First, the plain language of Chapter 480 does not describe any limitation that would prevent its application against attorneys. In "simpl[e]" yet "sweeping" terms, Chapter 480 proscribes "unfair or deceptive acts or practices in the conduct of any trade or commerce." *Cieri v. Leticia Query Realty Inc.* 80 Haw. 54, 60-61, 905 P.2d 29, 35-36 (1995), HRS § 480-2(a). Chapter 480 subsequently authorizes any "Consumer who is injured by any unfair or deceptive act or practice" to "sue for damages sustained by the consumer." HRS § 480-13(b)(1). By design, Chapter 480 is a "flexible tool" to protect consumers because it is "impractical to enact a law prohibiting each... unfair or deceptive act or practice." *Haw. Med. Ass'n v. HMSA,* 113 Haw. at 109, 148 P.3d 1179, 1211 (2006). Its explicit exclusion of other trades, organizations, and practices forecloses implying an exemption for lawyers that was never expressly enacted, under the doctrine of *expression unius est exclusion alterius. Fought & Co. v. Steel Eng'g & Erection,* 87 Hawai`i 37, 55, 951 P.2d 487, 505 (1998). Similarly, other consumer protection

19

statutes which exempt attorneys from liability have explicit exemptions. *See* e.g. HRS Chapters 480E (mortgage rescue fraud), 446 (debt adjustment), 443B (debt collectors).

The US Supreme Court has held that analogous federal consumer protection statutes do not provide an exemption for an attorney unless they explicitly do so in writing. *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 599 U.S. 573 (2010). Similarly, other states have allowed UDAP claims against attorneys involved in nonjudicial foreclosures. *See e.g. Wallace v. Washington Mut. Bank*, 683 F.3d 323 (6th Cir. 2012), *Turner v. Lerner, Sampson & Rothfuss*, 776 F. Supp. 2d 498 (N.D. Ohio 2011), *Flores v. Shapiro & Kreisman*, 246 F. Supp. 2d 427 (E.D. Pa. 2002).

Any agent who participates in an actor's UDAP is jointly liable to the consumer under Chapter 480. *Fuller v. Pacific Med. Collections*, 78 Haw. 213, 225, 891 P.2d 300, 312 (App. 1995). And Chow was acting in trade or commerce, in a non-adversarial fashion, when he sold the Galimas' home. When acting as a trustee for the Galimas under his *Ulrich* duties, Chow was not acting in an adversarial fashion. *Ulrich v. Sec. Inv. Co.*, 35 Haw. 158, 171 (Haw. Terr. 1939). He was acting as a business agent, required to "exercise reasonable diligence and good faith in an endeavor to obtain the best possible price consistent with such diligence and good faith." *Id.* at 172. In *Cieri*, the Hawai`i Supreme Court interpreted the phrase "conduct in any trade or commerce" to mean an act or practice that "occurs in a business context." *Cieri*, 80 Haw. at 63-65. "The systematic sale or brokering of interests in real property," which Chow was engaged in when he acted as a trustee and business agent for the Galimas, involves "trade or commerce." *Id.* at 65. Chow sold the Galimas' home to Defendant AOAO, which used it as an investment property by renting it out and deriving

income from it. Defendant AOAO, to this day, still owns the property and is profiting from its rental income.

Chow was not acting as an attorney providing legal services to an adversary when he sold Galimas' home. Defendant AOAO was acting as Galimas' trustee, on behalf of Galimas, according to *Ulrich* and *Kondaur*. *Kondaur*, 136 Haw. at 229. Chow was acting as an agent of Defendant AOAO when he sold the home on behalf of the Galimas, and also acting as an agent of Defendant AOAO when he purchased the home on behalf of Defendant AOAO, and therefore is liable for any liability for UDAP that Defendant AOAO may have. Selling real property to the public is not a core attorney function, like going to court or providing confidential advice on questions of law. In fact, until recently, 667-5 did not require more than a mere business agent to act as trustee to the mortgagor in a forced sale. *Wailuku Sugar Co. v. Dean*, 8 Haw. 108 (Haw. Kingdom 1890). Although the legislature amended 667-5 in 2008 to require a licensed Hawai`i attorney to do "all acts" that business agents previously had done, the statute did not alter the actual acts, duties, or notices required. *See* 2008 Haw. Sess. Laws Act 138, §1.

