IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| RUDY AKONI GALIMA and ROXANA BEATRIZ GALIMA, | ) ) ) | CIVIL 16-00023 LEK-KSC |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | |
| ASSOCIATION OF APARTMENT OWNERS OF PALM COURT, by and through its Board of Directors; DOE DEFENDANTS 1-10, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

**ORDER DENYING DEFENDANT ASSOCIATION OF APARTMENT
OWNERS OF PALM COURT'S AMENDED MOTION TO DISMISS
SECOND AMENDED COMPLAINT [DKT 34]; AND GRANTING IN PART
AND DENYING IN PART DEFENDANT BRYSON CHOW'S
MOTION TO DISMISS [DKT. 34] SECOND AMENDED COMPLAINT**

Before the Court are: Defendant Association of

Apartment Owners of Palm Court's ("AOAO")[1] Amended Motion to

Dismiss Second Amended Complaint [Dkt 34] ("AOAO Motion"), filed

on August 24, 2016;[2] and Defendant Bryson Chow's ("Chow") Motion

to Dismiss [Dkt. 34] Second Amended Complaint ("Chow Motion"),

filed on October 31, 2016. [Dkt. nos. 39, 56.] Plaintiffs

Rudy Akoni Galima and Roxana Beatriz Galima ("Plaintiffs") filed

their memorandum in opposition to the AOAO Motion ("AOAO

_____

[1] Plaintiffs have sued the AOAO by and through its Board of
Directors.

[2] The AOAO's original motion was filed on August 23, 2016.
[Dkt. no. 36.] It was terminated after the filing of the AOAO
Motion currently before this Court. [Dkt. no. 40.]

Opposition") on October 28, 2016, and the AOAO filed its reply ("AOAO Reply") on November 3, 2016. [Dkt. nos. 55, 58.] Plaintiffs filed their memorandum in opposition to the Chow Motion ("Chow Opposition") on November 7, 2016, and Chow filed his reply ("Chow Reply") on November 21, 2016. [Dkt. nos. 59, 63.] The AOAO Motion and the Chow Motion (collectively "Motions") came on for hearing on December 5, 2016.

On February 28, 2017, this Court granted the AOAO's request for leave to submit supplemental exhibits in support of the AOAO Motion, and this Court allowed the parties to file supplemental memoranda addressing the new exhibits and the Hawai`i Supreme Court's recent decision in Hungate v. Law Office of David B. Rosen, SCAP-13-0005234, 2017 WL 747870 (Hawai`i Feb. 27, 2017). [Dkt. nos. 73 (letter requesting leave), 74 (entering order granting leave).] On March 2, 2017, the AOAO filed the new exhibits ("Supplemental Exhibits"). [Dkt. no. 74.] On March 15, 2017, the parties filed their respective supplemental memoranda. [Dkt. nos. 75 (Chow Supplement), 76 (AOAO Supplement), 77 (Plaintiffs' Supplement).] After careful consideration of the Motions, supporting and opposing memoranda, the arguments of counsel, and the relevant legal authority, the AOAO Motion is HEREBY DENIED in its entirety, and the Chow Motion is HEREBY GRANTED IN PART AND DENIED IN PART. Specifically, the Court DENIES the Chow Motion as to Count II, and GRANTS the Chow

2

Motion in all other respects.

## INTRODUCTION

This case poses a question of first impression as to whether an AOAO could elect to use the former Haw. Rev. Stat. Chapter 667, Part I when it was not a holder of a mortgage with a power of sale. This Court predicts the state supreme court will determine an AOAO could not.

The background of this case relevant to the instant Motion involves the filing of this action in the State of Hawai`i Circuit Court of the First Circuit ("state court"). Plaintiffs' First Amended Complaint was filed on January 15, 2016 in the state court, and, on January 22, 2016, Defendant removed the case to this district court based on federal question jurisdiction. [Notice of Removal, filed 1/22/16 (dkt. no. 1), at ¶ 3.]

On August 19, 2016, Plaintiffs filed their Second Amended Complaint, which alleges that Plaintiff Rudy Akoni Galima ("Mr. Galima") is a "member of the military service on active duty." [Dkt. no. 34 at ¶ 1.] In March 2006, when Mr. Galima was stationed in Hawai`i, Plaintiffs purchased Unit Number 10-A in a condominium project known was Palm Court, Increment IC in Ewa Beach ("the Unit" and "Palm Court"). The AOAO is the Palm Court homeowners' association. [Id. at ¶¶ 8-10.]

In March 2008, Mr. Galima was reassigned to a duty station outside of Hawai`i, and Plaintiffs rented the Unit.

Their tenant, however, failed to pay the rent on a consistent basis, causing Plaintiffs to fall behind on their financial obligations related to the Unit. [Id. at ¶¶ 12-13.] On April 10, 2010, the AOAO recorded a $6,882.86 lien on the Unit for unpaid assessments. [Id. at ¶ 14.] As a result of this lien, Chow (the AOAO's attorney) filed for nonjudicial foreclosure. [Id. at ¶¶ 4, 18.]

Plaintiffs informed the AOAO and Chow (collectively "Defendants") that they were in the process of selling the Unit, and Plaintiffs asked to establish a payment plan for the amounts owed. Plaintiffs entered into contract to sell the Unit for a price that was below the market value ("the Short Sale"). Plaintiffs negotiated a settlement with the holder of their first mortgage, and they paid off their second mortgage. [Id. at ¶¶ 15-17.] In spite of these events, Defendants issued notice that they would sell the Unit pursuant to Haw. Rev. Stat. § 514B-146 and §§ 667-5 to 667-10 ("Chapter 667, Part I"), and Defendants conducted the sale on about October 19, 2010.[3] The

---

[3] Sections 667-5, 667-5.7, 667-6, 667-7, and 667-8, which were in effect in 2010, were repealed in 2012. 2012 Sess. Law. Ch. Act 182, §§ 50-54. Act 182 also added a new § 667-1, setting forth the chapter's definitions, and made § 667-1 the only statute in the current Part I of Chapter 667. Id. at § 3. All references to "Chapter 667, Part I" in the instant Order refer to the version of Part I in effect at the time of the nonjudicial foreclosure of Plaintiffs' Unit.

Section 667-1 (2010) became Haw. Rev. Stat. § 667-1.5. It
(continued...)

4

AOAO submitted the winning bid and executed a quitclaim deed as both the grantor and the grantee. The deed was recorded on November 9, 2010. Because of Defendants' actions, the Short Sale did not close. Plaintiffs lost the Unit and remain liable for the amount secured by their first mortgage. [Id. at ¶¶ 18-21.]

Plaintiffs allege that: Defendants' use of Chapter 667, Part I was improper because the AOAO was not a holder of a mortgage with a power of sale; and Defendants should have used the process set forth in Haw. Rev. Stat. §§ 667-21 through 667-42 ("Chapter 667, Part II"). Plaintiffs assert that Chapter 667, Part II has consumer protection provisions for homeowners and that Defendants used Chapter 667, Part I specifically to circumvent these consumer protections. Had Defendants complied with Chapter 667, Part II, Plaintiffs contend they would not have lost the Unit. [Id. at ¶¶ 22-27.]

Plaintiffs also allege that Defendants fraudulently concealed their wrongdoing "by implying, stating and/or representing that they were authorized to conduct a nonjudicial foreclosure or public sale under Part I." [Id. at ¶ 28.]

---

[3](...continued)
and the other foreclosure by action provisions are now within Part IA of Chapter 667. Act 182 added a new part to Chapter 667 – designated Part VI – titled "Association Alternate Power of Sale Foreclosure Process." Haw. Rev. Stat. § 667-91 now states: "The power of sale process in [part VI] is an alternative process for associations to the foreclosure by action in part IA and the foreclosure by power of sale in part II."

Plaintiffs assert that, as members of the homeowner's association, they were entitled to rely – and did in fact rely – upon Defendants' representations about the AOAO's asserted authority under Chapter 667, Part I.  Plaintiffs therefore argue that they did not discover their claims against Defendants until sometime in December 2015.  [<u>Id.</u> at ¶¶ 29-30.]

The Second Amended Complaint alleges the following claims: a wrongful foreclosure claim against Defendants ("Count I"); a claim against Chow for violations of the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.* ("Count II"); a claim against Defendants for unfair or deceptive acts or practices ("UDAP") under Haw. Rev. Stat. § 480-2 ("Count III"); a fraud claim against Defendants ("Count IV"); and a claim seeking "recovery against Defendants for mental anguish and emotional distress" ("Count V") [<u>id.</u> at ¶ 55 (emphasis omitted)].  This Court construes Count V as alleging a claim for the intentional infliction of emotional distress ("IIED").  <u>See</u> <u>id.</u> at ¶ 60 ("DEFENDANTS **deliberately, intentionally** and wrongfully utilized the expedited power of sale process contained in Part I" (bold emphasis added)).  Defendants seek dismissal of all claims.

## I.  Chapter 667, Part I and Part II

All of Plaintiffs' claims are premised upon the theory that Defendants' use of Chapter 667, Part I to foreclose upon the AOAO's lien on the Unit was improper because they were required to follow Chapter 667, Part II.  This Court will therefore address this issue first.

The Second Amended Complaint alleges that Defendants gave notice of the public sale of the Unit pursuant to Haw. Rev. Stat. § 514B-146 and Chapter 667, Part I.  [Second Amended Complaint at ¶ 18.]  Haw. Rev. Stat. § 514B-22 states,[4] in pertinent part:

> Sections 514B-4, 514B-5, 514B-35, 514B-41(c), 514B-46, 514B-72, and part VI,[5] and section 514B-3 to the extent definitions are necessary in construing any of those provisions, and all amendments thereto, apply to all condominiums created in this State before July 1, 2006; provided that those sections:
>
> (1)  Shall apply only with respect to events and circumstances occurring on or after July 1, 2006; and
>
> (2)  Shall not invalidate existing provisions of the declaration, bylaws, condominium map, or other constituent documents of those condominiums if to do so would invalidate the reserved rights of a developer or be an unreasonable

---

[4] The current version of § 514B-22 was also in effect at the time of the events at issue in this case.

[5] Section 514B-146 is within part VI of Chapter 514B.

impairment of contract.

According to the Second Amended Complaint, the Palm Court homeowners' association was created in or around 1990. [Second Amended Complaint at ¶ 9.] There is no dispute that the events at issue in this case occurred after July 1, 2006. Further, based on the allegations in the Second Amended Complaint, there is no indication that § 514B-22(2) applies. This Court therefore CONCLUDES, for purposes of the instant Motions only, that Chapter 514B applies.

