IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| RUDY AKONI GALIMA and ROXANA BEATRIZ GALIMA, ) ) | CIVIL 16-00023 LEK-KSC |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | |
| ) | |
| ASSOCIATION OF APARTMENT OWNERS OF PALM COURT, by and through its Board of Directors; BRYSON CHOW, ) ) ) ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**ORDER GRANTING IN PART AND DENYING IN PART:
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT;
DEFENDANT AOAO'S MOTION FOR SUMMARY JUDGMENT;
AND DEFENDANT CHOW'S MOTION FOR SUMMARY JUDGMENT**

Before the Court are: Plaintiffs Rudy Akoni Galima and Roxana Beatriz Galima's ("Plaintiffs") Motion for Partial Summary Judgment on Counts I and II (Wrongful Foreclosure and Violation of the Fair Debt Collection Practices Act) ("Plaintiffs' Motion"), filed on January 19, 2018; Defendant Association of Apartment Owners of Palm Court's ("AOAO")[1] Motion for Summary Judgment ("AOAO Motion"), filed on January 24, 2018; and Defendant Bryson Chow's ("Chow") Motion for Summary Judgment Regarding the Fair Debt Collection Practices Claim in Count II of the Third Amended Complaint [Dkt. 88] ("Chow Motion"), also filed on January 24, 2018. [Dkt. nos. 115, 117, 118.]

_____

[1] Plaintiffs have sued the AOAO by and through its Board of Directors.

The Motions are hereby granted in part and denied in part, for the reasons set forth below. In summary, this case will proceed to trial on: 1) the AOAO's defenses as to Count I; 2) if Plaintiffs prevail on the AOAO's asserted defenses to Count I, Plaintiffs' damages arising from the wrongful foreclosure; and 3) all of the parties' asserted issues related to Counts II and V, except for Plaintiffs' argument that the statute of limitations for each of those claims was tolled based on fraudulent concealment.

<u>**BACKGROUND**</u>

This matter arises out of the purchase and foreclosure of a condominium unit. Plaintiffs originally filed this action in the State of Hawai`i Circuit Court of the First Circuit ("state court"). The AOAO then timely removed to federal district court based on federal question jurisdiction. [Notice of Removal, filed 1/22/16 (dkt. no. 1), at ¶ 3.] The operative pleading at this time is the Third Amended Complaint, which was filed on May 22, 2017. [Dkt. no. 88.] It pleads the following claims: wrongful foreclosure against the AOAO ("Count I"); violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692(f), *et seq.*, against Chow ("Count II"); a Haw. Rev. Stat. Chapter 480 claim against the AOAO for unfair or deceptive acts or practices ("UDAP" and "Count III"); a fraud claim against the AOAO ("Count IV"); and a claim against the AOAO for mental

anguish and emotional distress, which has been construed as a claim for intentional infliction of emotional distress ("IIED" and "Count V").[2]

All parties seek summary judgment as to some or all of Plaintiffs' claims.

## I.   Purchase and Foreclosure

In 2006, Plaintiffs purchased Apartment No. 10A in a condominium project known as Palm Court, Increment 1C ("Unit" and "Palm Court").  Plaintiffs financed the purchase of the Unit with a first mortgage securing a $249,600 loan, and a second mortgage securing a $62,400 loan.  [Separate & Concise Statement of Material Facts in Supp. of Pltfs.' Motion ("Pltfs.' CSOF"), filed 1/19/18 (dkt. no. 116), at ¶¶ 1, 3; Chow's Concise Statement of Facts in Supp. of Chow Opp. ("Chow Responsive CSOF"), filed 5/14/18 (dkt. no. 143), at ¶ 17 (admitting Pltfs.' ¶¶ 1, 3); AOAO's Response to Pltfs.' CSOF ("AOAO Responsive CSOF"), filed 5/14/18 (dkt. no. 146), at ¶¶ 1, 3 (same).]

The AOAO is the Palm Court's condominium association. [Pltfs.' CSOF at ¶ 2; Chow Responsive CSOF at ¶ 17; AOAO Responsive CSOF at ¶ 2.]

Plaintiffs rented the Unit, but their tenants failed to pay the rent in a timely manner.  This caused Plaintiffs to fall behind on their payments of condominium association fees.

---

[2] See 2017 WL 1240181.

3

[Pltfs.' CSOF at ¶ 4; Chow Responsive CSOF at ¶ 17 (admitting
Pltfs.' ¶ 4); AOAO Responsive CSOF at ¶ 4 (denying Pltfs.' ¶ 4
only to the extent the AOAO points out the payment of the fees
was solely Plaintiffs' responsibility).]  The AOAO's attorneys
sent Mr. Galima letters demanding payment for the unpaid
association fees.  One example of such letters is the letter
received by Mr. Galima on April 15, 2010.  [Pltfs.' CSOF, Decl.
of Rudy Akoni Galima ("Galima Decl.") at ¶¶ 11-12, Exh. G (letter
dated 4/8/10 to Plaintiffs from Chow and Christian P. Porter,
Esq., of Porter Tom Quitiquit Chee & Watts, LLP ("4/8/10 Demand
Letter" and "PTQCW")).]  The 4/8/10 Demand Letter stated the
total amount due, as of the date of the letter, was: $6,433.91 in
association fees; $473.18 in late fees; and $625.97 in attorneys'
fees and costs.  [Galima Decl., Exh. G at 1.]

Mr. Galima, as a result, asked for a reasonable payment
plan through which he would pay off the unpaid association fees
in his letter sent on April 18, 2010 ("4/18/10 Letter").  [Galima
Decl. at ¶¶ 13-14, Exh. H.]  It stated:

> I'm a member of the United States Marine Corps
> stationed onboard the USS Cleveland.  My wife has
> received a letter in the mail regarding a payment
> for maintenance fee [sic] for my property at Palm
> Court (91-869 Puamaeole St. Apt lOA Ewa Beach).  I
> am currently deployed on ship so my communication
> with you will be limited to when the phones and
> email are working.  We were stationed in Hawaii
> until I received orders in 2008 to report to Camp
> Pendleton, CA.  I have hired a property manager to
> take care of my property and to find tenants.  The
> first tenant I had fell behind on payments and the

> current tenant was also falling behind payments.
> Between my family's expenses in California and my
> property expenses in Hawaii I was falling behind
> on payments due to the tenants I had not making
> their payments to me.  I had to decide which
> payment to make first between my actual mortgage
> and the maintenance fee for Palm Court.  In the
> hardship situation that I am in, **I am respectfully
> requesting to have a chance to make a payment plan
> with your company before you push this any
> further**.  Please advise me on what actions I need
> to take or any other information you need from me.
> **As of right now I can afford to make a payment of
> $150.00 a month in addition to the regular
> maintenance fee payments.  I will also make a
> payment of $1500 towards the outstanding
> balance.** . . .

[Galima Decl., Exh. H at 1 (emphases added by Pltfs.).]  The

4/18/10 Letter is also dated December 29, 2009 and addressed to

the attention of Joseph Megill at Motooka Yamamoto & Revere

("MYR").  It states it was "(Resubmitted to:)" the attention of

"Mrs. Kimura" at PTQCW.  [Id.]

On April 1, 2010, the AOAO recorded, in the Land Court,

a Notice of Lien and Notice of Special Assessment Lien ("Lien

Notice") on the Unit for Plaintiffs' unpaid association fees, in

the amount of $6,882.86.  [Galima Decl., Exh. F (Lien Notice);

Pltfs.' CSOF at ¶ 5; Chow Responsive CSOF at ¶ 18 (admitting

cited portions of Pltfs.' ¶ 5); AOAO Responsive CSOF at ¶ 5

(admitting Pltfs.' ¶ 5).]

A.    **Correspondence Regarding Unpaid Maintenance Fees**

Plaintiffs sent emails offering to make payments to the

AOAO.  Among these emails is a May 18, 2010 email from Mr. Galima

5

to Happi Kimura, with PTQCW, asking for the status of his request
– presumably the 4/18/10 Letter; a June 10, 2010 email from
Mr. Galima to Ms. Kimura, noting that the May maintenance fee
payment had been made the previous month; and a June 22, 2010
email in which Mr. Galima asked Happi Kimura to "let [him] know
how [he] can start making payments towards [his] balance."
[Pltfs.' Separate & Concise Statement of Material Facts in Supp.
of Pltfs.' AOAO Opp. ("Pltfs.' Responsive AOAO CSOF"), filed
5/14/18 (dkt. no. 148), Decl. of Rudy Akoni Galima ("Galima AOAO
Decl."), Exh. C at P000090, P000087-88, and P000089.]

B.  **The Foreclosure**

Chow is an attorney.  His client was the AOAO.  In
September 2010, Chow filed a nonjudicial foreclosure of the lien
on Plaintiffs' Unit, pursuant to Chapter 667, Part I, on behalf
of the AOAO.  [Pltfs.' CSOF at ¶ 7; Chow Responsive CSOF at ¶ 17
(admitting Pltfs.' ¶ 7); AOAO Responsive CSOF at ¶ 7 (admitting
cited portions of Pltfs.' ¶ 7, but stating Chow was an
independent contractor); Pltfs.' CSOF at ¶ 10; Chow Responsive
CSOF at ¶ 17 (admitting Pltfs.' ¶ 10); AOAO Responsive CSOF at
¶ 10 (admitting cited portions of Pltfs.' ¶ 10, but stating Chow
initiated the nonjudicial foreclosure proceedings pursuant to
Chapter 667, Part I, as well as the Palm Court's Declaration of

Condominium Property Regime ("Palm Court Declaration") and the

Palm Court By-Laws).[3]]

On September 1, 2010, the AOAO recorded in the Bureau

of Conveyances ("BOC") a Notice of Association's Non-Judicial

Foreclosure Under Power of Sale ("Foreclosure Notice"). [Galima

Decl., Exh. I.] The Foreclosure Notice stated that the AOAO

would sell the Unit by public auction on October 19, 2010 and, on

that date and at the auction, the AOAO sold the Unit to itself.