## 2. Attorneys are liable in other states for negligent misrepresentations and other deceptive acts to third parties

In other states, courts have allowed non-client third parties to file suit against attorneys for their deceptive acts. As the Supreme Court of Illinois noted, the general trend in tort law has been to abolish privity of contract, the defense Chow relies on against claims of deceptive or misleading practices. *Pelham v. Griesheimer*, 440 N.E.2d 96, 99 (Ill. Sup. Ct. 1982). *Pelham* holds that an attorney may be liable to a third party so long as the attorney was acting primarily to benefit the non-client third party. *Id.* This conclusion was not based on any specific Illinois statute or law, but rather by overall trends in tort law. Other states have come to identical conclusions. *See e.g. Clagett v. Dacy*, 420 A.2d 1285, 1289 (Md.

App. 1980) (attorney may be liable for damage caused by negligence to third party beneficiary), *Biakanja v. Irving*, 320 P.2d 16, 19 (Cal. Sup. Ct. 1958) (same).

Chow was acting primarily to benefit a third party, the Galimas. As held in *Ulrich*, Chow and Defendant AOAO were acting as trustees to the Galimas in the sale of their home, and had a duty to benefit them by getting the best possible price and acting in a fair and equitable manner. *Ulrich*, 35 Haw. at 171. Chow is therefore liable for his negligent misrepresentations to the Galimas, as his actions were not done in an adversarial fashion on behalf of Defendant AOAO but rather in his role as a trustee to the Galimas, in a role intended primarily for the Galimas' benefit. Chow's liability for negligent misrepresentation also demonstrates the potential for UDAP liability, as negligent misrepresentation is an "unfair or deceptive" act. *Courbat v. Dahana Ranch, Inc.*, 111 Haw. 254, 262, 141 P.3d 427, 435 (2006) (a deceptive act or practice is a "representation, omission, or practice that is likely to mislead consumers acting reasonably… where the misrepresentation, omission, or practice is material.").

Because Chow acted primarily to benefit a third party, rather than in an adversarial fashion on behalf of Defendant AOAO, Chow is liable for his deceptive acts, as material misrepresentations are deceptive in and of themselves. To the extent the court deems the negligent misrepresentation claim is deemed not to exist, the court should also grant leave to the Galimas to amend the complaint as to allege negligent misrepresentation.

### F. The Fair Debt Collection Practices Act Claim is Valid

The Fair Debt Collection Practices Act (FDCPA) claim in Count II is valid, as defendants have engaged in actions beyond the statutorily mandated actions for nonjudicial foreclosure. *Barria v. Wells Fargo Bank, N.A.*, No. 2:15-cv-01413-KJM-AC, 2016 U.S. Dist. LEXIS 15148, at \*14 (E.D. Cal. Feb. 8, 2016). "Parties who regularly or principally engage in communications with debtors concerning

their default that go beyond the statutorily mandated communications required for foreclosure may be considered debt collectors." *Natividad v. Wells Fargo Bank, N.A.*, No. 3:12-cv-03646 JSC, 2013 U.S. Dist. LEXIS 74067, at *29 (N.D. Cal. May 24, 2013).

There is no statute of limitations bar on the FDCPA claim because the Ninth Circuit Court of Appeals has held that "the discovery rule applies to statutes of limitations in federal litigation . . . and the general federal rule is that 'a limitations period begins to run when the plaintiff knows or has reason to know of the injury which is the basis of the action.'" *Mangum v. Action Collection Serv., Inc.*, 575 F.3d 935, 940 (9th Cir. 2009)(citation omitted). *Mangum* specifically addresses the discovery rule and holds that tolling applies to FDCPA claims. *Id.* at 939-942.

Chow has gone above and beyond what is statutorily mandated for nonjudicial foreclosure, and should be considered a debt collector under the FDCPA. If a communication meets the Act's definition of an effort by a "debt collector" to collect a "debt" from a "consumer," it is irrelevant that the communication comes in the context of litigation. *Heintz v. Jenkins*, 514 U.S. 291, 294 (1995). Thus, when Chow filed suit and sought a deficiency judgment against Galimas, he was acting as a debt collector under the FDCPA. Chow, as an attorney who has done many non-judicial foreclosures, is a "lawyer who 'regularly'… tries to collect consumer debts." *Id.* at 292.