The version of § 514B-146(a) in effect at the time of the foreclosure of Plaintiffs' Unit stated, in pertinent part:

> All sums assessed by the association but unpaid for the share of the common expenses chargeable to any unit shall constitute a lien on the unit with priority over all other liens . . .
>
> The lien of the association may be foreclosed by action or by nonjudicial or power of sale foreclosure procedures set forth in chapter 667, by the managing agent or board, acting on behalf of the association, in like manner as a mortgage of real property. . . .

Haw. Rev. Stat. § 514B-146(a) (2010).[6]

During the relevant time period, Chapter 667, Part I contained the following provisions relevant to the instant case:

---

[6] This Court notes that Chow argues that Haw. Rev. Stat. Chapter 514A applies. See, e.g., Mem. in Supp. of Chow Motion at 12-13. Although this Court has concluded – for purposes of the instant Motions – that Chapter 514B applies, this Court notes that Haw. Rev. Stat. § 514A-90(a) (2010) was substantially similar to § 514B-146(a) (2010).

Haw. Rev. Stat. § 667-1 (2010) stated: "The circuit court may assess the amount due upon a mortgage, whether of real or personal property, without the intervention of a jury, and shall render judgment for the amount awarded, and the foreclosure of the mortgage. Execution may be issued on the judgment, as ordered by the court."

Haw. Rev. Stat. § 667-5 (2010) stated, in pertinent part:

(a)  When a power of sale is contained in a mortgage, and where the mortgagee, the mortgagee's successor in interest, or any person authorized by the power to act in the premises, desires to foreclose under power of sale upon breach of a condition of the mortgage, the mortgagee, successor, or person shall be represented by an attorney who is licensed to practice law in the State and is physically located in the State.  The attorney shall:

(1)  Give notice of the mortgagee's, successor's, or person's intention to foreclose the mortgage and of the sale of the mortgaged property, by publication of the notice once in each of three successive weeks (three publications), the last publication to be not less than fourteen days before the day of sale, in a newspaper having a general circulation in the county in which the mortgaged property lies; and

(2)  Give any notices and do all acts as are authorized or required by the power contained in the mortgage.

(b)  Copies of the notice required under subsection (a) shall be:

(1)  Filed with the state director of taxation; and

(2)  Posted on the premises not less than twenty-one days before the day of sale.

(c)  Upon the request of any person entitled to notice pursuant to this section and sections 667-5.5 and 667-6, the attorney, the mortgagee, successor, or person represented by the attorney shall disclose to the requestor the following information:

> (1)  The amount to cure the default, together with the estimated amount of the foreclosing mortgagee's attorneys' fees and costs, and all other fees and costs estimated to be incurred by the foreclosing mortgagee related to the default prior to the auction within five business days of the request; and

> (2)  The sale price of the mortgaged property once auctioned.

(d)  Any sale, of which notice has been given as aforesaid, may be postponed from time to time by public announcement made by the mortgagee or by some person acting on the mortgagee's behalf. Upon request made by any person who is entitled to notice pursuant to section 667-5.5 or 667-6, or this section, the mortgagee or person acting on the mortgagee's behalf shall provide the date and time of a postponed auction, or if the auction is canceled, information that the auction was canceled.  The mortgagee within thirty days after selling the property in pursuance of the power, shall file a copy of the notice of sale and the mortgagee's affidavit, setting forth the mortgagee's acts in the premises fully and particularly, in the bureau of conveyances.

Haw. Rev. Stat. § 667-5(a)-(d) (2010).

In contrast, Chapter 667, Part II contained the following provisions during the relevant time period:

Haw. Rev. Stat. § 667-21(a) (2010) stated: "The process in this part is an alternative power of sale process to the foreclosure by action and the foreclosure by power of sale in part I."

Haw. Rev. Stat. § 667-40 states:[7]

> A power of sale foreclosure under this part may be
> used in certain non-mortgage situations where a
> law or a written document contains, authorizes,
> permits, or provides for a power of sale, a power
> of sale foreclosure, a power of sale remedy, or a
> nonjudicial foreclosure.  These laws or written
> documents are limited to those involving time
> share plans, condominium property regimes, and
> agreements of sale.

Chapter 667, Part II included procedural requirements protecting
the mortgagor, beyond what was required under Chapter 667,
Part I.  For example, Part II had heightened notice requirements,
including requiring the foreclosing mortgagee to provide the
mortgagor with notice of how he could cure the default, Haw. Rev.
Stat. § 667-22 (2010), and additional requirements for the public
sale of the mortgaged property, Haw. Rev. Stat. §§ 667-25 to 667-
29 (2010).

Section 514B-146(a) (2010) allowed a condominium
association to foreclose on its lien through Chapter 667, Part I
or Part II, but it did not specify when each part could be used.[8]
The Second Amended Complaint alleges that there is federal
question jurisdiction pursuant to 28 U.S.C. § 1331 over
Plaintiffs' FDCPA claim, and either diversity jurisdiction

---

[7] The current version of § 667-40 was also in effect at the
time of the events at issue in this case.

[8] In 2010, Part III of Chapter 667 was "Other Provisions,"
and Part IV was "Time Share Interest Foreclosures."  Neither part
is relevant to the instant case.

pursuant to 28 U.S.C. § 1332 or supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over their state law claims. [Second Amended Complaint at ¶¶ 5-7.] "When a district court sits in diversity, or hears state law claims based on supplemental jurisdiction, the court applies state substantive law to the state law claims." Mason & Dixon Intermodal, Inc. v. Lapmaster Int'l LLC, 632 F.3d 1056, 1060 (9th Cir. 2011). When interpreting § 514B-146(a) (2010) and the other Hawai`i statutes relevant to the instant case, this Court is bound by the decisions of the Hawai`i Supreme Court. See Trishan Air, Inc. v. Fed. Ins. Co., 635 F.3d 422, 427 (9th Cir. 2011).

The Hawai`i Supreme Court has not addressed the issue of whether, pursuant to § 514B-146(a) (2010), a condominium association could foreclose on its lien using the procedures set forth in Chapter 667, Part I, or whether it was required to use Chapter 667, Part II under certain circumstances.

> In the absence of a governing state decision, a federal court attempts to predict how the highest state court would decide the issue, using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance. [Trishan Air, 635 F.3d at 427]; see also Burlington Ins. Co. v. Oceanic Design & Constr., Inc., 383 F.3d 940, 944 (9th Cir. 2004) ("To the extent this case raises issues of first impression, our court, sitting in diversity, must use its best judgment to predict how the Hawai`i Supreme Court would decide the issue." (quotation and brackets omitted)).

Evanston Ins. Co. v. Nagano, 891 F. Supp. 2d 1179, 1189 (D.

Hawai`i 2012) (some citations omitted). Thus, this Court is

tasked with predicting whether the Hawai`i Supreme Court would

hold that the Chapter 667, Part I foreclosure process was

available to the AOAO under the facts of this case.

Defendants ask this Court to consider two state circuit

court cases in which the circuit court granted motions to dismiss

that raised the same argument Defendants advance here – the

defendant condominium association was authorized to use

Chapter 667, Part I to foreclose upon its lien.  In Valencia v.

Association of Apartment Owners of Palm Villas II, et al., Civil

No. 16-1-1294-07 GWBC, the circuit court granted Defendants

Ekimoto & Morris, LLLC, Arlette S. Harada, and John A. Morris's

("Ekimoto Defendants") motion to dismiss the Valencias' First

Amended Complaint.[9]  [Chow Motion, Decl. of Peter W. Olson,

Exh. 3 (order granting the Ekimoto Defendants' motion to dismiss

("Valencia Order")); id., Exh. 4 (Trans. of 9/21/16 hearing on

motion to dismiss ("Valencia Transcript")).]  In Malabe v.

Association of Apartment Owners of Executive Centre, Civil

---

[9] Defendant Ekimoto & Morris, LLLC is a Hawai`i law firm, and Defendants Harada and Morris are Hawai`i attorneys.  [Chow Motion, Decl. of Peter W. Olson, Exh. 2 (First Amended Complaint in Valencia) at ¶¶ 3-5.]  According to the Valencias' First Amended Complaint, the Ekimoto Defendants advised the association defendant "regarding the non-judicial foreclosure process and also conducted the non-judicial foreclosure sale at issue" in Valencia.  [Id. at ¶ 10.]

No. 16-1-2256-12 RAN, the circuit court granted the defendant association's motion to dismiss the complaint. [Suppl. Exhs., Decl. of David R. Major ("Suppl. Major Decl."), Exh. B (order granting motion to dismiss ("<u>Malabe</u> Order")); <u>id.</u>, Exh. E (Trans. of 2/2/17 hearing on motion to dismiss ("<u>Malabe</u> Transcript")).]

This district court has recognized that "[a] federal district court may look to state trial court decisions as persuasive authority, but those decisions are not binding on the federal court." <u>Engle v. Liberty Mut. Fire Ins. Co.</u>, 402 F. Supp. 2d 1157, 1161 (D. Hawai`i 2005) (citing <u>Spinner Corp. v. Princeville Dev. Corp.</u>, 849 F.2d 388, 390 (9th Cir. 1988); <u>King v. Order of United Commercial Travelers of America</u>, 333 U.S. 153, 161, 68 S. Ct. 488, 92 L. Ed. 608 (1948)). The <u>Valencia</u> Order and the <u>Malabe</u> Order are not binding upon this Court, but it must decide whether to consider those orders as persuasive authority. First, this Court notes that each circuit court's legal analysis is not clear from either the order denying the motion to dismiss or the transcript of the hearing on the motion. Further, the procedural posture in each case does not render the orders persuasive. The Valencias have not had the opportunity to appeal the <u>Valencia</u> Order because the proceedings in that case are on-going, and the association defendant's motion to dismiss appears to be pending before the circuit court. Judgment was entered in <u>Malabe</u> on February 17, 2017. [Suppl. Major Decl., Exh. C (Final

14

Judgment); id., Exh. D (Notice of Entry of Final Judgment).] The thirty-day period to file a notice of appeal has passed, see Haw. R. App. P. 4(a)(1), and, according to the state court's docket sheet, the Malabes have not filed a notice of appeal. For these reasons, this Court DECLINES to consider the rulings in Valencia and Malabe as persuasive authority in the instant case.