[Pltfs.' CSOF at ¶¶ 11-12; Chow Responsive CSOF at ¶ 17

(admitting Pltfs.' ¶¶ 11-12); AOAO Responsive CSOF at ¶ 11

(admitting Chow sold the Unit at a public auction on that date,

but stating he was acting in his capacity as an independent

contractor), ¶ 12 (admitting Pltfs.' ¶ 12 regarding the purchase

of the Unit).] Chow conducted the public auction as stated in

the Foreclosure Notice. There were no other bidders present at

the auction, and the sale price was one dollar. [Galima Decl.,

Exh. C (AOAO's Aff. of Non-Judicial Foreclosure Sale Under Power

of Sale, recorded in the Land Court on 11/4/10 ("Foreclosure

Aff.")) at 2-3.]

As the AOAO's attorney, Chow completed and signed the

Foreclosure Affidavit. [Id. at 1-4 & Exh. A; Pltfs.' CSOF at

¶ 17; Chow Responsive CSOF at ¶ 17 (admitting Pltfs.' ¶ 17); AOAO

---

[3] The AOAO refers to the Palm Court Declaration and the Palm
Court By-Laws as "the Governing Documents." See, e.g., AOAO
Responsive CSOF at ¶ 10.

Responsive CSOF at ¶ 17 (admitting Pltfs.' ¶ 17, but stating Chow
was acting in his capacity as an independent contractor).]  The
Foreclosure Notice states: "THIS COMMUNICATION IS FROM A DEBT
COLLECTOR.  NOTICE IS HEREBY GIVEN THAT THIS ACTION IS AN ATTEMPT
TO COLLECT A DEBT, AND ANY INFORMATION OBTAINED WILL BE USED FOR
THAT PURPOSE, AND THE DEBT MAY BE DISPUTED."  [Galima Decl.,
Exh. I at 01001032 (emphasis in original).]

On December 2, 2009, Mr. Galima – who was deployed on a
ship at the time – sent an email to "Michael" at
michael@myrhawaii.com, requesting a payment plan for the
outstanding maintenance fees.  The email described the same
circumstances Mr. Galima wrote about in the 4/18/10 Letter.  On
December 3, 2009, Mr. Galima forwarded the email to
megill@myrhawaii.com.  [Major Responsive Decl., Exh. 5 at 2.]  On
December 4, 2009, Joseph Megill – assistant to Milton Motooka,
Esq., of MYR – wrote an email back, stating Mr. Galima was
"entitled to request a payment plan with the Board through our
office."  [Id. at 1.]  Mr. Megill instructed Mr. Galima to the
put the request, with further information, in writing and he
would forward it to the Board for review.  [Id.]  On December 29,
2009, Mr. Galima responded to Mr. Megill, instructing Mr. Megill
to use his personal email address and his military email address.
Mr. Galima stated, "I will be ashore soon in another country so I
will not have much communication access.  I will try and check my

personal email as much as I can to see if I received any messages from you." [Id.] In addition, Mr. Galima sent a letter dated December 29, 2009 to MYR, attention: Joseph Megill ("12/29/09 Letter"), containing the same description of Plaintiffs' circumstances as the 4/18/10 Letter. [Major Responsive Decl., Exh. 6.] The 12/29/09 Letter stated: "As of right now I can afford to make a payment of $150.00 a month. I will also use some of my tax return to repay the balance." [Id.]

According to AOAO, the payment plan proposed in the 12/29/09 Letter "would not even cover the cost of the monthly dues, much less the nearly $6,000 in overdue amounts." [AOAO Responsive CSOF at Opp. ¶ 8 (citing AOAO Responsive CSOF, Decl. of Rich Hargrave ("Hargrave Responsive Decl."),[4] Exh. 7).] After submitting the payment plan in the 12/29/09 Letter, according to the AOAO, Plaintiffs did not attempt to make payments on the overdue maintenance fees. [Id. at ¶ 9 (citing Hargrave Responsive Decl., Exh. 7 ("Palm Court Statement of Receipts and Disbursements for Period Ended 09/30/2017")).]

Mr. Galima did not receive a response to his 12/29/09 Letter. [Major Responsive Decl., Exh. 9 at 1 (email from Mr. Galima to Plaintiffs' counsel, forwarding emails about the

---

[4] As of the date of the declaration, May 9, 2018, Rich Hargrave was the AOAO's president. [Hargrave Responsive Decl. at ¶ 1.]

request for a payment plan and stating there was no response to the "payment plan request in December 2009").]

While the AOAO acknowledges that the 4/18/10 Letter proposed a payment plan to PTQCW, it asserts the proposal was the same – $150 per month, and it would have taken Plaintiffs over forty seven months to pay the overdue amounts. [AOAO Responsive CSOF at Opp. ¶¶ 12-13.] However, the 4/18/10 Letter proposed a payment of $1,5000, in addition to $150 per month, on top of the regular monthly maintenance fee payments.

On May 21, 2010, PTQCW sent a letter rejecting the payment plan proposed in the 4/18/10 Letter and informing them the amount due as of that date was $7,679.52 ("5/21/10 Rejection Letter"). [Hargrave Responsive Decl., Exh. 10 at 01001008.] The 5/21/10 Rejection Letter also stated:

> The Board would be willing to consider a proposal
> by you so long as such proposal includes an
> acceptable variation of the following items:
> 1) you will agree to a payment plan which will
> bring your account current within (6) months; and
> 2) you will pay all future monthly assessments on
> their respective due dates without fail.

[Id.]

The AOAO submitted a letter dated July 12, 2010 to Plaintiffs from PTQCW stating the amount due as of that date was $8,751.37 ("7/12/10 Demand Letter"). [Hargrave Responsive Decl., Exh. 11 at 01001011.] It stated:

> If you are unable to pay the aforementioned amount
> in full, the Association will consider an

> acceptable payment plan.  Please be advised that
> if (a) payment in full of $8,751.37 (or $8,801.80
> if payment is received after July 15, 2010) or
> (b) a payment plan proposed by you is not received
> by this office and accepted by the Association,
> within ten (10) days of the date of this letter,
> the Association may instruct us to initiate a
> non-judicial foreclosure action or file suit
> against you and institute a judicial foreclosure
> proceeding against your unit. . . .

[Id.]  Chow and Mr. Porter sent the 7/12/10 Demand Letter: to

Plaintiffs by certified mail, receipt requested, and by regular

mail to their post office box in Keaau; by the same means to

Plaintiffs at their Oceanside, California address; and to

Mr. Galima via email.  [Id.]  The return receipts for both

addresses are signed, and the signature appears to be "R Galima."

[Id. at 01001013-14.]

A letter dated August 30, 2010 to Plaintiffs – care of

Betsy Maler, RA – from Chow and Mr. Porter, was sent which stated

the amount due as of that date was $10,697.40 ("8/30/10 Demand

Letter").  [Hargrave Responsive Decl., Exh. 12.]  A letter dated

August 31, 2010, stating it was sent by certified mail, return

receipt requested, as well as by regular mail and hand delivery,

was sent to Plaintiffs at: the Unit; their Keaau address; and

their Oceanside, California address ("8/31/10 Notice Letter").

[Hargrave Responsive Decl., Exh. 13.]  There is no mailing

documentation, and Plaintiffs deny receiving it.  [Pltfs.' AOAO

Reply CSOF at ¶ 17.]  The 8/31/10 Notice Letter provides that the

AOAO was exercising its rights under § 514B-146 (2010) and

11

Chapter 667, Part I to sell the Unit at a public auction without a court-appointed commissioner and states a copy of the Foreclosure Notice is attached.

An Affidavit of Publication, dated September 28, 2010, stating that notice of the public sale of the Unit was published in the Honolulu Star-Advertiser on September 14, 21, and 28, 2010. [AOAO Responsive CSOF, Exh. 15.[5]] PTQCW recorded the Foreclosure Affidavit and the Quitclaim Deed.[6] [Id. at ¶¶ 23-24; Pltfs.' AOAO Reply CSOF at ¶¶ 23-24.] At the time of the 12/29/09 Letter, the regular monthly association fees were $332.33. [AOAO CSOF at ¶ 10; Pltfs.' Responsive AOAO CSOF at ¶ 10 (stating AOAO's ¶ 10 is undisputed).] The Owner History Report for Plaintiffs' Unit shows that, from July 2009 through the foreclosure of the Unit, Plaintiffs did not pay their regular monthly association fees, and they did not pay any of the delinquent fees. They appear to have made one payment in May 2010 of $311.83 in legal fees and $50.41 in late fees. [AOAO

---

[5] The AOAO's counsel describes Exhibit 15 as "the Return of Posting for the Unit as produced by the Galimas pursuant to their FRCP Rule 26 Initial Disclosures. This document was received by my office on February 18, 2016, and contains the Galimas' Bates Number: P000057." [Major Responsive Decl. at ¶ 11.] However, this appears to be an error. The Affidavit of Publication is not described anywhere in the Major Responsive Declaration.