In addition, Chow concealed the fact that Defendant AOAO lacked a mortgage containing a power of sale, and thus could not foreclose under 667-5 when he conducted the nonjudicial foreclosure. District courts in the 9th Circuit have found obfuscation of the truth in a nonjudicial foreclosure proceeding sufficient to allow a claim to proceed under the FDCPA. *Harvey G. Ottovich Revocable Living Tr. Dated May 12, 2006 v. Wash. Mut., Inc.*, No. C 10-02842 WHA, 2010 U.S. Dist. LEXIS 99161, at *12 (N.D. Cal. Sep. 22, 2010)

**G.** **This case presents a novel legal issue with no binding precedent, and the Court should Certify the Question rather Than Dismiss the Complaint**

Rule 13 of the *Hawai`i Rules of Appellate Procedure* ("HRAP") allows for federal courts to certify to the Hawai`i Supreme Court a "question concerning the law of Hawai`i that is determinative of the case and that there is no clear controlling precedent in the Hawai`i judicial decisions." Galimas believe that the Hawai`i Supreme Court has already conclusively held that 667-5 can only be used when a party holds a mortgage which explicitly contains a power of sale. *See Santiago*, 137 Haw. at 156 ("Additionally, unlike a power of sale, which HRS § 667-5 explicitly required to be "contained in a mortgage," the amount to cure that a mortgagee must disclose upon the mortgagor's request was not statutorily required to have an independent contractual source. If the legislature intended a right to cure to be agreed upon contractually, it could have added to HRS § 667-5(c)(1) the qualifier 'when contained in a mortgage,' as it did in the power of sale provision.") Should the Court disagree, the Court should certify the central question of this case to the Hawai`i Supreme Court.

By certifying the central question, the Court would promote both predictability and judicial economy. *See Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 357 (1991) (there exists a federal interest in predictability and judicial economy). The core issue in this case—whether an association was allowed to use 667-5—is one where there is no binding precedent, and little persuasive precedent.[8] In addition, this is an issue of significant importance, which will affect the rights of hundreds of homeowners in the state of

---

[8] Part I was the "most draconian" nonjudicial foreclosure statute in the entire nation, and thus similar but far more consumer-friendly statutes have little persuasive value. 2011 House Journal – 59th Day, Conf. Com. Rep. No. 133 and S.B. No. 651, SD 2, CD 1

Hawai'i.[9] Certification would allow the simultaneous resolution of the core issue in all of these cases which allege similar facts and set out similar causes of action. In addition, the question of whether attorneys can be liable in nonjudicial foreclosure cases is on appeal to the Hawai'i Supreme Court, and the Court should therefore wait until the issue is determined.

Dismissal of the complaint in this present case would undoubtedly lead to extraneous litigation. Meanwhile, certification of the question would allow for the speedy resolution of both state and federal claims. Therefore, the court should certify the question to the Hawai'i Supreme Court under HRAP Rule 13.

## VI. CONCLUSION

For the reasons stated above, Galimas respectfully request that Chow's motion to dismiss be denied and that the Court certify the principal legal issue regarding 667-5 to the Hawai'i Supreme Court.

DATED: Honolulu, Hawai'i, November 14, 2016.

/s/ Steven K. S. Chung
STEVEN K. S. CHUNG
MICHAEL L. IOSUA
CHANELLE M. C. FUJIMOTO
Attorneys for Plaintiffs
RUDY AKONI GALIMA and
ROXANA BEATRIZ GALIMA

---

[9] The central question of this case is also the central question of the class action case *Benita J. Brown, Craig Connelly, and Kristine Connelly et al. v. Porter, McGuire, Kiakona & Chow LLP, and Ekimoto & Morris LLLC; The Association of Apartment Owners of Terrazza/Cortebella/Las Brisas/Tiburon and Association of Apartment Owners of Ko Olina Kai Golf Estates And Villas et al.*, Civ. No. 1:16-cv-004489-LEK-KSC. In addition to the class action, there are several suits on the same issue pending in Hawai'i state courts, such as *Valencia v. Association of Apartment Owners of Palm Villas II*, Civ. No. 16-1-1294-07 (GWBC), and *Kwong v. Association of Apartment Owners of Kaiolu Sunrise*, Civ. No. 16-1-1697-09 (KKS), both pending in the Circuit of the First Circuit, State of Hawai'i.