Pursuant to § 514B-146(a) (2010), a condominium association could foreclose upon its lien using the "foreclosure procedures set forth in chapter 667." The AOAO argues that it "is crystal clear" from this language "that the legislature intended [to] afford condominium associations all three options for foreclosure, including . . . non-judicial (HRS § 667-5)." [Mem. in Supp. of AOAO Motion at 7.] However, § 514B-146(a) (2010) also stated that the condominium's foreclosure pursuant to Chapter 667 had to be "in like manner as a mortgage of real property." Section 667-5(a) (2010) expressly stated, "[w]hen **a power of sale is contained in a mortgage**, and where the mortgagee . . . desires to foreclose under power of sale upon breach of a condition of a mortgage . . . ." (Emphasis added.) The Hawai`i Supreme Court has construed this language as **requiring** an agreed upon power of sale in a mortgage in order to invoke the § 667-5 (2010) procedures. The supreme court stated:

> Prior to its repeal in 2012, **HRS § 667-5 authorized the non-judicial foreclosure of mortgaged property only "[w]hen a power of sale is**

15

> **contained in a mortgage."** HRS § 667–5(a). This
> court examined HRS § 667–5 in <u>Lee v. HSBC Bank</u>
> <u>USA</u>, 121 Hawai`i 287, 218 P.3d 775 (2009), and
> found that it "*authorize[d]* nonjudicial
> foreclosure *under a power of sale clause contained
> in a mortgage*." <u>Id.</u> at 289, 218 P.3d at 777
> (emphases added). In <u>Lee</u>, the plaintiffs argued,
> and this court agreed, that "no state statute
> creates a right in mortgagees to proceed by non-
> judicial foreclosure; the right is created by
> contract." <u>Id.</u> at at [sic] 292, 218 P.3d at 780.
>
> Thus, this court has held that **HRS § 667–5**
> **does not provide the nonjudicial power of**
> **foreclosure but only allows its creation, if the**
> **parties choose to do so, within the four corners**
> **of a contract.** <u>See</u> <u>id.</u>; <u>see also</u> <u>Apao v. Bank of</u>
> <u>N.Y.</u>, 324 F.3d 1091, 1095 (9th Cir. 2003) (finding
> that HRS § 667–5 "did not confer the power of
> sale, but merely authorized the parties to
> contract for the express terms of foreclosure upon
> default").

<u>Santiago v. Tanaka</u>, 137 Hawai`i 137, 154–55, 366 P.3d 612, 629–30

(bold emphases added) (italic emphases and some alterations in

<u>Santiago</u>) (footnotes omitted), *cert. denied*, <u>Tanaka v. Santiago</u>,

137 S. Ct. 198 (2016). In <u>Lee</u>, the Hawai`i Supreme Court also

stated:

> A mortgagee, or an entity acting on its behalf,
> cannot, however, proceed with a nonjudicial
> foreclosure under a power of sale clause in the
> mortgage unless it complies with either HRS
> section 667–5, or its alternative HRS sections
> 667–21, *et seq*. Without such compliance, the
> mortgagee has no legal authority to exercise its
> power of sale in a nonjudicial foreclosure sale.

121 Hawai`i at 292, 218 P.3d at 780 (footnote omitted). Thus,

Plaintiffs argue that, without a power of sale provision and

compliance with the requirements of § 667–5, a condominium

16

association does not have the legal authority to conduct the nonjudicial foreclosure sale.

In contrast, Chapter 667, Part II's "alternative power of sale process" is expressly made available "in certain non-mortgage situations" – such as in condominium property regimes – "where a law or a written document contains, authorizes, permits, or provides for a power of sale, a power of sale foreclosure, a power of sale remedy, or a nonjudicial foreclosure." § 667-40. Further, unlike Chapter 667, Part I (which does not have a specific definition of the term "mortgage"), Chapter 667, Part II contains a broad definition of the term "mortgage." Under Part II, the term "mortgage" is not limited to the commonly understood legal meaning of the term,[10] but it also includes any "other document under which property is . . . rendered subject to

_____

[10] For example, Black's Law Dictionary includes the following definitions of the term "mortgage":

> 1. A conveyance of title to property that is given as security for the payment of a debt or the performance of a duty and that will become void upon payment or performance according to the stipulated terms. – Also termed (archaically) dead pledge. 2. A lien against property that is granted to secure an obligation (such as a debt) and that is extinguished upon payment or performance according to stipulated terms. 3. An instrument (such as a deed or contract) specifying the terms of such a transaction. 4. Loosely, the loan on which such a transaction is based. 5. The mortgagee's rights conferred by such a transaction. . . .

(10th ed. 2014.)

a lien for the purpose of securing the payment of money." § 667-21(b) (2010). Thus, a condominium document which renders a condominium subject to a lien for the purpose of securing the owner's payment of association fees constituted a mortgage for purposes of Chapter 667, Part II, even though it would not have constituted a mortgage for purposes of Chapter 667, Part I.

Further, unlike § 667-5 (2010), which – as interpreted by the Hawai`i Supreme Court – required that the mortgagor and the mortgagee **agreed** to the power of nonjudicial foreclosure, Chapter 667, Part II also contains a broad definition of "power of sale" that is not limited to the creation by the parties of the power "within the four corners of a contract." For purposes of Part II: "'Power of sale' or 'power of sale foreclosure' means a nonjudicial foreclosure under this part when the mortgage contains, authorizes, permits, or provides for a power of sale, a power of sale foreclosure, a power of sale remedy, or a nonjudicial foreclosure." § 667-21(b) (2010). Thus, even a traditional mortgage which does not contain an agreed-upon power of sale provision may be deemed to contain a power of sale or to authorize a power of sale foreclosure for purposes of Chapter 667, Part II.

Only a limited class of mortgages – or liens that are deemed to be like a mortgage – may be foreclosed using Chapter 667, Part I, whereas a much broader range of liens may be

foreclosed using Chapter 667, Part II, including liens created

pursuant to documents deemed to be like mortgages by operation of

law.  This is consistent with the Hawai`i State Legislature

including far more protections for the mortgagor in Part II than

in Part I.  Because it is easier for a mortgagee to foreclose

under Part I, the threshold requirements for Part I to apply are

higher.  Thus, this Court concludes that: the statutes in

question (as interpreted by the Hawai`i Supreme Court) are

unambiguous; and a plain language reading of the statutes shows

that there are situations when a condominium association cannot

use Chapter 667, Part I to foreclose upon its lien – *i.e.*, when

the association does not have an agreement with the homeowner

providing for a power of sale.[11]  Although this Court could stop

its analysis there, this Court also notes that its interpretation

of Chapter 667 is consistent with the legislative intent behind

the 2010 versions of the statutes in question.[12]

---

[11] When a federal district court interprets a provision of
the Hawai`i Revised Statutes, "the court first looks to its plain
language."  Cycle City, Ltd. v. Harley-Davidson Motor Co., 81 F.
Supp. 3d 993, 1008 (D. Hawai`i 2014) (citing Awakuni v. Awana,
115 Hawai`i 126, 165 P.3d 1027, 1033-34 (2007)).

[12] This district court has stated:

> If the statutory language is plain and
> unambiguous, the courts give effect to the
> statute's plain meaning.  Haw. State Teachers
> Ass'n v. Abercrombie, 271 P.3d 613, 615 (Haw.
> 2012) (quoting Haw. Gov't Emps. Ass'n, AFSCME
> Local 152, AFL–CIO v. Lingle, 239 P.3d 1, 6 (Haw.
> (continued...)

The Hawai`i Supreme Court's discussion in <u>Hungate</u> of the legislative history behind the 2008 amendments to Chapter 667 is instructive.

> [A]mendments to the foreclosure process set forth in HRS chapter 667 Part I were intended to **"expand[] the rights of mortgagors**." <u>Kondaur Capital Corp. v. Matsuyoshi</u>, 136 Hawai`i 227, 239, 361 P.3d 454, 466 (2015) (explaining that amendments to former HRS § 667-5 "added requirements that mortgagees must fulfill in order to accomplish a valid foreclosure sale" resulting in a benefit to mortgagors by "expand[ing] and bolster[ing] the protections to which they are entitled").
>
> . . . [A] close reading of the **legislative history of the 2008 amendment shows it was enacted to set additional burdens on the *mortgagee* to protect the mortgagor** . . . . The amendment's structure or scheme attempted "to streamline and ensure transparency in the non-judicial foreclosure process *by requiring a foreclosure mortgagee* to provide pertinent information regarding the property to interested parties."  S.

---

[12](...continued)
2010)).  If the statutory language is ambiguous, the Hawaii courts look to the context in which the ambiguous terms are used.  <u>Id.</u>

Implicit in the analysis of a statute's terms is the consideration of the legislature's intent.  <u>Haw. State Teachers Ass'n</u>, 271 P.3d at 615.  The Hawaii Supreme Court has recognized that state statutes should be interpreted in a manner that avoids absurd, contradictory, illogical, and inconsistent results.  <u>Seki ex rel. Louie v. Haw. Gov't Emps. Ass'n, AFSCME Local No. 152, AFL–CIO</u>, 328 P.3d 394, 409–10 (Haw. 2014); <u>Gray v. Administrative Dir. of the Court</u>, 931 P.2d 580, 590 (Haw. 1997).

<u>Wagner v. Lahaina Baptist Church</u>, Civil No. 16-00186 HG-RLP, 2016 WL 5339346, at *3 (D. Hawai`i Sept. 22, 2016).

Stand. Comm. Rep. No. 2108, in 2008 Senate
Journal, at 917 (emphasis added).

2017 WL 747870, at *9 (italic emphases and some alterations in
Hungate) (bold emphases added); see also id. ("the statute was
amended to benefit the 'party in breach of the mortgage
agreement'" (quoting H. Stand. Comm. Rep. No. 1192, in 2008 House
Journal, at 1450)). Section 514B-146(a) (2010) – which was in
effect in 2008 when the legislature enacted the 2008 amendments
to Chapter 667 – provided that the foreclosure of a condominium
association lien was to be treated like the foreclosure of a
mortgage. Because the legislature is presumed to have been aware
of that fact when it enacted the 2008 amendments to
Chapter 667,[13] the legislature is also presumed to have intended
that the additional protections provided for mortgagors in the
amendments to Chapter 667 would also be available to condominium
owners subject to condominium association liens.