[6] The Quitclaim Deed in which the AOAO as grantor conveys the Unit to itself as grantee was recorded on November 9, 2010 in the Land Court. [Galima Decl., Exh. J.]

CSOF, Decl. of David Donaldson ("Donaldson Decl.") at ¶ 5,[7] Exh. H at 01001109-10.]

After losing the Unit in the foreclosure, Plaintiffs remained liable for the amount due on the first mortgage, as well as the AOAO association fees. [Galima Decl. at ¶¶ 18-19.] However, Mr. Galima labored under the belief that the foreclosure was proper because of the statements and representations in the demand letters. [Id. at ¶ 21.] He "was not aware that [he] had valid legal claims against the AOA and the AOAO's attorney until December 2015." [Id. at ¶ 22.]

## C. Condominium Unit

Plaintiffs' Unit was part of the AOAO and Plaintiffs were members of the AOAO while they owned the Unit. [Galima Decl., Exh. B (Apartment Deed recorded on 4/4/06 in the Land Court); AOAO Responsive CSOF at Opp. ¶¶ 2-4;[8] Pltfs.' Response to AOAO's Responsive CSOF ("Pltfs.' AOAO Reply CSOF"), filed 5/21/18 (dkt. no. 154), at ¶¶ 2-4 (admitting AOAO's Opp. ¶¶ 2-4).] The Palm Court By-Laws "provide that the terms used therein shall have the meanings given to them in Chapter 514A, HRS, as

---

[7] As of the date of the declaration, January 23, 2018, David Donaldson was the AOAO president and its custodian of records. [Donaldson Decl. at ¶¶ 1, 3.]

[8] The Opposition paragraphs in the AOAO's Responsive CSOF are the additional facts the AOAO asserts are undisputed, as opposed to the AOAO's responses to Plaintiffs' statements of undisputed facts.

amended . . . ; that the AOAO may assess fees; and that the AOAO

may record a lien against a property if such fees are not paid."

[AOAO Responsive CSOF at Opp. ¶ 5; Pltfs.' AOAO Reply CSOF at

¶ 5.]  The By-Laws provide, among other things, that the AOAO may

enforce provisions of the By-Laws, procure legal services, and

enforce penalties and fines for violations of the By-Laws, and

that such penalties and fines shall constitute a lien against an

apartment owner which shall be subordinate to unpaid mortgages.

[Major Responsive Decl., Exh. 3 (Palm Court By-Laws) at 9-10,

12.]  The Palm Court By-Laws also state that: "Each Apartment

Owner shall be liable for and pay a share of the common expenses

in preparation to the common interest appurtenant to his

apartment."  [Id. at 23-24.]  Further, that each monthly

assessment is the separate debt and obligation of each apartment

owner and that failure to pay this obligation may result in a

lien being recorded against the apartment owner and in favor of

the AOAO.  [Id. at 25-27.]

        The Palm Court Declaration and By-Laws were amended in

response to the enactment of Haw. Rev. Stat. Chapter 514B.

[Major Responsive Decl., Exh. 4 (Amendment to the Decl. of Condo.

Property Regime of Palm Court & Amendment to the By-Laws of the

Association of Apartment Owners of Palm Court, filed 6/8/15 with

the BOC ("2015 Amendment")).]  This amendment occurred after the

AOAO obtained Plaintiffs' Unit in the Chapter 667, Part I

foreclosure.[9]  The 2015 Amendment added a new section 19 to

Article IX of the Palm Court By-Laws,[10] stating:

> Chapter 514B, Hawaii Revised Statutes
> ("Chapter 514B"), is adopted and shall be
> applicable to and govern the Project, including
> the Association.  It is the intent of this Section
> that the adoption of Chapter 514B authorizes and
> empowers the Association to achieve any result
> permitted by Chapter 514B.  To the extent that
> there is any conflict between the provisions of
> these By-Laws and Chapter 514B, . . . Chapter 514B
> shall control unless Chapter 514B expressly
> provides otherwise.  Without limiting the
> generality of the following:
>
> (a)  These By-Laws shall be liberally
> construed to facilitate the operation of the
> Project under Chapter 514B.
>
>         . . . .

---

[9] The 2015 Amendment states:

> Whereas, Chapter 514B, Section 514B-23(a), Hawaii
> Revised Statutes, provides that the declaration,
> bylaws, condominium map, or other constituent
> documents of any condominium created before the
> effective date of Chapter 514B, Hawaii Revised
> Statutes, may be amended to achieve any result
> permitted by said Chapter 514B, regardless of what
> applicable law provided before the effective date
> of said Chapter 514B[.]

[Major Responsive Decl., Exh. 4 at 3 (emphasis omitted).]
However, this provision is not relevant to the instant case
because the foreclosure of Plaintiffs' Unit occurred before the
adoption of the 2015 Amendment.

[10] Article IX sets forth the "GENERAL PROVISIONS."  [Major
Responsive Decl., Exh. 3 at 31 (emphasis in original).]

(f)　Punitive damages may not be awarded
　　　　except as specifically provided in Chapter 514B or
　　　　by other rule of law.

[<u>Id.</u> at 5-6.]

## **DISCUSSION**

### I.　**Continuance Requests**

　　　　The AOAO Motion includes a request for a Fed. R. Civ.

P. 56(d) continuance.[11]　[AOAO Opp. at 25-27.]　The AOAO asserts

a continuance is warranted based on a lack of "exhaustive

discovery" because the AOAO anticipated that the motion to stay

would be granted.[12]　[Major Responsive Decl. at ¶ 12.]

　　　　This district court has stated:

　　　　　Rule 56(d) permits a district court to
　　　　continue a summary judgment motion "upon a good
　　　　faith showing by affidavit that the continuance is

---

[11] Fed. R. Civ. P. 56(d) states:

　　　　If a nonmovant shows by affidavit or declaration
　　　　that, for specified reasons, it cannot present
　　　　facts essential to justify its opposition, the
　　　　court may:

　　　　　(1)　defer considering the motion or
　　　　deny it;

　　　　　(2)　allow time to obtain affidavits or
　　　　declarations or to take discovery; or

　　　　　(3)　issue any other appropriate order.

[12] On November 3, 2017, Chow filed a motion to stay the
proceedings.　[Dkt. no. 93.]　On April 30, 2018, this Court held
a hearing on the motion to stay and, on May 4, 2018, it issued an
entering order informing the parties the motion to stay was
denied.　[Minutes (dkt. no. 138); EO (dkt. no. 139).]　A written
order was issued on June 8, 2018.　[Dkt. no. 161.]

needed to preclude summary judgment." <u>California v. Campbell</u>, 138 F.3d 772, 779 (9th Cir. 1998). A party requesting a continuance bears the burden of (1) filing a timely application that specifically identifies relevant information; (2) demonstrating that there is some basis to believe that the information sought exists; and (3) establishing that such information is essential to resist the summary judgment motion. <u>See Emp'rs Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Clorox Co.</u>, 353 F.3d 1125, 1130 (9th Cir. 2004) (citation omitted); <u>accord</u> <u>Moss v. U.S. Secret Serv.</u>, 572 F.3d 962, 966 n.3 (9th Cir. 2009) ("Rule 56([d]) requires a party seeking postponement of a summary judgment motion to show how additional discovery would preclude summary judgment and why it cannot immediately provide specific facts demonstrating a genuine issue of material fact." (punctuation, quotations, and citations omitted)).

<u>Noetzel v. Haw. Med. Serv. Ass'n</u>, CIVIL NO. 15-00310 SOM-KJM, 2017 WL 690531, at *1 (D. Hawai`i Feb. 21, 2017) (alteration in <u>Noetzel</u>). The AOAO's Rule 56(d) request is DENIED because neither the Major Responsive Declaration nor any other material that the AOAO submitted in connection with Plaintiffs' Motion establishes that there is some information essential to the AOAO's response to Plaintiffs' Motion that the AOAO could not have obtained prior to filing the AOAO Opposition.

In addition, Chow suggests that Plaintiffs' presentation of certain evidence could be construed as a request for a Rule 56(d) continuance. [Chow Reply at 12-14.] This Court declines to construe Plaintiffs' opposition materials as requesting a Rule 56(d) continuance because Plaintiffs neither expressly requested a continuance nor attempted to address the

Rule 56(d) requirements.  Further, specifically as to Count II

(the only remaining claim against Chow), the fact that Plaintiffs

have themselves moved for summary judgment shows they do not

believe a continuance is necessary for them to respond to the

Chow Motion.  This Court therefore turns to the merits of

Plaintiffs' claims, beginning with their claims against the AOAO.