Under Defendants' proposed interpretation of § 514B-
146(a) (2010), a condominium association could choose freely
between judicial foreclosure, Part I foreclosure, or Part II
foreclosure. In other words, Defendants assert that Chapter 667,
Part I foreclosure was available to the association regardless of
whether there was an agreed upon power of sale. In this Court's

---

[13] "[T]he legislature is presumed to know the law when
enacting statutes[.]" Tamashiro v. Dep't of Human Servs., 112
Hawai`i 388, 427, 146 P.3d 103, 142 (2006) (some alterations in
Tamashiro) (citation and quotation marks omitted).

view, this is an illogical, and almost absurd, interpretation of § 514B-146(a) (2010) because it would render Chapter 667, Part II meaningless in the context of condominium association liens. Condominium associations would simply avoid additional burdens imposed in Part II if they could proceed under Part I without restriction. Further, if foreclosing associations were allowed to use Part I without an agreed upon power of sale (something foreclosing mortgagees could not do), then the mandate in § 514B-146(a) (2010) that the foreclosure of an association lien be treated "in like manner as a mortgage of real property" would be meaningless. This Court therefore REJECTS Defendants' proposed interpretation of § 514B-146(a) (2010) as being contrary to the related legislative history of Chapter 667 and to the principles of statutory construction.

Having examined the relevant statutes, their legislative history, and instructive case law regarding the foreclosure of mortgages, this Court PREDICTS that the Hawai`i Supreme Court would reject Defendants' proposed interpretation of § 514B-146(a) (2010) and would agree with Plaintiffs' proposed interpretation. Thus, this Court CONCLUDES that, because § 514B-146(a) (2010) required a condominium association to foreclose upon its lien "in like manner as a mortgage of real property," an association could only use the Chapter 667, Part I foreclosure procedure if it had an agreement with the condominium owner

22

providing for a power of sale.  To the extent that the AOAO

Motion and the Chow Motion ask this Court to conclude that

condominium associations could freely elect between the Chapter

667, Part I foreclosure procedure and the Part II procedure, the

Motions are both DENIED.

This Court now turns to the issue of whether each of

Plaintiffs' claims states a plausible claim for relief.  See

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("To survive a motion

to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible

on its face.'" (quoting Bell Atlantic Corp. v. Twombly, 550 U.S.

544, 570, 127 S. Ct. 1955 (2007))).

## II.  **Count I - Wrongful Foreclosure**

The AOAO argues that Hawai`i courts have not expressly

recognized that a wrongful foreclosure cause of action exists,

but it acknowledges that this district court has recognized that

there may be certain circumstances under which Hawai`i courts

would recognize the claim.  This district court has stated: "A

plaintiff may bring a wrongful foreclosure claim where: (1) 'the

foreclosure process failed to comply with Haw. Rev. Stat.

Chapter 667[;]' and (2) the foreclosing entity did not have the

right to foreclose."  Uy v. HSBC Bank USA, Nat'l Ass'n, Civ. No.

14-00261 HG-KSC, 2015 WL 1966689, at *8 (D. Hawai`i Apr. 30,

2015) (alteration in Uy) (quoting Lowther v. U.S. Bank N.A., Civ.

No. 13-00235 LEK-BMK, 2013 WL 4777129, at *20, 21 (D. Haw. Sept. 4, 2013)).[14]  Further, in <u>Federal Home Loan Mortgage Corp. v. Kama</u>, this district court noted that the Hawai`i Supreme Court's decision in <u>Kondaur Capital Corp. v. Matsuyoshi</u>, 136 Hawai`i 227, 361 P.3d 454 (2015), supported the proposition that there is a cognizable wrongful foreclosure claim under Hawai`i law.  <u>Kama</u>, Civ. No. 14-00137 ACK-KSC, 2016 WL 922780, at *5-6 (D. Hawai`i Mar. 9, 2016).  Even more recently, in <u>Hungate</u>, the Hawai`i Supreme Court held that "creating a cause of action under former HRS § 667-5 is not necessary to protect the interests of the mortgagor" because:

> the mortgagor can protect its interests through filing a claim against the mortgagee for wrongful foreclosure.  <u>See</u> <u>Santiago v. Tanaka</u>, 137 Hawai`i 137, 158-59, 366 P.3d 612, 633-34 (2016) (holding the nonjudicial foreclosure was wrongful and awarding restitution to mortgagor).  When voiding the foreclosure is not possible, the mortgagor is entitled to "restitution of their proven out-of-pocket losses" through a wrongful foreclosure claim.  <u>Id.</u> at 158, 366 P.3d at 633.  Because **mortgagees could be required to provide restitution to injured mortgagors under a wrongful foreclosure claim**, a "sufficient incentive" exists for mortgagees to ensure that the foreclosure proceedings are correctly performed by attorneys. <u>Best Place, Inc. [v. Penn Am. Ins. Co.]</u>, 82 Hawai`i [120,] 127, 920 P.2d [334,] 341 [(1996)]. . . .

2017 WL 747870, at *10 (emphasis added).  This Court therefore

---

[14] The <u>Lowther</u> order cited in <u>Uy v. HSBC Bank</u> as 2013 WL 4777129 is the same order cited as <u>Lowther v. U.S. Bank N.A.</u>, 971 F. Supp. 2d 989, 1013-14 (D. Hawai`i 2013).

concludes that wrongful foreclosure is a cognizable claim under Hawai`i law.

Plaintiffs' Second Amended Complaint alleges that, although Defendants gave notice and conducted the public sale of the Unit pursuant to Chapter 667, Part I, they were required to use Chapter 667, Part II, [Second Amended Complaint at ¶¶ 18, 22, 26,] because the AOAO "did not hold a mortgage [– or, by virtue of § 514B-146(a) (2010) – a lien that is treated like a mortgage –] containing a power of sale," [id. at ¶ 25]. Plaintiffs allege that they suffered damages because of Defendants' wrongful use of Chapter 667, Part I because, had Defendants complied with the provisions of Chapter 667, Part II, Plaintiffs would not have lost the Unit. [Id. at ¶¶ 27, 34.] This Court CONCLUDES that these allegations are sufficient to state the elements of a wrongful foreclosure claim against the AOAO.[15]

---

[15] This Court notes that Plaintiffs argue that, even if the AOAO was authorized to use Chapter 667, Part I, the foreclosure of the Unit was still wrongful because the AOAO failed to comply with the requirements of Ulrich v. Security Inv. Co., 35 Haw. 158, 182 (Haw. Terr. 1939). This Court notes that the Hawai`i Supreme Court has "recently reaffirmed Ulrich and recognized that this common law duty extends to mortgagees conducting non-judicial foreclosure sales of real property." Hungate, 2017 WL 747870, at *10 (citing Kondaur Capital Corp. v. Matsuyoshi, 136 Hawai`i 227, 361 P.3d 454 (2015)). However, this Court does not construe Count I of Plaintiffs' Second Amended Complaint as alleging a wrongful foreclosure claim against the AOAO based on the failure to comply with the requirements in Ulrich. If Plaintiffs intend to assert such a claim, they must obtain leave of court to file a third amended complaint.

## A.  **Timeliness**

Defendants have argued that Plaintiffs' claims are time-barred.  This Court has predicted that the Hawai`i Supreme Court would hold that a six-year limitations period applies to wrongful foreclosure claims pursuant to Haw. Rev. Stat. § 657-1(1).[16]  Lowther, 971 F. Supp. 2d at 1013-14 (discussing Niutupuivaha v. Wells Fargo Bank, N.A., Civil No. 13-00172 LEK-KSC, 2013 WL 3819600, at *9 (D. Hawai`i July 22, 2013)).

In the instant case, the foreclosure sale of the Unit occurred "on or about October 19, 2010."  [Second Amended Complaint at ¶ 18.]  Plaintiffs filed this action well within six years of that date.  See Notice of Removal, Decl. of David R. Major, Exh. A (First Amended Complaint, filed in state court on January 15, 2016).  Therefore, this Court REJECTS Defendants' argument that it should dismiss Count I on the ground that the claim is untimely.

---

[16] Haw. Rev. Stat. § 657-1(1) states:

> The following actions shall be commenced within six years next after the cause of action accrued, and not after:
>
>> (1)  Actions for the recovery of any debt founded upon any contract, obligation, or liability, excepting such as are brought upon the judgment or decree of a court; excepting further that actions for the recovery of any debt founded upon any contract, obligation, or liability made pursuant to chapter 577A shall be governed by chapter 577A[.]

Because Plaintiffs have sufficiently pleaded the elements of their wrongful foreclosure claim against the AOAO, and this Court concludes – for purposes of the instant Motions only – that the claim is timely, the AOAO Motion is DENIED as to Plaintiffs' claim against the AOAO in Count I.[17]

## B.  **Claim against Chow**

Relevant to Plaintiffs' wrongful foreclosure claim against Chow, the Hawai`i Supreme Court stated in <u>Hungate</u>, "[a]lthough [the bank's attorney] failed to follow some requirements of former HRS § 667-5, we hold that the statute did not create a cause of action against attorneys who fail to follow its requirements." 2017 WL 747870, at *8. The Hawai`i Supreme Court was not addressing the issue of whether a mortgagor can bring a **wrongful foreclosure** claim against the attorney who represented the mortgagee in the foreclosure process; it was addressing whether there was a cause of action against the mortgagee's attorney directly under the former § 667-5. However, the analysis is the same for the wrongful foreclosure claim against Chow in the instant case. Section 667-5 (2010) imposed duties upon the foreclosing mortgagee to protect the mortgagor's rights, and the failure to comply with the requirements of that statute could be vindicated through a wrongful foreclosure claim

---

[17] To the extent that the AOAO Motion raises any other arguments regarding Count I that are not expressly addressed in this section, those arguments are also rejected.

against the mortgagee, not the mortgagee's attorney.  This Court therefore CONCLUDES that a mortgagor cannot bring a wrongful foreclosure action against the mortgagee's attorney for failing to comply with the requirements of Chapter 667.  Because the foreclosure of a condominium association's lien is treated like the foreclosure of a mortgage, a condominium owner cannot bring a wrongful foreclosure action against the condominium association's attorney for failing to comply with the requirements of Chapter 667.

Plaintiffs' wrongful foreclosure claim against Chow fails to state a claim upon which relief can be granted.  See Fed. R. Civ. P. 12(b)(6).  Further, this Court CONCLUDES that Plaintiffs' wrongful foreclosure claim against Chow cannot be saved by any amendment.  See Sonoma Cty. Ass'n of Retired Emps. v. Sonoma Cty., 708 F.3d 1109, 1118 (9th Cir. 2013) ("As a general rule, dismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment." (brackets, citation, and internal quotation marks omitted)).  This Court therefore GRANTS the Chow Motion insofar as Plaintiffs' claim in Count I against Chow is DISMISSED WITH PREJUDICE.