## II.  Plaintiffs' Claims Against the AOAO

### A.  Count I - Wrongful Foreclosure

#### 1.  Elements of the Claim

Wrongful foreclosure is a cognizable claim under

Hawai`i law, and "[a] plaintiff may bring a wrongful foreclosure

claim where: (1) the foreclosure process failed to comply with

Haw. Rev. Stat. Chapter 667; and (2) the foreclosing entity did

not have the right to foreclose."  3/30/17 Order, 2017 WL

1240181, at *9 (brackets, citations, and internal quotation marks

omitted).  Further, "because § 514B-146(a) (2010)[13] required a

condominium association to foreclose upon its lien 'in like

_____

[13] Section 514B-146(a) (2010) stated, in pertinent part:

> All sums assessed by the association but unpaid
> for the share of the common expenses chargeable to
> any unit shall constitute a lien on the unit with
> priority over all other liens . . . .
>
> The lien of the association may be foreclosed by
> action or by nonjudicial or power of sale
> foreclosure procedures set forth in chapter 667,
> by the managing agent or board, acting on behalf
> of the association, in like manner as a mortgage
> of real property. . . .

manner as a mortgage of real property,' an association could only

use the Chapter 667, Part I foreclosure procedure if it had an

agreement with the condominium owner providing for a power of

sale." <u>Id.</u>; <u>see also</u> <u>Malabe</u>, 2018 WL 6258564, at *2 (rejecting

the condominium association's argument that Haw. Rev. Stat.

§ 514B-146 (2006) "constitutes a legislative grant of authority

for it to use the nonjudicial foreclosure procedures in HRS

§ 667-5 and that a power of sale arises from this legislative

authority").[14]

---

[14] In reaching this decision, the ICA relied upon <u>Sakal v.</u>
<u>Ass'n of Apartment Owners of Hawaiian Monarch</u>, 143 Hawai`i 219,
426 P.3d 443 (Ct. App. 2018). <u>Malabe</u>, 2018 WL 6258564, at *2 &
n.5 (citing <u>Sakal</u>, 143 Hawai`i at 225-28, 426 P.3d at 449-52).
In <u>Sakal</u>, the ICA extending Hawai`i Supreme Court case law
holding that mortgagees without an contractual power of sale did
not have a right to utilize the version of § 667-5 repealed in
2012 to nonjudicial foreclosures brought pursuant to Haw. Rev.
Stat. Chapter 667, Parts II and VI. <u>Sakal</u>, 143 Hawai`i at 225,
426 P.3d at 449 (discussing <u>Santiago v. Tanaka</u>, 137 Hawai`i 137,
155, 366 P.3d 612, 630 (2016); <u>Lee v. HSBC Bank USA</u>, 121 Hawai`i
287, 289, 218 P.3d 775, 777 (2009)). The ICA denied the
condominium association's motion for reconsideration. <u>Sakal v.</u>
<u>Ass'n of Apartment Owners of Hawaiian Monarch</u>, NO. CAAP-
15-0000529, 2018 WL 4483207 (Sept. 19, 2018). The Hawai`i
Supreme Court denied the condominium association's Application
for Writ of Certiorari on December 28, 2018, and Christian
Sakal's Application for Writ of Certiorari is currently pending
before the Hawai`i Supreme Court.

The condominium association's nonjudicial foreclosure sale
of Sakal's unit occurred on December 3, 2012. <u>Id.</u> at 222, 426
P.3d at 446. Thus, the version of Chapter 667, Part I at issue
in the instant case had already been repealed. <u>Sakal</u> addressed
another foreclosure by power of sale provisions:

        Part II of HRS chapter 667, entitled "Power of
        Sale Foreclosure Process," states that "[t]he
                                (continued...)

The AOAO argues the 3/30/17 Order is not dispositve of
the issues before the Court on summary judgment because the order
is "limited to testing the sufficiency of Plaintiffs' Complaint,
only." [AOAO Opp. at 8.]  It is true that this Court's
conclusion that the allegations of the Second Amended Complaint,
the operative pleading at the time, were "sufficient to state the
elements of a wrongful foreclosure claim against the AOAO,"
3/30/17 Order, 2017 WL 1240181, at *9, has no bearing upon the
summary judgment standard.  See Fed. R. Civ. P. 56(a) (stating a
party is entitled to summary judgment "if the movant shows that
there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law").  However,
the underlying rulings that this Court made in the 3/30/17 Order
regarding what § 514B-146(a) (2010) requires and when
Chapter 667, Part I applies were rulings on issues of law.  Those
legal rulings continue to apply at summary judgment and
throughout this case, absent recognition by this Court or by

---

[14] (...continued)
power of sale **process** in this part is an
alternative to the foreclosure by action in
part IA."  HRS § 667-21 (2016) (emphasis added).
Similarly, Part VI of HRS chapter 667, entitled
"Association Alternate Power of Sale Foreclosure
Process," states that "[t]he power of sale **process**
in this part is an alternative to the foreclosure
by action in part IA and the foreclosure by power
of sale in part II."  HRS § 667-91 (2016)
(emphasis added).

Id. at 225, 426 P.3d at 449 (alterations and emphases in Sakal).

another court on appeal that there has been an intervening change in the controlling Hawai`i law.

The AOAO conducted the foreclosure of Plaintiffs' Unit utilizing the Chapter 667, Part I process. <u>See, e.g.</u>, Pltfs.' CSOF at ¶ 10 (stating Chow initiated the nonjudicial foreclosure on Plaintiffs' Unit, pursuant to Chapter 667, Part I); Chow Responsive CSOF at ¶ 17 (admitting Pltfs.' ¶ 10); AOAO Responsive CSOF at ¶ 10 (admitting cited portions of Pltfs.' ¶ 10). Based on this Court's prior rulings, the AOAO did not have the right to utilize Part I unless the AOAO and Plaintiffs previously entered into an agreement providing for a power of sale. 3/30/17 Order, 2017 WL 1240181, at *9. No evidence supports that Plaintiffs and the AOAO entered into a mortgage. Indeed, the AOAO does not contend this but argues that the language of the Governing Documents either triggered the application of Chapter 667, Part I or created a contractual right, apart from § 514B-146 (2010), for the AOAO to conduct a nonjudicial foreclosure on a lien for unpaid association fees.

This Court previously recognized that "[a] condominium's governing documents are contractual obligations between the condominium association and a condominium owner." <u>Brown v. Porter McGuire Kiakona & Chow, LLP</u>, CIVIL 16-00448 LEK-KJM, 2017 WL 3763843, at *8 (D. Hawai`i Aug. 30, 2017) (citation and internal quotation marks omitted). Thus, if the

Governing Documents contains a power of sale provision, this would constitute an agreed upon power of sale that entitled the AOAO to utilize the Chapter 667, Part I nonjudicial foreclosure process. Accord Malabe, 2018 WL 6258564, at *3 n.7 (noting that, "[o]n remand, the AOAO is free to establish that its bylaws and/or other governing documents confer a power of sale over the Apartment").

Here, Plaintiffs agreed to comply with, and accepted, the Governing Documents. [Galima Decl., Exh. B (Apartment Deed) at 2 (stating the Unit was subject to "the burdens of the restrictions on use and the other restrictions and all covenants,·agreements, obligations, conditions and other provisions," of, inter alia, the Palm Court Declaration and By-Laws).] The Palm Court By-Laws state: "Upon recordation of a duly executed original or copy of such claim of lien, the Board shall have all remedies provided in the Act," i.e. Chapter 514A. [Major Responsive Decl., Exh. 3 at 26-27.] Plaintiffs agreed to the terms regarding enforcement of liens for delinquent assessments. However, the "all remedies provided" provision does not grant a power of sale; it merely confirms that the AOAO could exercise the remedies available in Chapter 514A — and Chapter 514B, to the extent it later replaced Chapter 514A.[15]

---

[15] Chapter 514B was enacted in 2004, and it took effect on July 1, 2005, with certain exceptions not relevant to the facts

(continued...)

The AOAO has not identified any other provision in Plaintiffs'
Deed or the Governing Documents granting a power of sale.  Upon
review of the Deed and the Governing Documents, this Court
concludes, as a matter of law, that none of the documents contain
a power of sale.  <u>See, e.g.</u>, <u>Bill Darrah Builders, Inc. v. Hall
at Makena Place, LLC</u>, CIV. NO. 15-00518 JMS-KSC, 2018 WL 650195,
at *5 (D. Hawai`i Jan. 31, 2018) ("Generally, contract
interpretation is a question of law." (citing <u>Hanagami v. China
Airlines, Ltd.</u>, 67 Haw. 357, 364, 688 P.2d 1139, 1144 (1984))).

---

        [15] (...continued)
of this case.  2004 Haw. Sess. Laws Act 164, § 2, at 756-99,
§ 35(1), at 815.  Haw. Rev. Stat. § 514B-22 – the current version
of which is the same as the version in effect in 2010 – provides
that part IV of Chapter 514B, which includes § 514B-146,

        and all amendments thereto, apply to all
        condominiums created in this State before July 1,
        2006; provided that those sections:

            (1)  Shall apply only with respect to events
                 and circumstances occurring on or after
                 July 1, 2006; and

            (2)  Shall not invalidate existing provisions
                 of the declaration, bylaws, condominium
                 map, or other constituent documents of
                 those condominiums if to do so would
                 invalidate the reserved rights of a
                 developer or be an unreasonable
                 impairment of contract.

There is no evidence in this case which raises an issue of fact
as to whether § 514B-22(2) applies, and it is undisputed that the
events at issue in this case occurred after July 1, 2006.  Thus,
Chapter 514B applies in this case, as evidenced by the fact that
the Foreclosure Notice stated the sale would be conducted
pursuant to § 514B-146 (2010).  <u>See</u> Galima Decl., Exh. I at 2.