## III. **Count II - FDCPA Claim**

Count II alleges that Chow violated 15 U.S.C. § 1692f, which states, in pertinent part:

A debt collector may not use unfair or
unconscionable means to collect or attempt to
collect any debt.  Without limiting the general
application of the foregoing, the following
conduct is a violation of this section:

. . . .

(6)  Taking or threatening to take any
nonjudicial action to effect dispossession or
disablement of property if–

(A)  there is no present right to
possession of the property claimed
as collateral through an
enforceable security interest[.]

For purposes of the FDCPA:

The term "debt collector" means any person who
uses any instrumentality of interstate commerce or
the mails in any business the principal purpose of
which is the collection of any debts, or who
regularly collects or attempts to collect,
directly or indirectly, debts owed or due or
asserted to be owed or due another. . . .

15 U.S.C. § 1692a(6).

A.    **Whether Chow is a "Debt Collector"**

Chow argues that Count II fails as a matter of law

because nonjudicial foreclosures – including foreclosures by

condominium associations – are not actions to collect a debt for

purposes of the FDCPA.  However, the Ninth Circuit has stated:

[T]he FDCPA "applies to the litigating activities
of lawyers."  Heintz [v. Jenkins], 514 U.S. [291,]
294, 115 S. Ct. 1489 [(1995)].  The Supreme
Court's reasoning in Heintz was twofold.  First,
the Court reasoned that lawyers who collect debts
through litigation plainly fall within the
statutory language defining "'debt collector[s]'"
to include those who "'regularly collec[t] or
attemp[t] to collect, directly or indirectly,

29

[consumer] debts owed or due or asserted to be
owed or due another.'" Id. (quoting 15 U.S.C. §
1692a(6) (alterations in original)). Second, the
Court observed that an earlier version of the
FDCPA provided an exemption for lawyers, but that
Congress had since repealed that exemption. See
id. at 294-95, 115 S. Ct. 1489; Pub. L. No.
95-109, § 803(6)(F), 91 Stat. 874, 875 (1977)
(exempting from the definition of the term "debt
collector" "any attorney-at-law collecting a debt
as an attorney on behalf of and in the name of a
client"); Pub. L. No. 99-361, 100 Stat. 768 (1986)
(repealing the exemption); see also 15 U.S.C.
§ 1692a(6)(A)-(F) (listing current exceptions to
the definition of "debt collector," none of which
cover attorneys).

McCollough v. Johnson, Rodenburg & Lauinger, LLC, 637 F.3d 939,

951 (9th Cir. 2011) (some alterations in McCollough).

It is true that this district court has recognized that

borrowers/mortgagors cannot bring FDCPA claims against

lenders/mortgagees based on mortgage foreclosure proceedings:

To the extent the FDCPA claim is based on the
foreclosure proceedings, the claim fails as a
matter of law. See, e.g., Caraang v. PNC
Mortgage, 795 F. Supp. 2d 1098, 1107 (D. Hawai`i
2011) ("This district court has ruled that a
lender pursuing a nonjudicial foreclosure is not
attempting to collect a debt for purposes of the
FDCPA."); Hanaway v. JPMorgan Chase Bank, No. SACV
10-1809 DOC(PLAx), 2011 WL 672559, at *4 (C.D.
Cal. Feb. 15, 2011) ("Since a transfer in interest
is the aim of a foreclosure, and not a collection
of debt, the foreclosure proceeding is not a debt
collection action under the FDCPA."); Aniel v.
T.D. Serv. Co., No. C 10-03185 JSW, 2010 WL
3154087, at *1 (N.D. Cal. Aug. 9, 2010) ("[A]
negations relating to the FDCPA claim relate to
foreclosure proceedings and courts throughout this
circuit have concluded that foreclosure does not
constitute 'debt collection' under the FDCPA.").

Mather v. Cent. Pac. Bank, Civil. No. 14-00139 LEK-BMK, 2014 WL

5580963, at *4 (D. Hawai`i Oct. 31, 2014) (alteration in <u>Mather</u>)
(citation omitted).

Similarly, Chow argues that Plaintiffs cannot assert a
FDCPA claim against him because "'a nonjudicial foreclosure is
not an attempt to collect a debt for purposes of the FDCPA.'"
[Mem. in Supp. of Chow Motion at 36 (quoting <u>Kitamura v. AOAO of
Lihue Townhouse</u>, 2013 WL 1398058, at *4 (D. Haw. 2013)
(Kobayashi, J.)).]  However, in cases where courts have applied
the principle that a nonjudicial foreclosure is not an attempt to
collect a debt in the context of condominium association liens,
the plaintiffs were attempting to bring FDCPA claims against **the
association**.  <u>See</u> <u>Doran v. Aus</u>, 308 F. App'x 49, 51 (9th Cir.
2009) (holding that the homeowners' association "was not a debt
collector under the FDCPA, because it was collecting its own
debt" (citing 15 U.S.C. § 1692a(6))); <u>Kitamura v. AOAO of Lihue
Townhouse</u>, Civil No. 12-00353 LEK-BMK, 2013 WL 1398058, at *4 (D.
Hawai`i Mar. 29, 2013) ("the claims against the AOAO must fail
because it is not a 'debt collector' under the FDCPA because it
has not attempted to collect a debt 'owed or due another'"
(quoting 15 U.S.C. § 1692a(6))); <u>see also</u> <u>Minichino v. Piilani
Homeowners Ass'n</u>, CIVIL NO. 16-00461 DKW-RLP, 2016 WL 5796799, at
*4 (D. Hawai`i Sept. 30, 2016) (same); <u>Moore v. Nat'l City Mortg.
Co.</u>, CV No. 09-00461 DAE-KSC, 2010 WL 914334, at *4 (D. Hawai`i
Mar. 15, 2010).

In contrast, an attorney representing a condominium association in a nonjudicial foreclosure proceeding is attempting to collect a debt "owed or due another." <u>See</u> 15 U.S.C. § 1692a(6). Further, while a condominium association's lien is treated like a mortgage under § 514B-146(a) (2010), the treatment of the lien like a mortgage does not extend to enforcement of the lien for purposes of a FDCPA claim. As previously noted, the aim of a foreclosure of a mortgage is to transfer interest in the property securing the defaulted mortgage, but the situation in the foreclosure of an association's lien is not necessarily the same. In the present case, the AOAO's lien for unpaid assessments was in the amount of $6,882.86, and approximately four years prior to the recording of this lien, Plaintiffs purchased the Unit for approximately $312,000.00, significantly more than the lien amount. [Second Amended Complaint at ¶¶ 10, 14.] For purposes of the instant Motions, this Court must take the factual allegations in Plaintiffs' Second Amended Complaint as true. <u>See</u> <u>Iqbal</u>, 556 U.S. at 678 (citing <u>Twombly</u>, 550 U.S. at 555, 127 S. Ct. 1955). Based on upon the reasonable inferences from the factual allegations of the Second Amended Complaint,[18] this Court concludes that Plaintiffs have pleaded a plausible

---

[18] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678 (citing <u>Twombly</u>, 550 at 556, 127 S. Ct. 1955).

claim that the purpose of the AOAO's nonjudicial foreclosure was to collect its debt, not to transfer interest in the Unit.[19]

In addition, the Second Amended Complaint alleges that Chow "at the times relevant herein . . . routinely demanded sums of money and attempted to collect said sums of money by sending letters and publishing notices falsely stating that [he] was authorized to use Part I to collect delinquent homeowner assessments." [Second Amended Complaint at ¶ 38.] This Court therefore CONCLUDES that Plaintiffs have sufficiently alleged that Chow is a "debt collector" for purposes of the FDCPA.

### B. __Timeliness__

Defendants have argued that Plaintiffs' claims are untimely. Under the FDCPA: "An action to enforce any liability created by this subchapter may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). In <u>Lyons v. Michael & Associates</u>, the Ninth Circuit noted that:

> [I]n general, the discovery rule applies to statutes of limitations in federal litigation, that is, "[f]ederal law determines when the

---

[19] This Court acknowledges that the AOAO did actually obtain title to the Unit in the public sale. [Second Amended Complaint at ¶ 19.] However, that alone does not show that the purpose of the AOAO's invocation of the nonjudicial foreclosure process was to transfer interest in the Unit.

33

> limitations period begins to run, and the general
> federal rule is that 'a limitations period begins
> to run when the plaintiff knows or has reason to
> know of the injury which is the basis of the
> action.'"

824 F.3d 1169, 1171 (9th Cir. 2016) (alterations in Lyons)

(quoting Mangum v. Action Collection Serv., Inc., 575 F.3d 935,

940 (9th Cir. 2009)).  The Ninth Circuit noted that it held in

Mangum that the discovery rule applied to Mangum's FDCPA claim

regarding "wrongful[] disclos[ure of] her debt information to an

outside party."  Id.  The Ninth Circuit also noted that, after

Mangum, it applied the discovery rule to an FDCPA claim regarding

debt collection letters.  Id. (citing Tourgeman v. Collins Fin.

Servs., Inc., 755 F.3d 1109, 1118 n.5 (9th Cir. 2014)).  After

discussing these cases, the Ninth Circuit rejected the argument

that the discovery rule only applies to certain FDCPA violations.

Id. at 1172 ("Applying the discovery rule to some FDCPA claims

but not others would be out of step with our general approach to

the discovery rule, and would threaten to capriciously limit the

broad, remedial scope of the FDCPA.").  This Court therefore

CONCLUDES that the discovery rule applies to the determination of

when the statute of limitations on Plaintiffs' FDCPA claim began

to run.

Although Defendants argue that the FDCPA statute of

limitations is not subject to tolling, there is no Ninth Circuit

case law, or order of this district court stating so.  Thus, this

34

Court concludes that tolling of the statute of limitations for FDCPA claims is possible, but courts have often ruled that tolling was not warranted under the facts presented. See, e.g., Crow v. Ocwen Loan Servicing, LLC, CIVIL NO. 15-00161 SOM/KJM, 2016 WL 3557008, at *9 (D. Hawai`i June 24, 2016) (ruling that the plaintiff's "unfamiliarity with the law does not toll the FDCPA's statute of limitations when he knew or should have known about the actions supporting any FDCPA claim within a year from his first written notice"); Wilson v. Gordon & Wong Law Grp., P.C., No. 2:13-cv-00609-MCE-KJN, 2013 WL 5230387, at *3 (E.D. Cal. Sept. 16, 2013) (noting that, in a prior order in the case, "the Court declined to toll the statute of limitations and explained, '[a]t no point does Plaintiffs' Complaint allege any facts suggesting that equitable tolling should apply to the FDCPA . . . statute of limitations'").