Likewise, this Court concludes that there is no provision in either the Deed or the Governing Documents which constitutes an agreement that the AOAO could utilize Chapter 667, Part I apart from the operation of § 514B-146 (2010).

There are no genuine issues of material fact and this Court concludes that, as a matter of law, the AOAO was not authorized to utilize Chapter 667, Part I to foreclose upon Plaintiffs' Unit. Because it did not have an agreed upon power of sale provision or other contractual agreement authorizing it to utilize Chapter 667, Part I, the AOAO was required to utilize Chapter 667, Part II to foreclose upon Plaintiffs' Unit. Thus, the AOAO's use of Part I was a violation of Chapter 667. Plaintiffs' Motion is GRANTED insofar as this Court concludes that Plaintiffs have established the elements of their wrongful foreclosure claim.

## 2. The AOAO's Defenses

Turning next to the AOAO's affirmative defenses, the AOAO contends that, even if Plaintiffs establish the elements of their wrongful foreclosure claim, the AOAO is not liable to Plaintiffs because of either the independent contractor defense or the business judgment rule, or both.

### a. Independent Contractor Defense

Although there is no Hawai`i Supreme Court case law addressing the independent contractor defense/rule, an

24

unpublished decision from the ICA indicates that Hawai`i courts

follow the rule.

> As a general rule, "the employer of an independent
> contractor is not liable for physical harm caused
> to another by an act or omission of the contractor
> or his servants."  Restatement (Second) of Torts
> § 409 (1965) (Restatement).  Hawai`i applies the
> general rule.  <u>See, e.g.</u>, <u>Taira v. Oahu Sugar Co.,
> Ltd.</u>, 1 Haw. App. 208, 211-12, 616 P.2d 1026,
> 1029-30 (1980).  <u>See also</u> <u>Fraser v. Morrison</u>, 39
> Haw. 370, 376, 1952 WL 7360 at *4 (Haw. Terr.
> 1952) ("A collection agency is an independent
> contractor for whose act the creditor is not
> responsible."), *abrogated on other grounds by*, <u>Hac
> v. Univ. of Hawaii</u>, 10[2] Hawai`i 92, 92, 73 P.3d
> 46, 46 (2003).

<u>Bryant v. Pleasant Travel Serv.</u>, No. 29642, 2012 WL 1951146, at

*6 (Hawai`i Ct. App. May 30, 2012).  However, this district court

has recognized that the independent contractor "'general rule' is

'riddled with exceptions.'"  <u>Bailey v. United States</u>, 289 F.

Supp. 2d 1197, 1211-12 (D. Hawai`i 2003) (quoting <u>Sugimoto v.

Exportadora De Sal</u>, 19 F.3d 1309, 1312 (9th Cir. 1994)

(discussing claim under California law)).  The ICA has stated:

> [One] recognized exception to the general rule
> against assigning liability to the hiring employer
> of an independent contractor for the contractor's
> employees' negligence depends on whether the
> hiring employer retains control over how the
> independent contractor performed the work.  <u>See</u>
> <u>Taira</u>, 1 Haw. App. at 211-12, 616 P.2d at 1029-30.
>
> . . . [W]e have recognized that "[t]he nature
> and extent of control by an employer of an
> independent contractor of the independent
> contractor's performance of work contracted for is
> a question of fact, which is to be determined by a
> consideration of all the circumstances[.]"
> <u>Makaneole v. Gampon</u>, 7 Haw. App. 448, 455, 776

P.2d 402, 407 (1989) (<u>Makaneole [I]</u>), (citation
omitted), *aff'd in part and rev'd in part*,
[<u>Makaneole v. Gampon</u>, 70 Haw. 501, 504, 777 P.2d
1183, 1185 (1989) [("<u>Makaneole II</u>")].

<u>Bryant</u>, 2012 WL 1951146, at *11 (some alterations in <u>Bryant</u>).

Where no decision from the Hawai`i Supreme Court
addressing an issue exists, this Court must "attempt[] to predict
how the [supreme] court would decide the issue, using
intermediate appellate court decisions, decisions from other
jurisdictions, statutes, treatises, and restatements as
guidance."  3/30/17 Order, 2017 WL 1240181, at *5 (some citations
omitted) (citing <u>Trishan Air, Inc. v. Fed. Ins. Co.</u>, 635 F.3d
422, 427 (9th Cir. 2011)).  Based on the ICA's decision in <u>Bryant</u>
and the authorities cited therein, this Court predicts that the
Hawai`i Supreme Court would recognize the independent contractor
rule as an affirmative defense under Hawai`i law.

In the context of whether the defendant property owner
had control over an independent contractor doing repairs on the
defendant's premises, <u>Bryant</u>, 2012 WL 1951146, at *1, the ICA
stated:

> In order for control of a job site to be
> considered "retained,"
>
>> [i]t is not enough that [the hiring employer]
>> has merely a general right to order the work
>> stopped or resumed, to inspect its progress
>> or to receive reports to make suggestions or
>> recommendations which need not necessarily be
>> followed, or to prescribe alterations and
>> deviations.  Such a general right is usually
>> reserved to employers, but it does not mean

that the contractor is controlled as to his
methods of work, or as to operative detail.
**There must be such a retention of a right of
supervision that the contractor is not
entirely free to do the work in his own way.**

[Makaneole I, 7 Haw. App.] at 454-55[,] 776 P.2d
at 407 (quoting Restatement § 414 cmt. c).

Id. at *11 (some alterations in Bryant) (emphasis added).

Applying the Bryant analysis here, the independent contractor

defense would not apply to the AOAO if the AOAO retained such a

right of supervision over the foreclosure process during Chow's

representation such that Chow was not free to conduct the process

in his own way.  There is insufficient evidence in the current

record regarding the nature of Chow's representation of the AOAO

for this Court to determine whether the AOAO did or did not

retain such control over Chow.  Thus, the Court cannot make a

ruling that, as a matter of law, the independent contractor

defense does or does not apply in this case and this issue must

be resolved in trial.

### b.  Business Judgment Rule

This district court has recognized that:

Under Hawaii law, the business judgment rule
protects decisions by corporate directors and
officers that are: (1) made in good faith;
(2) with the care that an ordinarily prudent
person in a like position would exercise under
similar circumstances; and (3) in a manner
believed to be in the entity's best interest.  See
Fujimoto v. Au, 95 Hawai`i 116, 149, 19 P.3d 699,
732 (2001).  Put another way, a person who
challenges a decision must prove that the
corporate director or officer: (1) failed to act

> in good faith; (2) failed to act in a manner he or
> she reasonably believed to be in the best interest
> of the corporation; or (3) failed to exercise such
> care as an ordinarily prudent person in a like
> position would use in similar circumstances.  See
> Lussier v. Mau-Van Development, Inc., 4 Haw. App.
> 359, 376, P.2d 804, 817 (Haw. App. 1983).
> Defendants argue, and the Court agrees, that "the
> board obligations in the association context are
> analogous to that in the corporate context."  Dkt.
> No. 69-1 at 26 (citing Taniguchi v. Ass'n of
> Apartment Owners of King Manor, Inc.[,] 114
> Hawai`i 37, 50, 155 P.3d 1138, 1151 (2007))
> ("Inasmuch as a condominium's board of directors
> is similar to a corporation's board of directors,
> a condominium board member is also an agent for
> his condominium principal (i.e., the membership of
> the association).").

Lawson v. Ass'n of Apartment Owners of Wailea Point Vill., CIVIL

NO. 15-00449 DKW-KSC, 2016 WL 7493618, at *8 (D. Hawai`i Dec. 30,

2016).

Plaintiffs have presented evidence that, as of December

2009, Mr. Motooka of MYR was representing the AOAO.  See Pltfs.'

Responsive AOAO CSOF, Decl. of Margaret L. Webster ("Webster

Decl.") at ¶ 2; see also Major Responsive Decl., Exh. 5 at 1-2

(email correspondence between Mr. Motooka's assistant and others

regarding Plaintiffs).  However, by April 8, 2010, the AOAO was

represented by PTQCW.  See Galima Decl., Exh. G (4/8/10 Demand

Letter from Christian Porter, Esq. of PTQCW).  Plaintiffs also

submitted an article describing Mr. Motooka's criticism of

condominium associations' use of nonjudicial foreclosures.

[Webster Decl., Exh. D (Honolulu Civil Beat article by Ian Lind,

dated 8/31/16, titled "Wrongful Foreclosure Claims Rock the Condo

28

World").]  The article states that, in November 2010, Mr. Motooka sent a letter to condominium association clients warning that pursing Chapter 667, Part I nonjudicial foreclosures was dangerous because of the possibility that the Hawai`i courts may hold that such foreclosures were illegal.  He also warned that nonjudicial foreclosures could then be voidable and may expose the associations to liability for damages.  [Id. at 6 of 9.]