Plaintiffs allege that:

28. DEFENDANTS fraudulently concealed the wrong they were committing by implying, stating and/or representing that they were authorized to conduct a nonjudicial foreclosure or public sale under Part I.

29. As members of the homeowner association, PLAINTIFFS were entitled to rely on and did rely on the statements and representations made by DEFENDANTS concerning DEFENDANTS' right to conduct a public sale under Part I.

30. PLAINTIFFS did not discover the claims against DEFENDANTS that they assert herein until sometime in December of 2015.

35

[Second Amended Complaint at ¶¶ 28-30.] Taking Plaintiffs'
factual allegations to be true, this Court CONCLUDES that their
factual allegations support a reasonable inference that their
FDCPA claim against Chow is timely, based on either the discovery
rule or equitable tolling because Plaintiffs allege reasonable
reliance on the representations of their homeowners' association.
At the motion to dismiss stage, this is sufficient to distinguish
Plaintiffs' position regarding discovery and/or tolling from
arguments based on solely on the plaintiff's ignorance of the
law. Determining the merits of Plaintiffs' position will involve
mixed issues of law and fact that cannot be decided in a motion
to dismiss.

        This Court therefore CONCLUDES that Count II states a
plausible FDCPA claim against Chow. The Chow Motion is DENIED as
to Count II.

## IV. <u>Count III - UDAP Claim</u>

        In Count III, Plaintiffs assert a UDAP claim against
both Defendants. Haw. Rev. Stat. § 480-2(a) states, in pertinent
part, "unfair or deceptive acts or practices in the conduct of
any trade or commerce are unlawful." Section 480-2(d) states:
"No person other than a consumer, the attorney general or the
director of the office of consumer protection may bring an action
based upon unfair or deceptive acts or practices declared
unlawful by this section." For purposes of Chapter 480:

"'Consumer' means a natural person who, primarily for personal, family, or household purposes, purchases, attempts to purchase, or is solicited to purchase goods or services or who commits money, property, or services in a personal investment."  Haw. Rev. Stat. § 480-1.

A.  **Standing**

Plaintiffs are natural persons.  According to the Second Amended Complaint, they purchased the Unit when Mr. Galima was stationed in Hawai`i, and they rented the Unit when he was reassigned outside of Hawai`i.  [Second Amended Complaint at ¶¶ 10, 12.]  Taking Plaintiffs' factual allegations to be true, this Court CONCLUDES that the allegations support a reasonable inference that Plaintiffs are consumers for purposes of § 480-1 because they committed money in a personal investment.  See Cieri v. Leticia Query Realty, Inc., 80 Hawai`i 54, 67, 905 P.2d 29, 42 (1995) (holding that "by purchasing the home at issue in the present case, the Cieris committed money in a personal investment, and accordingly have standing as 'consumers'").

B.  **Trade or Commerce**

In addition to their standing as consumers, Plaintiffs must allege that Defendants' conduct occurred in the course of "trade or commerce."

### 1.  Chow

In Hungate, the plaintiff alleged a similar UDAP claim
to the one Plaintiffs allege against Chow.  Hungate alleged that
the foreclosing bank's attorney, *inter alia*, failed to comply
with the requirements of Chapter 667, and this conduct also
constituted unfair and deceptive trade acts.  2017 WL 747870, at
*2.

The Hawai`i Supreme Court rejected the attorney's
argument that Hungate was not a consumer of the attorney's
services.  It was sufficient that Hungate was a consumer based on
his mortgage with the bank.  Id. at *14.  However, the supreme
court also rejected Hungate's argument that the attorney acted as
the bank's agent in the foreclosure process and was therefore
subject to a UDAP claim.  Hungate's argument was based on Cieri,
which held that a real estate agent or broker could be named as a
defendant in a UDAP claim arising from a real estate transaction.
The supreme court noted, *inter alia*, that an attorney's role in
an adversarial process was distinguishable from the role of a
real estate agent or broker, and that allowing UDAP claims
against a foreclosing bank's attorney could compromise the
attorney's representation of the bank.  Id. at *14-15.  It
therefore held that "based on the allegations against [the
attorney], we decline to recognize a UDAP claim against him by
Hungate under HRS § 480-2 in the instant foreclosure action."

38

Id. at *15.

In light of the similarity in the UDAP claims against the attorneys, the same analysis applies to Plaintiffs' UDAP claim against Chow in the instant case. This Court therefore CONCLUDES that, because Chow's alleged conduct upon which Plaintiffs rely to support their UDAP claim did not occur in the course of "trade or commerce" between Plaintiffs and Chow, Plaintiffs' UDAP claim against Chow fails as a matter of law. Further, this Court CONCLUDES that Plaintiffs' UDAP claim against Chow cannot be saved by any amendment. This Court therefore GRANTS the Chow Motion insofar as Plaintiffs' claim in Count III against Chow is DISMISSED WITH PREJUDICE.

## 2. The AOAO

Hawai`i courts have recognized other jurisdictions' interpretation of "trade or commerce" as being within the "business context." Cieri, 80 Hawai`i at 63-65, 905 P.2d at 37-39 (discussing and adopting several Massachusetts cases stating that trade or commerce is within the business context); see also Dalesandro v. Longs Drug Stores Cal., Inc., 383 F. Supp. 2d 1244, 1250 (D. Hawai`i 2005) (adopting the Cieri court's interpretation of trade or commerce). The Hawai`i Supreme Court has stated that a § 480-2 claim "is not available where the transaction is strictly private in nature, and is in no way undertaken in the ordinary course of a trade or business." Cieri, 80 Hawai`i at

63, 905 P.2d at 38.  Although not directly on point, the supreme

court's analysis of this issue with regard to the foreclosing

bank in <u>Hungate</u> is instructive:

> Transactions conducted in a business context, "by
> their very nature, include transactions conducted
> by a financial institution," such as a "loan
> extended by a financial institution[.]"  <u>[Haw.
> Cmty. Fed. Credit Union v.] Keka</u>, 94 Hawai`i
> [213,] 227, 11 P.3d [1,] 15 [(2000)].  Thus, the
> nature of a non-judicial foreclosure, which
> results from a loan transaction, is that of a
> transaction conducted in the business context.  It
> is undisputed that [the bank] is a financial
> institution regularly engaged in providing loans
> and conducting foreclosures.  [The bank's] acts
> throughout the foreclosure proceedings therefore
> occurred in the business context.

2017 WL 747870, at *12 (some alterations in <u>Hungate</u>).

Condominium associations are empowered to provide a variety of

services to the condominium, which ultimately benefit the

condominium owners, such as: "[h]iring and discharg[ing] managing

agents and other independent contractors, agents, and employees;"

"[r]egulat[ing] the use, maintenance, repair, replacement, and

modification of common elements;" and "[c]aus[ing] additional

improvements to be made as a part of the common elements."  Haw.

Rev. Stat. § 514B-104(a)(3), (6), (7).[20]  In order to conduct

these functions, the association collects regular assessments

from condominium owners.  The association's powers also include:

---

[20] The version of § 514B-104 which is currently in effect
was also in effect at the time of the events at issue in this
case.

"[i]mpos[ing] charges and penalties, including late fees and
interest, for late payment of assessments"; and "[i]nstitut[ing]
. . . litigation or administrative proceedings in its own name on
behalf of itself or two or more unit owners on matters affecting
the condominium." § 514B-104(a)(11), (4).  This Court therefore
CONCLUDES that the AOAO's placement of a lien on Plaintiffs' Unit
for unpaid assessments and its foreclosure of that lien occurred
in the business context, and the AOAO's conduct may give rise to
a UDAP claim.

### C.  Timeliness

The AOAO also argues that this Court should dismiss
Plaintiffs' UDAP claim against it because the claim is untimely.
Haw. Rev. Stat. § 480-24 states:

> Any action to enforce a cause of action arising
> under this chapter shall be barred unless
> commenced within four years after the cause of
> action accrues, except as otherwise provided in
> section 480-22.  For the purpose of this section,
> a cause of action for a continuing violation is
> deemed to accrue at any time during the period of
> the violation.

Thus, this Court has stated that the limitations period for a
UDAP claim "starts to run upon the occurrence of the defendant's
alleged violation."  Lowther, 971 F. Supp. 2d at 1008 (citations,
internal quotation marks and brackets omitted).

As previously noted, the public sale occurred on or
about October 19, 2010.  [Second Amended Complaint at ¶ 18.]
Plaintiffs also allege that "[t]he quitclaim deed was recorded on

41

November 9, 2010 and since that time AOAO has possessed, controlled and enjoyed the [Unit] and all of its benefits." [Id. at ¶ 20.] Even assuming that the nonjudicial foreclosure process was not complete until, and the alleged UDAP violation ended on, November 9, 2010, Plaintiffs failed to bring this action within four years of that date. Thus, Plaintiffs' UDAP claim against the AOAO is time-barred unless the limitations period may be tolled.

Plaintiffs contend that the statute of limitations period was tolled because Defendants fraudulently concealed the fact that the AOAO was not authorized to foreclose under Chapter 667, Part I. This district court has stated:

> "A statute of limitations may be tolled if the defendant fraudulently concealed the existence of a cause of action in such a way that the plaintiff, acting as a reasonable person, did not know of its existence." Hexcel Corp. v. Ineos Polymers, Inc., 681 F.3d 1055, 1060 (9th Cir. 2012). Fraudulent concealment involves the actions taken by a liable party to conceal a known cause of action, and has been defined as "employment of artifice, planned to prevent inquiry or escape investigation, and mislead or hinder acquirement of information disclosing a right of action." Hancock v. Kulana Partners, LLC, 992 F. Supp. 2d 1053, 1062 (D. Haw. Jan. 10, 2014) (quoting Au [v. Au], 626 P.2d [173,] 178 [(Haw. 1981)]) (internal quotation marks and brackets omitted). In order for the doctrine of fraudulent concealment to apply, "[t]he acts relied on must be of an affirmative character and fraudulent." Id. (quoting Au, 626 P.2d at 178). Under both Hawaii and California law, there can be no fraudulent concealment if there is a "known cause of action." See Mroz v. Hoaloha Na Eha, Inc., 360 F. Supp. 2d 1122, 1129 (D. Haw. 2005)

42

("If there is a known cause of action there can be no fraudulent concealment[.]").  Moreover,

> It is not necessary that a party should know the details of the evidence by which to establish his cause of action.  It is enough that he knows that a cause of action exists in his favor, and when he has this knowledge, it is his own fault if he does not avail himself of those means which the law provides for prosecuting or preserving his claim.