First, the November 2010 letter was sent after the foreclosure sale of Plaintiffs' unit and after Mr. Motooka no longer represented the AOAO.  Plaintiffs have not presented any evidence that the AOAO received a similar letter, or similar advice, while it was represented by Mr. Motooka.  However, in considering the AOAO Motion, this Court must view the record in the light most favorable to Plaintiffs.  See Crowley v. Bannister, 734 F.3d 967, 976 (9th Cir. 2013).  So construed, the record raises triable issues of fact, including: 1) whether Mr. Motooka advised the AOAO prior to the foreclosure sale of Plaintiffs' Unit regarding the legal risks of pursuing Chapter 667, Part I foreclosures; and 2) whether, in light of such advice, the AOAO's decision to utilize Part I in Plaintiffs' foreclosure constituted a failure to exercise the care that a reasonably prudent condominium association would use under similar circumstances.  See Lussier, 4 Haw. App. at 376, P.2d at 817.  Thus, these triable issues of fact preclude the AOAO from

summary judgment as to Count I based on the business judgment
rule.  Similarly, the issues of fact preclude a finding that
business judgment rule does not apply in this case as a matter of
law.

Because there are genuine issues of material fact
regarding the AOAO's defenses, liability for Plaintiffs' wrongful
foreclosure claim cannot be determined at this stage.
Plaintiffs' Motion is therefore DENIED to the extent it seeks
summary judgment in their favor as to liability on Count I.  In
addition, the AOAO Motion is DENIED as to Count I.

**B.    Count III - UDAP**

Chapter 480 claims, including UDAP claims, are "barred
unless commenced within four years after the cause of action
accrues."  Haw. Rev. Stat. § 480-24.[16]  This Court has stated
that "the limitations period for a UDAP claim starts to run upon
the occurrence of the defendant's alleged violation."  3/30/17
Order, 2017 WL 1240181, at *16 (citation and internal quotation
marks omitted).  In other words, because the "occurrence rule"
applies to UDAP claims, the "discovery rule" does not apply.  See
id. at *19 (discussing the discovery rule under Hawai`i law, in
the context of Plaintiffs' IIED claim).  However, this Court has
recognized that the statute of limitations for a UDAP claim may

---

[16] The statutory exceptions to this rule, which are set
forth in Haw. Rev. Stat. § 480-22, do not apply under the facts
of this case.

be tolled based upon fraudulent concealment.  Id. at *16 (some
citations omitted) (citing Au v. Au, 63 Haw. 210, 215, 626 P.2d
173, 178 (1981)).

Plaintiffs' position is that they are entitled to
equitable tolling of the statute of limitations for their UDAP
claim based on fraudulent concealment because the AOAO lulled
them into inaction by repeatedly representing it was authorized
to utilize Chapter 667, Part I.  However, the Malabes raised this
same argument, and the ICA rejected it because the ICA found "no
authority for the proposition that reliance on a statutory
authority, even if that reliance later proves to be wrong,
constitutes fraudulent concealment."  Malabe, 2018 WL 6258564, at
*4.  Where there was no allegation that the condominium
association concealed or misrepresented the fact that it was
conducting the foreclosure pursuant to the verison of § 667-5 in
effect at the time, the ICA "decline[d] to characterize the
Malabes' later-developed, but cognizable and ultimately
successful, legal theory as stating a claim for fraudulent
concealment by the AOAO at the time the AOAO relied on HRS
§ 667-5," and affirmed the dismissal of the Malabes' UDAP claim.
Id.

Supplemental jurisdiction over Plaintiffs' UDAP claim
exists here and thus the decisions of the Hawai`i Supreme Court
control.  See 3/30/17 Order, 2017 WL 1240181, at *5 ("When

31

interpreting . . . Hawai`i statutes relevant to the instant case,
this Court is bound by the decisions of the Hawai`i Supreme
Court." (citing <u>Trishan Air, Inc. v. Fed. Ins. Co.</u>, 635 F.3d 422,
427 (9th Cir. 2011)). <u>Malabe</u> is an unpublished decision from the
ICA, not the Hawai`i Supreme Court, and thus is not binding on
this Court. As the Hawai`i Supreme Court has not addressed
whether a defendant's erroneous application of a Hawai`i statute
can support equitable tolling based on fraudulent concealment,
this Court must predict how the Hawai`i Supreme Court would
decide the issue, and it can use ICA decisions in making its
prediction. <u>See</u> 3/30/17 Order, 2017 WL 1240181, at *5. This
Court concludes that the ICA's analysis in <u>Malabe</u> is persuasive
as a description of the applicable Hawai`i law, and predicts that
the Hawai`i Supreme Court would reach the same conclusion. Thus,
the ICA's reasoning in <u>Malabe</u> is adopted here and Plaintiffs'
tolling argument based on fraudulent concealment is rejected as a
matter of law.

Even viewing the record in the light most favorable to
Plaintiffs, their UDAP claim accrued at the very latest on
November 9, 2010, when the AOAO recorded the Quitclaim Deed
conveying the Unit to itself. <u>See</u> Galima Decl., Exh. J
(Quitclaim Deed).[17] Because the UDAP claim was not brought

---

[17] This Court does not conclude that this is the date when
Plaintiffs' UDAP claim actually accrued. This Court need not
(continued...)

within four years of that date, and because there is no basis to toll the statute of limitations, Plaintiffs' UDAP claim is time-barred. As there are no genuine issues of material fact as to the timeliness of Plaintiffs' claim, the AOAO is entitled to judgment as a matter of law. The AOAO Motion is therefore GRANTED as to Count III.[18]

## C.   **Count IV - Fraud**

"The elements of a fraud claim are: '(1) false representations were made by defendants, (2) with knowledge of their falsity (or without knowledge of their truth or falsity), (3) in contemplation of plaintiff's reliance upon these false representations, and (4) plaintiff did rely upon them.'" 3/30/17 Order, 2017 WL 1240181, at *17 (quoting Shoppe v. Gucci Am., Inc., 94 Hawai`i 368, 386, 14 P.3d 1049, 1067 (2000))). Further, "the alleged false representation must relate to a past or existing material **fact**." Shoppe, 94 Hawai`i at 386, 14 P.3d at 1067 (emphasis added).

_____

[17] (...continued)
determine exactly when the claim accrued because the claim would still be time-barred, even if it accrued at some point before the recording of the Quitclaim Deed, such as when the foreclosure auction occurred on October 19, 2010.   See Galima Decl., Exh. C (Foreclosure Aff.).

[18] In light of this Court's ruling, it is not necessary to address the parties' other arguments regarding Plaintiffs' UDAP claim.

Viewing the record in the light most favorable to Plaintiffs, evidence only exists that the AOAO, through its counsel, made misrepresentations about the law, *i.e.* that it was authorized to use Chapter 667, Part I. See, e.g., Galima Decl., Exh. I (Foreclosure Notice) at 2 (stating the AOAO, "as Lienholder, under and pursuant to Sections 514B-146 and 667-5 through 667-10, HRS, as amended, gives notice that the Association will hold a sale by public auction" (emphasis omitted)). No triable issue is raised as to the AOAO making any false representation of fact during the foreclosure process and the events leading to it. Plaintiffs' fraud claim therefore fails as a matter of law, and the AOAO is entitled to summary judgment. The AOAO Motion is therefore GRANTED as to Count IV.[19]

**D.    Count V - IIED**

A two-year statute of limitations period applies to Plaintiffs' IIED claim, and the accrual of an IIED claim is governed by the discovery rule. See 3/30/17 Order, 2017 WL 1240181, at *19 (some citations omitted) (citing Haw. Rev. Stat. § 657-7). The AOAO argues Plaintiffs' IIED claim is time-barred because it accrued when the foreclosure occurred, and Plaintiffs failed to bring their IIED claim within two years of the foreclosure. Plaintiffs respond that their claim is not time-

---

[19] In light of this Court's ruling, it is not necessary to address the parties' other arguments regarding Plaintiffs' fraud claim.

barred because: 1) under the discovery rule, the claim did not
accrue until they learned about their legal claims; or 2) the
statute of limitations was tolled based on the AOAO's fraudulent
concealment of the fact that it was not authorized to use the
foreclosure process in Chapter 667, Part I.  Based on the
preceding analysis regarding the timeliness of Plaintiffs' UDAP
claim, this Court also concludes that equitable tolling based on
fraudulent concealment does not apply to Plaintiffs' IIED claim.
The AOAO Motion is GRANTED to the extent that it seeks a ruling
regarding Plaintiffs' fraudulent concealment argument.

As to Plaintiffs' discovery rule argument, they submit
testimony that they believed the AOAO's representations in the
foreclosure process, and that they were not aware until December
2015 that they may have valid claims against the AOAO.  [Galima
Decl. at ¶¶ 21-22.]  The discovery rule under Hawai`i law
provides:

> The Hawai`i Supreme Court has stated: "Under [Haw.
> Rev. Stat.] § 657-7, a tort claim accrues when the
> plaintiff discovers, or through the use of
> reasonable diligence should have discovered, the
> negligent act, the damage, and the causal
> connection between the two."  Ass'n of Apartment
> Owners of Newtown Meadows ex rel. its Bd. of Dirs.
> v. Venture 15, Inc., 115 Hawai`i 232, 277, 167
> P.3d 225, 270 (2007).  Moreover, a plaintiff
> "'must exercise reasonable diligence in pursuing a
> claim.  If a plaintiff fails to exercise such
> diligence in a timely manner, the cause of action
> should be barred by the statute of limitations.'"
> Hays v. City & Cty. of Honolulu, 81 Hawai`i 391,
> 398, 917 P.2d 718, 725 (1996) (quoting In re

<u>Hawaii Federal Asbestos Cases</u>, 854 F. Supp. 702,
708 (D. Hawai`i 1994)).