Mroz, 360 F. Supp. 2d at 1129 (internal quotation marks and citation omitted).

Moddha Interactive, Inc. v. Philips Elec. N. Am. Corp., 92 F. Supp. 3d 982, 996 (D. Hawai`i 2015), *aff'd sub nom.*, 654 F. App'x 484 (Fed. Cir. 2016).

For the same reasons set forth in the discussion of whether Plaintiffs have pleaded a sufficient basis for tolling of the statute of limitations applicable to their FDCPA claim, this Court also CONCLUDES that Plaintiffs have pleaded a sufficient basis to support tolling of their UDAP claim against the AOAO and that the merits of Plaintiffs' tolling argument cannot be determined at the motion to dismiss stage.

The Court therefore DENIES the AOAO Motion as to Plaintiffs' UDAP claim against the AOAO in Count III.

## V.    **Count IV - Fraud**

Count IV alleges a fraud claim against both Defendants. The elements of a fraud claim are: "(1) false representations were made by defendants, (2) with knowledge of their falsity (or without knowledge of their truth or falsity), (3) in

43

contemplation of plaintiff's reliance upon these false representations, and (4) plaintiff did rely upon them." <u>Shoppe v. Gucci Am., Inc.</u>, 94 Hawai`i 368, 386, 14 P.3d 1049, 1067 (2000).

### A.   <u>Chow</u>

Although <u>Hungate</u> did not involve a fraud claim against the foreclosing mortgagee's attorney, this Court predicts that the Hawai`i Supreme Court would apply the same analysis that it applied to the UDAP claim and would hold that a mortgagor cannot bring a fraud claim against a mortgagee's attorney for alleged misrepresentations made during a nonjudicial foreclosure process. This Court therefore CONCLUDES that Plaintiffs' fraud claim against Chow fails as a matter of law and that it is not possible for Plaintiffs to cure the defects in the claim by amendment. The Chow Motion is GRANTED insofar as Plaintiffs' fraud claim against Chow in Count IV is DISMISSED WITH PREJUDICE.

### B.   <u>The AOAO</u>

#### 1.   <u>Timeliness</u>

First, insofar as Defendants raised general challenges to the timeliness of Plaintiffs' claims, this Court will address whether Plaintiffs' fraud claim is time-barred. Plaintiffs' fraud claim is subject to the six-year limitations period in Haw.

Rev. Stat. § 657-1(4).[21]  See Lynch v. Fed. Nat'l Mortg. Ass'n,

CIVIL NO. 16-00213 DKW-KSC, 2016 WL 6776283, at *3 (D. Hawai`i

Nov. 15, 2016) (some citations omitted) (citing Eastman v.

McGowan, 86 Hawai`i 21, 946 P.2d 1317, 1323 (1997)).  Plaintiffs

allege that the AOAO fraudulently represented, throughout the

nonjudicial foreclosure process, that it had the authority to

proceed under Chapter 667, Part I.  As previously noted, the

process arguably concluded on either October 19, 2010 or

November 9, 2010, and Plaintiffs filed this action within six

years of either of those dates.  This Court therefore CONCLUDES –

for purposes of the AOAO Motion only – that Plaintiffs' fraud

claim against the AOAO is timely.  To the extent that the AOAO

Motion argues that this Court should dismiss Plaintiffs' fraud

claim against the AOAO as time-barred, the AOAO Motion is DENIED.

### 2.  **Particularity**

This Court has recognized that fraud claims are subject

to a heightened pleading standard.  The AOAO argues that this

Court must dismiss Count IV because Plaintiffs did not plead

their fraud claim with sufficient particularity.

> [Fed. R. Civ. P.] 9(b) requires that, "[i]n
> alleging fraud or mistake, a party must state with
> particularity the circumstances constituting fraud
> or mistake."  Pursuant to Rule 9(b), a party is
> required to make particularized allegations of the

_____

[21] Pursuant to § 657-1(4), the six-year limitations period
applies to "[p]ersonal actions of any nature whatsoever not
specifically covered by the laws of the State."

circumstances constituting fraud.  See <u>Sanford v.</u>
<u>MemberWorks, Inc.</u>, 625 F.3d 550, 557-58 (9th Cir.
2010).

In their pleadings, Plaintiffs "must allege
the time, place, and content of the fraudulent
representation; conclusory allegations do not
suffice."  See <u>Shroyer v. New Cingular Wireless</u>
<u>Servs., Inc.</u>, 622 F.3d 1035, 1042 (9th Cir. 2010)
(citation omitted).  "Malice, intent, knowledge,
and other conditions of a person's mind may be
alleged generally." Fed. R. Civ. P. 9(b); <u>see</u>
<u>also</u> <u>Odom v. Microsoft Corp.</u>, 486 F.3d 541, 554
(9th Cir. 2007) (en banc) ("[T]he state of mind —
or scienter — of the defendants may be alleged
generally." (citation omitted)); <u>Walling v.</u>
<u>Beverly Enters.</u>, 476 F.2d 393, 397 (9th Cir. 1973)
(stating that Rule 9(b) "only requires the
identification of the circumstances constituting
fraud so that the defendant can prepare an
adequate answer from the allegations" (citations
omitted)).

When there are multiple defendants,

Rule 9(b) does not allow a complaint to
merely lump multiple defendants together but
require[s] plaintiffs to differentiate their
allegations when suing more than one
defendant . . . and inform each defendant
separately of the allegations surrounding his
alleged participation in the fraud.  In the
context of a fraud suit involving multiple
defendants, a plaintiff must, at a minimum,
identif[y] the role of [each] defendant[] in
the alleged fraudulent scheme.

<u>Swartz v. KPMG LLP</u>, 476 F.3d 756, 764-65 (9th Cir.
2007) (alterations in <u>Swartz</u>) (internal quotation
marks and citations omitted); <u>see also</u> <u>Meridian</u>
<u>Project Sys., Inc. v. Hardin Constr. Co.</u>, 404 F.
Supp. 2d 1214, 1226 (E.D. Cal. 2005) ("When fraud
claims involve multiple defendants, the complaint
must satisfy Rule 9(b) particularity requirements
for each defendant." (citations omitted)).

Barker v. Gottlieb, 23 F. Supp. 3d 1152, 1164-65 (D. Hawai`i 2014) (alterations in Barker) (some citations omitted).

First, although there are two defendants named in Count IV, this Court has dismissed Count IV as to Chow. This Court also notes that Plaintiffs asserted an agency theory of liability against Chow and the actions that Chow allegedly took during the foreclosure process were taken on behalf of the AOAO. Thus, this Court only reads the allegations related to Count IV as being attributed to the AOAO.

As to the time, place, and content of the allegedly fraudulent representation, Plaintiffs' clearly base their fraud claim on the AOAO's representation that it was authorized to conduct a foreclosure sale of the Unit pursuant to Chapter 667, Part I. [Second Amended Complaint at ¶ 51.] The only specific time and place identified is the public sale of the Unit, which occurred on or about October 19, 2010. [Id. at ¶ 18.] Although there were presumably other points in the nonjudicial foreclosure process when the AOAO represented it had the authority to proceed under Chapter 667, Part I, the Second Amended Complaint does not identify those with particularity. However, the Second Amended Complaint does sufficiently plead the time, place, and content of the alleged fraudulent representation at the public sale.

As to the AOAO's intent, Count IV alleges that the AOAO "falsely represented that [it was] authorized to sell the

Apartment at a public sale under Part I." [Second Amended Complaint at ¶ 51.] Although "intent, knowledge, and other conditions of a person's mind may be alleged generally," Rule 9(b), paragraph 51 is not enough to allege that the AOAO made the alleged misrepresentation with knowledge of its falsity (or without knowing whether it was true or false). However, the general allegations of the Second Amended Complaint also assert that the AOAO "fraudulently concealed the wrong [it was] committing by implying, stating and/or representing that [it was] authorized to conduct a nonjudicial foreclosure or public sale under Part I." [Second Amended Complaint at ¶ 28.] The Court concludes that this allegation is sufficient to satisfy the general pleading requirement for the knowledge requirement of Plaintiffs' fraud claim.

This Court therefore CONCLUDES that Plaintiffs' fraud claim against the AOAO is sufficiently pled. The AOAO's other challenges to Plaintiffs' claim, such as whether it was reasonable for Plaintiffs to rely on the AOAO's position regarding the applicable law, are not appropriate at the motion to dismiss stage. The AOAO may wish to revisit such arguments at a later stage in these proceedings.

The AOAO Motion is DENIED as to the AOAO's request to dismiss Plaintiffs' fraud claim against it in Count IV.

## VI.  Count V - IIED

Count V alleges an IIED claim against both Defendants.[22]  "The elements of [IIED] pursuant to Hawaii law, are: (1) that the act allegedly causing the harm was intentional or reckless, (2) that the act was outrageous, and (3) that the act caused (4) extreme emotional distress to another."  Barber v. Ohana Military Cmtys., LLC, Civil No. 14-00217 HG-KSC, 2014 WL 3529766, at *10 (D. Hawai`i July 15, 2014) (citing Enoka v. AIG Hawaii Ins. Co., Inc., 128 P.3d 850, 872 (Haw. 2006)).

### A.  Chow

Although Hungate did not involve an IIED claim against the foreclosing mortgagee's attorney, this Court predicts that the Hawai`i Supreme Court would apply the same analysis that it applied to the UDAP claim and would hold that a mortgagor cannot bring an IIED claim against a foreclosing mortgagee's attorney for his actions and omissions during a nonjudicial foreclosure process.  This Court therefore CONCLUDES that Plaintiffs' IIED claim against Chow fails as a matter of law and that it is not possible for Plaintiffs to cure the defects in the claim by amendment.  This Court therefore GRANTS the Chow Motion insofar

---

[22] The AOAO Motion also presents arguments about whether Plaintiffs have sufficiently pleaded a claim for negligent infliction of emotional distress ("NIED").  This Court will not address those arguments because it does not construe Count V as alleging an NIED claim.

as Plaintiffs' IIED claim against Chow in Count V is DISMISSED
WITH PREJUDICE.