<u>Begley v. Cty. of Kauai</u>, CIVIL 16-00350 LEK-KJM, 2018 WL 3638083,
at *4 (D. Hawai`i July 31, 2018) (alteration in <u>Begley</u>).  For an
IIED claim, the discovery rule applies to the inquiry into
whether the defendant's conduct was sufficiently outrageous to
support an IIED claim.  <u>See</u> <u>id.</u> at *2 (noting that the plaintiff
had previously been granted leave to amend his complaint because
"it was possible that [he] could cure the timeliness defect by
alleging facts that would support his position [that] the 2016
document production" "revealed to him the outrageous character of
otherwise time-barred incidents" (citation and internal quotation
marks omitted)).

Viewing the record in the light most favorable to
Plaintiffs, genuine issues of material fact exist regarding when
they discovered, or should have discovered through reasonable
diligence, that the AOAO's actions in the foreclosure process
were wrongful and outrageous.  The AOAO Motion is DENIED to the
extent it seeks summary judgment on the ground that Plaintiffs'
IIED claim is time-barred.

The AOAO also argues it is entitled to summary judgment
because, as a matter of law, its actions in the foreclosure
process do not constitute outrageous conduct for purposes of an
IIED claim.  "The term 'outrageous' has been construed to mean
without cause or excuse and beyond all bounds of decency."  <u>Enoka</u>

v. AIG Haw. Ins. Co., 109 Hawai`i 537, 559, 128 P.3d 850, 872
(2006) (citation and internal quotation marks omitted)).  "The
question whether the actions of the alleged tortfeasor are
unreasonable or outrageous is for the court in the first
instance, although where reasonable people may differ on that
question it should be left to the jury."  Young v. Allstate Ins.
Co., 119 Hawai`i 403, 429, 198 P.3d 666, 692 (2008) (citation and
quotation marks omitted).  Viewing the record in the light most
favorable to Plaintiffs, this Court concludes that a reasonable
jury may differ on the question of whether the AOAO's actions
related to the foreclosure of Plaintiffs' Unit were "outrageous."
Further, even though Plaintiffs have not submitted medical
evidence, the circumstances of this case, including "'all
justifiable inferences [that can] be drawn'" from the record,
Miller v. Glenn Miller Prods., Inc., 454 F.3d 975, 988 (9th Cir.
2006) (quoting Hunt v. Cromartie, 526 U.S. 541, 552, 119 S. Ct.
1545, 143 L. Ed. 2d 731 (1999)), are sufficient to raise a
genuine issue of material fact as to whether Plaintiffs suffered
extreme emotional distress.

          The AOAO Motion is therefore DENIED as to Count V.  The
trial in this matter will proceed on Plaintiffs' claims against
the AOAO in Counts I and V.

**E.  Punitive Damages**

Finally, the AOAO seeks a ruling that Plaintiffs cannot recover punitive damages.  This district court has stated:

> Under Hawaii law, punitive damages are "assessed in addition to compensatory damages for the purpose of punishing the defendant for aggravated or outrageous misconduct and to deter the defendant and others from similar conduct in the future." Masaki v. Gen. Motors Corp., 780 P.2d 566, 570 (Haw. 1989).  To warrant punitive damages, [the p]laintiff "must prove by clear and convincing evidence that the defendant has acted wantonly or oppressively or with such malice as implies a spirit of mischief or criminal indifference to civil obligations, or where there has been some wilful misconduct or that entire want of care which would raise the presumption of a conscious indifference to consequences." Ass'n of Apt. Owners v. Venture 15, Inc., 167 P.3d 225, 290 (Haw. 2007) (quoting Masaki, 780 P.2d at 570). "[T]o justify an award of punitive damages, a positive element of conscious wrongdoing is always required. . . .  Something more than the mere commission of a tort is always required for punitive damages." Valvanis v. Milgroom, No. CIV. 06-00144JMS-KSC, 2009 WL 1561575, at *16 (D. Haw. June 1, 2009); see also Alutiiq Int'l Sols., LLC v. OIC Marianas Ins. Corp., 149 F. Supp. 3d 1208, 1215 (D. Nev. 2016) ("When punitive damages are sought by default judgment, the court must have independent evidence to support the award because punitive-damages-worthy conduct alleged in a complaint is not regarded as admitted by default.").

Isaac v. Daniels, CIVIL NO. 16-00507 DKW-RLP, 2018 WL 1903606, at *8 (D. Hawai`i Mar. 30, 2018) (some alterations in Isaac), *report and recommendation adopted*, 2018 WL 1902543 (Apr. 20, 2018).

Based upon these standards, this Court finds that the record is not sufficiently developed for this Court to conclude,

as a matter of law, that Plaintiffs cannot present evidence at trial which would support an award of punitive damages. Therefore genuine issues of material fact exists which preclude summary judgment in the AOAO's favor as to punitive damages. The AOAO Motion is DENIED as to that issue.

**F.    Summary**

Plaintiffs' Motion is GRANTED insofar as this Court concludes Plaintiffs have established the elements of their wrongful foreclosure claim, but Plaintiffs' Motion is DENIED in all other respects. The AOAO Motion is GRANTED as to Counts III and IV and as to Plaintiffs' fraudulent concealment argument regarding the statute of limitations for their IIED claim. The AOAO Motion is DENIED in all other respects.

The Court now addresses the merits of Plaintiffs' FDCPA claim against Chow.

**III. Plaintiffs' FDCPA Claim Against Chow**

**A.    Whether the Claim is Timely**

Chow first argues he is entitled to summary judgment because Plaintiffs' FDCPA claim is untimely. As stated in the 3/30/17 Order, FDCPA claims are subject to a one-year limitations period, but the discovery rule applies to the determination of when the statute of limitations begins to run. 2017 WL 1240181, at *13 (citing 15 U.S.C. § 1692k(d); Lyons v. Michael & Assocs., 824 F.3d 1169, 1171-72 (9th Cir. 2016)). This limitations period

is subject to tolling.  Id.; accord Mangum v. Action Collection Serv., Inc., 575 F.3d 935, 939 (9th Cir. 2009) ("there is an operating presumption that equitable tolling is applicable to suits against private defendants" (brackets, citation, and internal quotation marks omitted)).

The Ninth Circuit has stated that fraudulent concealment

> requires proof of "affirmative conduct upon the part of [the defendant] which would, under the circumstances of the case, lead a reasonable person to believe that he did not have a claim for relief," Volk v. D.A. Davidson & Co., 816 F.2d 1406, 1415 (9th Cir. 1987), or that [the defendant] owed him a fiduciary duty, as passive concealment is insufficient for a court to grant equitable tolling "unless the defendant had a fiduciary duty to disclose information to the plaintiff." Conmar Corp. v. Mitsui & Co. (U.S.A.), 858 F.2d 499, 505 (9th Cir. 1988).

Thorman v. Am. Seafoods Co., 421 F.3d 1090, 1091-92 (9th Cir. 2005) (some citations omitted).  Thus, the plaintiff "carries the burden of proving that (1) [the defendant] 'affirmatively misled' him as to the operative facts that gave rise to his claim, and (2) [the plaintiff] 'had neither actual nor constructive knowledge' of these operative facts despite his diligence in trying to uncover them." Id. at 1094 (quoting Conmar, 858 F.2d at 502).  Thus, the requirements for equitable tolling based on fraudulent concealment are similar under Hawai`i law and federal law. Compare 3/30/17 Order, 2017 WL 1240181, at *16 (discussing Au v. Au, 63 Haw. 210, 215, 626 P.2d 173, 178 (1981)); with

<u>Thorman</u>, 421 F.3d at 1091-92, 1094.  Based upon the same analysis of Plaintiffs' fraudulent concealment argument regarding their UDAP claim, this Court rejects Plaintiffs' argument that the statute of limitations for their FDCPA claim was tolled because of fraudulent concealment.  The Chow Motion is GRANTED to the extent that it seeks a ruling regarding Plaintiffs' fraudulent concealment argument.

However, under the federal discovery rule, the statute of limitations applicable to a claim begins to run when the plaintiff knew or reasonably should have known about the defendant's act and that it was wrongful.  <u>Lyons</u>, 824 F.3d at 1171 (discussing <u>Manqum</u>, 575 F.3d at 941; <u>Tourgeman v. Collins Fin. Servs.</u>, Inc., 755 F.3d 1109, 1118 n.5 (9th Cir. 2014)). Because the federal discovery rule is similar to the discovery rule under Hawai`i law, the same analysis of Plaintiffs' discovery rule argument regarding their IIED claim applies to their FDCPA claim.  Therefore, there are genuine issues of material fact that preclude summary judgment, in favor of either Chow or Plaintiffs, as to the issue of whether Plaintiffs' FDCPA claim is timely.

## B. <u>Whether Plaintiffs' Obligation Was a "Debt"</u>

Chow also asserts he is entitled to summary judgment because the obligation that was being collected from Plaintiffs in the foreclosure process was not a "debt" for purposes of the

FDCPA.  Count II alleges Chow violated 15 U.S.C. § 1692f, which

states, in pertinent part:

> A debt collector may not use unfair or
> unconscionable means to collect or attempt to
> collect any debt.  Without limiting the general
> application of the foregoing, the following
> conduct is a violation of this section:
>
> . . . .
>
> (6)  Taking or threatening to take any
> nonjudicial action to effect dispossession or
> disablement of property if –
>
> > (A)  there is no present right to
> > possession of the property claimed
> > as collateral through an
> > enforceable security interest[.]