## B.    **The AOAO**

### 1.    **Timeliness**

The AOAO argues that this Court must dismiss
Plaintiffs' IIED claim against it because the claim is time-
barred.

An IIED claim is subject to a two-year statute of
limitations. Kuehu v. United Airlines, Inc., Civ. No. 16-00216
ACK-KJM, 2016 WL 4445743, at *6 (D. Hawai`i Aug. 23, 2016) ("The
Hawaii tort statute provides a two-year statute of limitations,
which has been determined to apply to IIED claims." (citing Haw.
Rev. Stat. § 657-7)).[23]  The discovery rule applies to the
limitations period for an IIED claim.  See, e.g., DeRosa v. Ass'n
of Apartment Owners of the Golf Villas, 185 F. Supp. 3d 1247,
1260 (D. Hawai`i 2016), *reconsideration denied*, 2016 WL 3951061
(July 20, 2016).  According to the discovery rule under Hawai`i
law, "a cause of action accrues when the plaintiff knew or should
have known of the causal connection between the defendant's
action and the damage done." Id. (citations omitted).

---

[23] Section 657-7 states: "Actions for the recovery of
compensation for damage or injury to persons or property shall be
instituted within two years after the cause of action accrued,
and not after, except as provided in section 657-13."  The
exceptions identified in Haw. Rev. Stat. § 657-13 are not
applicable to the instant case.

For the same reasons set forth in the discussion of Plaintiffs' tolling arguments as to their FDCPA claim and their UDAP claim, this Court also CONCLUDES that Plaintiffs have pleaded a sufficient basis to support either tolling of their IIED claim against the AOAO or an argument that their IIED claim is timely based on the discovery rule. The merits of Plaintiffs' timeliness arguments cannot be determined at the motion to dismiss stage. To the extent that the AOAO Motion asks this Court to dismiss Plaintiffs' IIED claim against it as time-barred, the AOAO Motion is DENIED.

## 2.   Whether the Claim is Sufficiently Pled

Plaintiffs allege that the AOAO "deliberately, intentionally and wrongfully utilized the expedited power of sale process contained in Part I to strip the [Unit] from Plaintiffs." [Second Amended Complaint at ¶ 60 (emphasis omitted).] They also allege that, had the AOAO utilized Chapter 667, Part II, they would not have lost the Unit, and the loss of the Unit damaged their credit rating, as well as Mr. Galima's military career, which caused them to suffer "mental anguish and emotional distress." [Id. at ¶¶ 59, 61-62.] Thus, Plaintiffs have clearly pleaded the first and third elements of their IIED claim. They pled the fact that they suffered emotional distress, although they did not plead the specific wording "extreme emotional distress." However, there is no heightened pleading requirement

51

for an IIED claim, and this Court concludes that the allegation of "mental anguish" was sufficient to put the AOAO on notice that Plaintiffs' emotional distress was extreme.  See Enoka, 109 Hawai`i at 559, 128 P.3d at 872 ("extreme emotional distress constitutes, *inter alia*, mental suffering, **mental anguish**, nervous shock, and other highly unpleasant mental reactions" (emphasis added) (citation and internal quotation marks omitted)).  This Court therefore concludes that the Second Amended Complaint sufficiently pleads the fourth element of Plaintiffs' IIED claim.

As to the second element (that the AOAO's conduct was outrageous), the Hawai`i Supreme Court has held that "[t]he term 'outrageous' has been construed to mean 'without just cause or excuse and beyond all bounds of decency.'"  Id. (citation omitted).  This district court has stated:

> In explaining the type of "outrageous" conduct that gives rise to a claim for intentional infliction of emotional distress, the Hawaii Supreme Court has noted:
>
>> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.  Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly

> intolerable in a civilized community.
> Generally, the case is one in which the
> recitation of the facts to an average member
> of the community would arouse his resentment
> against the actor, and lead him to exclaim,
> "Outrageous!"
>
> Dunlea v. Dappen, 83 Haw. 28, 38, 924 P.2d 196,
> 206 (1996).[24] "The question whether the actions
> of the alleged tortfeasor are unreasonable or
> outrageous is for the court in the first instance,
> although where reasonable people may differ on
> that question it should be left to the jury."
> Young v. Allstate Ins. Co., 119 Haw. 403, 429, 198
> P.3d 666, 692 (2008).

Martin v. Ampco Sys. Parking, Civil No. 12-00598 SOM/RLP, 2013 WL 5781311, at *15-16 (D. Hawai`i Oct. 24, 2013), *reconsideration granted*, 2013 WL 6624124 (Dec. 16, 2013).[25]

This district court has recognized that conduct meeting the requisite outrageousness is not often found in cases arising from foreclosure proceedings. However, this district court has concluded that some IIED claims based on foreclosure proceedings were actionable:

> Foreclosure proceedings generally do not rise
> to the level of extreme and outrageous conduct to
> support an IIED claim. In Doran v. Wells Fargo
> Bank, No. 11-00132, 2011 WL 5239738, at *10-11 (D.
> Haw. Oct. 31, 2011), for example, a plaintiff
> alleged a claim for IIED based, in part, on
> defendant cancelling his loan modification and

---

[24] Dunlea was abrogated on other grounds by Hac v. University of Hawai`i, 102 Hawai`i 92, 73 P.3d 46 (2003).

[25] The Motion for Reconsideration is not relevant here. See Martin, 2013 WL 6624124 at *1 (stating that the Motion for Reconsideration relates to an allegedly illegal revocation of a work permit).

foreclosing upon his property.  The defendant had represented that plaintiff was pre-qualified for the loan modification.  The court dismissed the IIED claim, as such conduct was not outrageous. Doran, 2011 WL 5239738, at *11; see also Almaden v. Peninsula Mortgage, Inc., No. 12-00390, 2012 WL 6738512, at *10 (D. Haw. Dec. 31, 2012) (dismissing IIED claim alleging that defendant lied about a loan modification and subsequently foreclosed); Uy v. Wells Fargo Bank, N.A., No. 10-00204, 2011 WL 1235590, at *14 (D. Haw. Mar. 28, 2011)); but see Bass v. Ameriquest Mortg. Co., No. 09-00476, 2010 WL 3025167, at *10-11 (D. Haw. Aug. 3, 2010) (denying summary judgment as to an IIED claim where the plaintiff asserted that **the defendant "forged her signature on the 2006 loans, refused to honor [her] right of cancellation of the loans when she discovered the forgeries, and commenced foreclosure proceedings against [her] when she failed to make her loan payments"**).

Plaintiff here alleges that he has suffered and continues to suffer emotional distress "[a]s a direct, proximate and foreseeable result of the AOAO's . . . and Associa's negligent or intentional acts, which are outrageous." (Am. Compl. at ¶ 128.)  Such generalized and conclusory allegations fail to satisfy the requirements of Federal Rule of Civil Procedure 8.

Plaintiff fails to allege the existence of **special circumstances that would support a claim of outrageous conduct by Defendants AOAO and Associa relating to the foreclosure of Plaintiff's Unit**.

Baham v. Ass'n of Apartment Owners of Opua Hale Patio Homes, Civ. No. 13-00669 HG-BMK, 2014 WL 2761744, at *21-22 (D. Hawai`i June 18, 2014) (alterations in Baham) (emphases added).  Thus, a plaintiff can allege an IIED claim against a foreclosing condominium association if he alleges special circumstances, such

as forgery.

In the instant case, Plaintiffs allege that, *inter alia*: the AOAO had a $6,882.86 lien on their Unit; the AOAO foreclosed on their Unit, intentionally using an expedited foreclosure process that it was not legally entitled to use; at the time of the AOAO's foreclosure, it was aware that Plaintiffs were in the process of selling the Unit; Plaintiffs had requested a reasonable payment plan, under which they would pay all amounts owed to the AOAO; Plaintiffs entered into a contract for the Short Sale of the Unit; based on the pending Short Sale, Plaintiffs reached a settlement with the holder of their first mortgage – the original amount of which was $249,600 – and they paid off their second mortgage – the original amount of which was $62,400; the Short Sale ultimately did not close because of the AOAO's foreclosure sale; and the AOAO purchased the Unit at the foreclosure sale. [Second Amended Complaint at ¶¶ 10-26.] This Court concludes that, at a minimum, reasonable minds could differ on the issue of whether these alleged circumstances present the type of special circumstances required to support an IIED claim arising from a foreclosure. Thus, the issue of whether the AOAO's conduct was outrageous should be left to the jury. See Young, 119 Hawai`i at 429, 198 P.3d at 692.

This Court therefore CONCLUDES that Plaintiffs have sufficiently pleaded their IIED claim against the AOAO. The AOAO

Motion is DENIED as to its request for dismissal of Plaintiffs'
IIED claim against the AOAO in Count V.

## CONCLUSION

On the basis of the foregoing, the AOAO's Amended
Motion to Dismiss Second Amended Complaint [Dkt 34], filed
August 24, 2016, is HEREBY DENIED in its entirety, and Chow's
Motion to Dismiss [Dkt. 34] Second Amended Complaint, filed
October 31, 2016, is HEREBY GRANTED IN PART AND DENIED IN PART.
Specifically, the Chow Motion is GRANTED insofar as the Court
DISMISSES Plaintiffs' claims against Chow in Counts I, III, IV,
and V WITH PREJUDICE.  This Court DENIES the Chow Motion as to
Plaintiffs' claim against Chow in Count II.

This Court ORDERS Defendants to file their answers to
the Second Amended Complaint by **April 20, 2017**.  This Court
emphasizes that the deadline applies even if a motion for
reconsideration of this Order is filed.  Any motion for
reconsideration of this Order must be filed by **April 17, 2017**.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, March 30, 2017.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**RUDY AKONI GALIMA, ET AL. VS. ASSOCIATION OF APARTMENT OWNERS OF PALM COURT, ET AL**; CIVIL 16-00023 LEK-KSC; ORDER DENYING DEFENDANT ASSOCIATION OF APARTMENT OWNERS OF PALM COURT'S AMENDED MOTION TO DISMISS SECOND AMENDED COMPLAINT [DKT 34]; AND GRANTING IN PART AND DENYING IN PART DEFENDANT BRYSON CHOW'S MOTION TO DISMISS [DKT. 34] SECOND AMENDED COMPLAINT