For purposes of the FDCPA:

> The term "debt" means any obligation or alleged
> obligation of a consumer to pay money arising out
> of a transaction in which the money, property,
> insurance, or services which are the subject of
> the transaction are **primarily for personal,**
> **family, or household purposes**, whether or not such
> obligation has been reduced to judgment.

15 U.S.C. § 1692a(5) (emphasis added).

It is undisputed that, prior to the foreclosure,

Plaintiffs had been using the Unit as a rental property.  See

Pltfs.' CSOF at ¶ 4 (noting rental of the Unit); Chow Responsive

CSOF at ¶ 17 (admitting Pltfs.' ¶ 4); AOAO Responsive CSOF at ¶ 4

(only denying other portions of Pltfs.' ¶ 4).  This district

court has recognized that attempts to collect amounts owed for

rental properties, including foreclosure proceedings, are not

actionable under the FDCPA.  See, e.g., Kitamura v. AOAO of Lihue

Townhouse, Civil No. 12-00353 LEK-BMK, 2013 WL 1398058, at *5 (D. Hawai`i Mar. 29, 2013) (citing 15 U.S.C. § 1692a(5)). However, in determining the primary purpose of the transaction in which Plaintiffs incurred the obligation, the time to be considered is not only the period when Plaintiffs were delinquent in their association assessments, but also the period when the original obligation to pay those assessments was incurred, *i.e.* their purchase of the Unit. See <u>Thies v. Law Offices of William A. Wyman</u>, 969 F. Supp. 604, 607 (S.D. Cal. 1997) ("Plaintiffs are obligated to pay their homeowner fees because of a covenant running with their property. Because no offer or extension of credit is required, the Court finds that a transaction, for the purposes of the FDCPA, arises out of Plaintiffs' obligation to pay dues for the services of the Association.").

     While the evidence submitted is not the model of clarity, evidence exists that Mr. Galima was stationed with the Marine Corps in Hawai`i until sometime in 2008 when he was re-stationed in California. [Galima Decl., Exh. H (4/18/10 Letter) at 1.] Plaintiffs apparently resided in the Unit until that point and did not rent the Unit until he was re-stationed and they moved to California. See <u>id.</u> ("I have hired a property manager to take care of my property and to find tenants."). Viewing the record in the light most favorable to Plaintiffs, there was a period of time when the Unit was Plaintiffs' personal

residence.  There is a genuine issue of material fact as to what
Plaintiffs' purpose for the Unit was at the time it was purchased
and whether, under the circumstances as a whole, Plaintiffs
incurred the obligation to pay association assessments "primarily
for personal, family, or household purposes."  <u>See</u> § 1692a(5).

     **C.**    **<u>Bona Fide Error Defense</u>**

     Finally, Chow argues he is entitled to summary judgment
because, even if Plaintiffs prove all of the elements of their
FDCPA claim, he is not liable because of the bona fide error
defense.  The United States Supreme Court has recognized that the
bona fide error defense is one of two exceptions available to a
debt collector who is otherwise liable under the FDCPA.  <u>Jerman
v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA</u>, 559 U.S. 573,
578 (2010) (discussing 15 U.S.C. § 1692k(c)).[20]  Section 1692k(c)
states:

> A debt collector may not be held liable in any
> action brought under this subchapter **if the debt
> collector shows by a preponderance of evidence**
> that the violation was not intentional and
> resulted from a bona fide error notwithstanding
> the maintenance of procedures reasonably adapted
> to avoid any such error.

Thus, the defendant debt collector has the burden of proof as to
the bona fide error defense, and the Ninth Circuit has described

---

[20] The other exception, which concerns compliance with
Federal Trade Commission advisory opinions, is not applicable to
the facts of this case.  <u>See</u> <u>Jerman</u>, 559 U.S. at 578 (discussing
15 U.S.C. § 1692k(e)).

the defense as a "narrow" one.  McCollough v. Johnson, Rodenburg & Lauinger, LLC, 637 F.3d 939, 948 (9th Cir. 2011).

In Jerman, the United States Supreme Court held that "the bona fide error defense in § 1692k(c) does not apply to a violation of the FDCPA resulting from a debt collector's incorrect interpretation of the requirements of that statute." 559 U.S. at 604-05.  In rejecting the argument that § 1692k(c) "encompass[es] 'all types of error,' including mistakes of law," the Supreme Court stated:

> We have long recognized the "common maxim, familiar to all minds, that ignorance of the law will not excuse any person, either civilly or criminally."  Barlow v. United States, 7 Pet. 404, 411 (1833) (opinion for the Court by Story, J.); see also Cheek v. United States, 498 U.S. 192, 199 (1991) ("The general rule that ignorance of the law or a mistake of law is no defense to criminal prosecution is deeply rooted in the American legal system").  Our law is therefore no stranger to the possibility that an act may be "intentional" for purposes of civil liability, even if the actor lacked actual knowledge that her conduct violated the law.  In Kolstad v. American Dental Assn., 527 U.S. 526 (1999), for instance, we addressed a provision of the Civil Rights Act of 1991 authorizing compensatory and punitive damages for "intentional discrimination," 42 U.S.C. § 1981a, but limiting punitive damages to conduct undertaken "with malice or with reckless indifference to the federally protected rights of an aggrieved individual," § 1981a(b)(1).  We observed that in some circumstances "intentional discrimination" could occur without giving rise to punitive damages liability, such as where an employer is " unaware of the relevant federal prohibition" or acts with the "distinct belief that its discrimination is lawful."  527 U.S., at 536-537.  See also W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts 110

(5th ed. 1984) ("[I]f one intentionally interferes
with the interests of others, he is often subject
to liability notwithstanding the invasion was made
under an erroneous belief as to some . . . legal
matter that would have justified the conduct");
Restatement (Second) of Torts § 164, and Comment e
(1963-1964) (intentional tort of trespass can be
committed despite the actor's mistaken belief that
she has a legal right to enter the property).

Id. at 581-83 (alterations in Jerman) (footnotes omitted).

The record is not sufficiently developed to conclude,
as a matter of law, whether the defense does nor does not apply
in this case. Therefore, genuine issues of material fact exist
which preclude summary judgment as to Chow's bona fide error
defense.

In light of the multiple triable issues related to
Plaintiffs' FDCPA claim, Plaintiffs' Motion is DENIED as to
Count II, and the Chow Motion is DENIED, except as to the
fraudulent concealment issue.[21]

## CONCLUSION

On the basis of the foregoing, the following motions
are HEREBY GRANTED IN PART AND DENIED IN PART: Plaintiffs' Motion
for Partial Summary Judgment on Counts I and II (Wrongful

---

[21] Plaintiffs argue that, if this Court denies their motion,
it should enter an order pursuant to Fed. R. Civ. P. 56(g), which
states: "If the court does not grant all the relief requested by
the motion, it may enter an order stating any material fact –
including an item of damages or other relief – that is not
genuinely in dispute and treating the fact as established in the
case." This Court concludes the instant Order satisfies the
requirements of Rule 56(g).

Foreclosure and Violation of the Fair Debt Collection Practices Act), filed January 19, 2018; the AOAO's Motion for Summary Judgment, filed January 24, 2018; and Chow's Motion for Summary Judgment Regarding the Fair Debt Collection Practices Claim in Count II of the Third Amended Complaint [Dkt. 88], also filed January 19, 2018.

Specifically, this Court rules as follows:

- Plaintiffs' Motion is GRANTED insofar as this Court concludes that they have established the elements of Count I, their wrongful foreclosure claim. Plaintiffs' Motion is DENIED in all other respects.

- The AOAO Motion is GRANTED insofar as summary judgment is GRANTED in the AOAO's favor as to Count III, Plaintiffs' UDAP claim, and Count IV, Plaintiffs' fraud claim. The AOAO Motion is also GRANTED insofar as this Court CONCLUDES that equitable tolling based on fraudulent concealment does not apply to Count V, Plaintiffs' IIED claim. The AOAO Motion is DENIED in all other respects.

- The Chow Motion is GRANTED insofar as this Court CONCLUDES that equitable tolling based on fraudulent concealment does not apply to Count II, Plaintiffs' FDCPA claim. The Chow Motion is DENIED in all other respects.

Thus, this case will proceed to trial on: 1) the AOAO's defenses as to Count I; 2) if Plaintiffs prevail on the AOAO's asserted defenses to Count I, Plaintiffs' damages arising from the wrongful foreclosure; 3) all of the parties' asserted issues related to Counts II and V, except for Plaintiffs' argument that the statute of limitations for each of those claims was tolled based on fraudulent concealment.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, December 31, 2018.



　/s/ Leslie E. Kobayashi　
Leslie E. Kobayashi
United States District Judge

RUDY AKONI GALIMA, ET AL. V. ASS'N OF APARTMENT OWNERS OF PALM
COURT, ET AL.; CIVIL 16-00023 LEK-KSC; ORDER GRANTING IN PART AND
DENYING IN PART: PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT;
DEFENDANT AOAO'S MOTION FOR SUMMARY JUDGMENT; AND DEFENDANT
CHOW'S MOTION FOR SUMMARY JUDGMENT