UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| RUDY AKONI GALIMA, ROXANA BEATRIZ GALIMA,<br><br>        Plaintiffs,<br><br>  vs.<br><br>ASSOCIATION OF APARTMENT OWNERS OF PALM COURT, BY AND THROUGH ITS BOARD OF DIRECTORS; DOE DEFENDANTS 1-10, BRYSON CHOW,<br><br>        Defendants. | CIV. NO. 16-00023 LEK-RT |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT REGARDING DAMAGES**

Before the Court are: Defendant Bryson Chow's ("Chow") Motion for Summary Judgment Regarding the Measure of Damages Under the Fair Debt Collection Practices Claim in Count II of the Third Amended Complaint [Dkt. 88] ("Chow Motion"), filed on February 6, 2019; and Defendant Association of Apartment Owners of Palm Court's ("AOAO")[1] Motion for Partial Summary Judgment Limiting Plaintiffs' Measure of Damages Arising out of Their Claim for Wrongful Foreclosure ("AOAO Motion"), also filed on February 6, 2019. [Dkt. nos. 184, 187.] Plaintiffs Rudy Akoni Galima and Roxana Beatriz Galima ("Plaintiffs") filed their

---

[1] Plaintiffs have sued the AOAO by and through its Board of Directors.

memorandum in opposition to the Chow Motion and their memorandum in opposition to the AOAO Motion on March 22, 2019. [Dkt. nos. 196, 198.] The AOAO and Chow filed their respective reply memoranda on March 29, 2019. [Dkt. nos. 203, 204.]

These matters came on for hearing on April 12, 2019. The AOAO and Chow ("Defendants") each filed a supplemental memorandum on April 18, 2019 and April 19, 2019, respectively. [Dkt. nos. 220, 221.] Plaintiffs filed their supplemental memorandum on May 3, 2019. [Dkt. no. 245.] The Chow Motion and the AOAO Motion ("Motions") are hereby granted in part and denied in part. The Motions are granted, insofar as this Court rules that, if Plaintiffs prevail on their wrongful foreclosure claim and elect the damages remedy, Plaintiffs will be precluded from recovering lost rental value as part of their damages for either the wrongful foreclosure claim or their claim under the Fair Debt Collection Practices Act. The Motions are denied in all other respects.

## BACKGROUND

The instant case arises from the nonjudicial foreclosure sale of Plaintiffs' Apartment No. 10A in a condominium project known as Palm Court, Increment 1C ("Unit") by the AOAO, which was represented by Chow in the foreclosure process. The operative pleading in this case is Plaintiffs' Third Amended Complaint. [Filed 5/22/17 (dkt. no. 88).] The

relevant background of this case is set forth in this Court's
Order Granting in Part and Denying in Part: Plaintiffs' Motion
for Partial Summary Judgment; Defendant AOAO's Motion for
Summary Judgment; and Defendant Chow's Motion for Summary
Judgment, filed on December 31, 2018 ("12/31/18 Order"), as
supplemented by the Order Denying Defendant Bryson Chow's Motion
for Partial Reconsideration, filed on March 8, 2019 ("3/8/19
Order"). [Dkt. nos. 173, 195.[2]]

The following claims and issues remain in this case:

-as to Plaintiffs' wrongful foreclosure claim against the AOAO
("Count I"), the AOAO's defenses and, if Plaintiffs prevail on
the AOAO's defenses, Plaintiffs' damages;[3]

_____

[2] The 12/31/18 Order is also available at 2018 WL 6841818,
and the 3/8/19 Order is available at 2019 WL 1102188.

[3] Partial summary judgment was granted in favor of
Plaintiffs as to Count I, insofar as this Court concluded that
Plaintiffs established all of the elements of their wrongful
foreclosure claim. 12/31/18 Order, 2018 WL 6841818, at *18.
This Court ruled that:

> as a matter of law, the AOAO was not authorized
> to utilize [Haw. Rev. Stat.] Chapter 667, Part I
> to foreclose upon Plaintiffs' Unit. Because it
> did not have an agreed upon power of sale
> provision or other contractual agreement
> authorizing it to utilize Chapter 667, Part I,
> the AOAO was required to utilize Chapter 667,
> Part II to foreclose upon Plaintiffs' Unit.
> Thus, the AOAO's use of Part I was a violation of
> Chapter 667.

Id. at *9. The AOAO argues the recent passage of Senate Bill
551 by the Hawai`i State Legislature invalidates this Court's
prior rulings and "ends this case." [Letter to the Court from
the AOAO's counsel, filed 5/1/19 (dkt. no. 236), at Page 3 of
(. . . continued)

-all issues regarding Plaintiffs' claim against Chow alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.* ("Count II"), except that Plaintiffs' argument that the statute of limitations was tolled based on fraudulent concealment has been rejected; and

-all issues regarding Plaintiffs' claim against the AOAO for mental anguish and emotional distress, which has been construed as a claim for intentional infliction of emotional distress ("Count V"), except that Plaintiffs' argument that the statute of limitations was tolled based on fraudulent concealment has been rejected.

The Chow Motion is limited to the issue of the measure of actual damages if Plaintiffs prevail on their FDCPA claim.[4] Chow seeks a ruling that, in proving their actual damages, Plaintiffs cannot rely on either the Unit's fair market value – *i.e.*, the amount the Unit would have sold for in an arm's length transaction between a willing buyer and a willing seller – or the Unit's rental value since the foreclosure. Chow's position is that Plaintiffs must establish the amount that the Unit would have sold for in a valid foreclosure sale – *i.e.*, in this case, a foreclosure conducted pursuant to Chapter 667, Part II – at the time of the Part I nonjudicial foreclosure sale ("Part II Foreclosure Value"). Plaintiffs' damages would be the

---

18.] However, this Court declines to address the effect of Senate Bill 551 at this time because it has not been adopted as law yet.

[4] The Chow Motion does not address liability, including whether Chow's actions caused Plaintiffs' damages, and the Chow Motion does not address statutory damages.

difference between the Part II Foreclosure Value and the amounts Plaintiffs owed to the AOAO for their delinquent maintenance fees.

The AOAO Motion seeks a ruling that the measure of Plaintiffs' damages for their wrongful foreclosure claim is the Part II Foreclosure Value, minus all liens against the Unit, including Plaintiffs' mortgages and the amounts Plaintiffs owed the AOAO.  In other words, the AOAO's position is that Plaintiffs have no actionable damages because, at the time of the foreclosure, they had no equity in the Unit.  The AOAO also seeks a ruling that Plaintiffs are precluded from: seeking the return of the Unit; and arguing their damages are based on either the Unit's fair market value or the alleged conversion of the Unit.

**DISCUSSION**

**I.   Return of the Unit**

This Court first turns to the AOAO's argument that, as a matter of law, Plaintiffs are barred from seeking the return of title to, and possession of, the Unit in this action.  This Court has concluded, as a matter of law, that Plaintiffs have established the elements of their wrongful foreclosure claim against the AOAO.  12/31/18 Order, 2018 WL 6841818, at *9.  The Hawai`i Supreme Court has stated: "Where it is determined that the nonjudicial foreclosure of a property is wrongful, the sale

5

of the property is invalid and **voidable at the election of the mortgagor**, who shall then **regain title to and possession of the property**." Santiago v. Tanaka, 137 Hawai`i 137, 158, 366 P.3d 612, 633 (2016) (emphases added) (citations omitted). Further, akin to its judicial authority "to fashion an equitable relief in foreclosure cases," a court has authority to fashion equitable relief in wrongful foreclosure cases. Id.

In Santiago, the supreme court noted that voiding the foreclosure sale was "rendered impracticable" because the foreclosed property had already been resold to a third-party.[5] Id. (citing 123 Am. Jur. Proof of Facts 3d § 31 (2011) ("It has long been held that if the property has passed into the hands of an innocent purchaser for value, an action at law for damages is generally the appropriate remedy.")). However, in the instant case, voiding the foreclosure sale of the Unit would not be

_____

[5] Louis Santiago and Ruth Tanaka ("Tanaka") agreed that Louis Santiago and his wife, Yong Hwan Santiago ("the Santiagos"), would purchase the Nawiliwili Tavern ("Tavern") from Tanaka for $1,300,000, consisting of a $800,000 down payment, and $500,000 secured by a sixty-month mortgage. Santiago, 137 Hawai`i at 139-40, 366 P.3d at 614-15. Tanaka later foreclosed upon the mortgage and sold the Tavern to herself for $365,000 after a public foreclosure auction. Id. at 144-45, 366 P.3d at 619-20. A state court ruled that Tanaka was entitled to ownership and possession of the Tavern, and the state court entered judgment in favor of Tanaka as to the Santiagos' claims. After the entry of judgment, but while the Santiagos' appeal was still pending, Tanaka sold the Tavern to a third-party. Id. at 146-47 & n.24, 366 P.3d at 621-22 & n.24.

impracticable because the Unit is still held by the AOAO, *i.e.*,
the wrongfully foreclosing lienholder.  See Pltfs.' concise
statement of facts in supp. of mem. in opp. to AOAO Motion
("Pltfs.' AOAO CSOF"), filed 3/22/19 (dkt. no. 199), Timothy G.
Blood's decl. ("Blood AOAO Decl."), Exh. H (excerpts of the
AOAO's response to Pltfs.' request for answers to interrogs.) at
9-10 (stating "the monthly rental income from the [Unit] is
$1,500.00" and the funds are "deposited each month into the
operating fund for the AOAO").

Santiago is directly on point and is controlling legal
authority in this case.  See Order ruling on motions to dismiss,
filed 3/30/17 (dkt. no. 79) ("3/30/17 Order"), at 12 ("When
interpreting [Haw. Rev. Stat.] § 514B-146(a) (2010) and the
other Hawai`i statutes relevant to the instant case, this Court
is bound by the decisions of the Hawai`i Supreme Court." (citing
Trishan Air, Inc. v. Fed. Ins. Co., 635 F.3d 422, 427 (9th Cir.
2011))).[6]  Defendants argue that Santiago is inapplicable to the
instant case because: the Santiagos cured the default before the
foreclosure; Santiago, 137 Hawai`i at 144, 366 P.3d at 619; and
the mortgage in Santiago did not allow nonjudicial foreclosure,
id. at 155, 366 P.3d at 630.  In contrast, Defendants contend a
nonjudicial foreclosure would have been legally possible in this

---

[6] The 3/30/17 Order is also available at 2017 WL 1240181.

case, if the AOAO had followed Chapter 667, Part II.  First,
nothing in Santiago indicates that the case's legal analysis
applies only where the plaintiff cured the default before the
allegedly wrongful foreclosure.  As to Defendants' second
argument, Tanaka also conducted the foreclosure under Haw. Rev.
Stat. § 667-5, which has since been repealed, but the Hawai`i
Supreme Court held that the foreclosure was unlawful because the
mortgage did not contain a power of sale.  Santiago, 137 Hawai`i
at 154-55, 366 P.3d at 629-30.  Thus, Santiago presents the same
situation as the instant case, *i.e.*, a Part I foreclosure
improperly conducted without a power of sale.  Compare 12/31/18
Order, 2018 WL 6841818, at *3 (noting the nonjudicial
foreclosure of the Unit was conducted pursuant to Part I); id.
at *8-9 (concluding the AOAO did not have a power of sale and
that the AOAO's use of Part I was unlawful).  This Court
therefore rejects Defendants' attempts to distinguish Santiago.

Because this Court has ruled that the AOAO's
foreclosure of the Unit was wrongful, and because the Unit is
still held by the AOAO, this Court concludes that, pursuant to
Santiago, return of the Unit is an available remedy for
Plaintiffs' wrongful foreclosure claim.

A.    **Statutory Protections**

The AOAO argues that, even if Santiago would otherwise
apply, Plaintiffs are precluded from seeking return of the Unit

8

because of the effect of the Land Court filings. The Unit is Land Court property. See 12/31/18, 2018 WL 6841818, at *2, *3, *5 & n.6 (noting that documents related to the Unit were filed in the Land Court). The Quitclaim Deed in which the AOAO as grantor conveyed the Unit to itself as grantee was recorded on November 9, 2010 in the Land Court. [Concise statement of facts in supp. of AOAO motion ("AOAO CSOF"), filed 2/6/19 (dkt. no. 188), Decl. of James Diehl ("Diehl Decl."), Exh. I (Quitclaim Deed) at 1.] The Assistant Registrar's Office stamp on the deed includes "Issuance of Cert(s) 1,003,228." [Id.] The AOAO therefore argues that, based on Aames v. Funding Corp. v. Mores, 107 Hawai`i 95, 110 P.3d 1042 (2005), and Haw. Rev. Stat. § 501-118, the recordation of the transfer certificate of title ("TCT") is dispositive, and Plaintiffs cannot challenge the foreclosure of the Unit because they failed to do so before the new TCT was recorded.

Section 501-118(c) states:

In case of foreclosure by exercising the power of sale without a previous judgment, the affidavit required by chapter 667 shall be recorded with the assistant registrar. The purchaser or the purchaser's assigns at the foreclosure sale may thereupon at any time present the deed under the power of sale to the assistant registrar for recording and obtain a new certificate. Nothing in this chapter shall be construed to prevent the mortgagor or other person in interest from directly impeaching by action or otherwise, any foreclosure proceedings affecting registered

9

land, **prior to the entry of a new certificate of title**.

(Emphasis added.)  However, the Hawai`i Supreme Court has held that "the issuance of a new certificate of title number is not the statutory equivalent of an entry of a new certificate of title under HRS § 501-118." Wells Fargo Bank, N.A. v. Omiya, 142 Hawai`i 439, 451, 420 P.3d 370, 382 (2018).  Further,

> registering a quitclaim deed is not equivalent to the creation or entry of a new certificate of title.  As Wells Fargo [- the party challenging the quitclaim deed -] argued, the evidence does not show that a new certificate of title was entered; had one been created, a certified and sealed copy of the certificate would have been admissible as evidence.  See HRS § 501-88 (2006) (certified and sealed copies of certificates "shall be received as evidence in all the courts of the State"); cf. Aames Funding Corp. v. Mores, 107 Hawai`i 95, 97, 110 P.3d 1042, 1044 (2005) ("Trial began with both parties stipulating to the authenticity of . . . a certified copy of TCT No. 587,098," which was accepted into evidence).

Id. at 455, 420 P.3d at 386 (some alterations in Wells Fargo). In the present case, no party has submitted a certified and sealed copy of the certificate of title for the Unit.

Moreover, § 501-118(c) only applies to foreclosures pursuant to the exercise of a power of sale, which the AOAO did not have.  See 12/31/18 Order, 2018 WL 6841818, at *9 ("Because **it did not have an agreed upon power of sale provision** or other contractual agreement authorizing it to utilize Chapter 667, Part I, the AOAO was required to utilize Chapter 667, Part II to

10

foreclose upon Plaintiffs' Unit." (emphasis added)). The AOAO
therefore is not entitled to the protection of § 501-118.

The AOAO also argues Haw. Rev. Stat. § 667-102 allows
a former homeowner to bring a wrongful foreclosure action, but
it prohibits the former homeowner from seeking return of the
property. Section 667-102(b) states:

> When both the affidavit and the conveyance
> document are recorded:
>
> (1)  The sale of the unit is considered
> completed;
>
> (2)  All persons claiming by, through, or
> under the unit owner and all other persons
> having liens on the unit junior to the lien
> of the association shall be forever barred
> of and from any and all right, title,
> interest, and claims at law or in equity in
> and to the unit and every part of the unit,
> except as otherwise provided by law;
>
> (3)  The lien of the association and all
> liens junior in priority to the lien of an
> association shall be automatically
> extinguished from the unit; and
>
> (4)  The purchaser shall be entitled to
> immediate and exclusive possession of the
> unit.

The AOAO's Affidavit of Non-Judicial Foreclosure Sale under
Power of Sale ("Foreclosure Affidavit") was recorded in the Land
Court on November 4, 2010. [Diehl Decl., Exh. H (Foreclosure
Aff.) at 1.] The AOAO argues that, because the Foreclosure
Affidavit and the Quitclaim Deed have been recorded, Plaintiffs
are barred from seeking return of the Unit, pursuant to

§ 667-102, as interpreted by the Hawai`i Intermediate Court of Appeals ("ICA") in <u>Sakal v. Ass'n of Apartment Owners of Hawaiian Monarch</u>, 143 Hawai`i 219, 426 P.3d 443 (Ct. App. 2018).[7]

However, § 667-102 was enacted in 2012 and took effect on June 28, 2012. 2012 Haw. Sess. Laws Act 182, § 3 at 644-45, § 69 at 689. Thus, the foreclosure sale in this case occurred before § 667-102 took effect, rendering this case distinguishable from <u>Sakal</u>. <u>Compare</u> 12/31/18 Order, 2018 WL 6841818, at *3-5 (stating the foreclosure sale of the Unit, and the recordation of the relevant documents, occurred in 2010), <u>with</u> <u>Sakal</u>, 143 Hawai`i at 222, 426 P.3d at 446 (noting the public auction was "reportedly held" on December 3, 2012, and the relevant documents were recorded in January 2013). This Court must therefore determine whether § 667-102 applies retroactively to foreclosures that occurred before the statute took effect. Because there is no Hawai`i case law addressing whether § 667-102 applies retroactively,[8] this Court must predict

_____

[7] The Hawai`i Supreme Court granted Christian Sakal's application for a writ of certiorari. SCWC-15-0000529, 2019 WL 245225 (Hawai`i Jan. 17, 2019).

[8] In <u>Ass'n of Apartment Owners of Terrazza/Cortebella/Las Brisas/Tiburon ex rel. Board of Directors v. Lopez</u> ("<u>Lopez</u>"), the association foreclosed on a lien for unpaid assessments and conveyed the unit to itself. It recorded the foreclosure affidavit and the quitclaim deed in the Land Court, all before § 667-102 took effect. <u>Lopez</u>, NO. CAAP-14-0001093, 2019 WL 336919, at *1 (Hawai`i Ct. App. Jan. 28, 2019). The association
(. . . continued)

12

how the Hawai`i Supreme Court would decide the issue. See 3/30/17 Order, 2017 WL 1240181, at *5 (some citations omitted) (citing Trishan Air, Inc. v. Fed. Ins. Co., 635 F.3d 422, 427 (9th Cir. 2011)).

> Regarding the retroactive effect of civil statutes, th[e Hawai`i Supreme C]ourt has stated:
>
>> HRS § 1-3 (1993) provides that "[n]o law has any retrospective operation, unless otherwise expressed or obviously intended." Also, this court has noted the "general rule in most jurisdictions that [s]tatutes or regulations which say nothing about retroactive application are not applied [to prior claims or events] if such a construction will impair existing rights, create new obligations or impose additional duties with respect to past transactions." Clark v. Cassidy, 64 Haw. 74, 77 n.6, 636 P.2d 1344, 1346 n.6 (1981).
>
> Wong v. Takeuchi, 88 Hawai`i 46, 51, 961 P.2d 611, 616 (1998) (citing State of Hawai`i Org. of Police Officers v. Society of Professional Journalists, 83 Hawai`i 378, 389, 927 P.2d 386, 397 (1996)) (Some brackets added.).[9]

---

rented the unit to third-parties, who became delinquent in their rent. The association filed a summary possession action against the renters, and the original owner sought to intervene. Id. at *2. The ICA vacated the judgment, holding that the district court did not have jurisdiction over the action because the title to the unit was at issue. Id. at *7. One of the issues was whether § 667-102 applied, but the ICA did not have to address that issue because the existence of issues regarding title was dispositive of the appeal. See id. (noting that § 667-102 "**may** potentially raise an additional issue regarding title to the Property" (emphasis added)).

[9] SHOPO was superseded by statute on other grounds. See Peer News LLC v. City & Cty. of Honolulu, 138 Hawai`i 53, 55, 376 P.3d 1, 3 (2016).

> Nevertheless, under an equally established rule
> of construction, a statute providing remedies or
> procedures that do not affect existing rights,
> but merely alter the means of enforcing or giving
> effect to such rights, may apply to pending
> claims — even those arising before the effective
> date of the statute.  See Clark, 64 Haw. at 77,
> 636 P.2d at 1347 (citations omitted).

Tam v. Kaiser Permanente, 94 Hawai`i 487, 495, 17 P.3d 219, 227

(2001) (some alterations in Tam) (some citations omitted).

Act 182 does not state that the statutes enacted

therein are retroactive.  See 2012 Haw. Sess. Laws Act 182, § 69

at 689 (stating the Act "shall take effect upon its approval,"

with certain exceptions, none of which apply to § 667-L in

section 3 of the Act, which became § 667-102).  Nor is there any

indication in the legislative history of Act 182 that the

legislature intended § 667-102 to apply retroactively.[10]

Therefore, § 667-102 does not apply to the foreclosure of the

Unit if retroactive application would "impair existing rights,

create new obligations or impose additional duties with respect

to past transactions."  See Wong, 88 Hawai`i at 51, 961 P.2d at

616 (some citations and quotation marks omitted).

---

[10] The legislature did intend to "[e]stablish a time limit
for filing actions to void title transfers of foreclosed
property."  H. Stand. Comm. Rep. No. 626-12, in 2012 House
Journal, at 1186.  However, it cannot be inferred from that
intent alone that the legislature intended § 667-102 to be
retroactive, particularly since Act 182 also repealed
Chapter 667, Part I.  See 2012 Haw. Sess. Laws Act 182, §§ 50-54
at 684.

The AOAO's interpretation of § 667-102 would clearly impose additional duties with respect to the foreclosure of the Unit, a transaction that occurred before § 667-102 was enacted. See Trans. of 4/12/19 hrg. ("4/12/19 Hrg. Trans."), filed 4/24/19 (dkt. no. 222), at 30 (the AOAO's counsel argued, "a fair reading of that statute says that as of 2012, if you're in a situation where the affidavit is recorded and the certificate is recorded, you better stand up and challenge fast or you lose your right to claim the title"). Under the AOAO's interpretation, if a foreclosure affidavit and a conveyance document were recorded before the enactment of § 667-102, as soon as the statute took effect, the prior owner of the property was required to raise an immediate challenge to the foreclosure or lose the ability to recover the property. That would be so, even if the statute of limitations applicable to the prior owner's claim had not yet passed. Thus, retroactive application of § 667-102 would "impose additional duties with respect to [a] past transaction[]."

The AOAO also argues that § 667-102 applies retroactively because it is a procedural law, and "there's a variety of federal courts that have found that the retroactive application of a procedural law is far more palatable than the retroactive application of a substantive law." [4/12/19 Hrg. Trans. at 32.] However, as previously noted, Hawai`i law

15

controls this Court's interpretation of the Hawai`i statutes at
issue in this case.  Hawai`i courts also allow the retroactive
application of procedural, as opposed to substantive, statutes.
See, e.g., Kaho`ohanohano v. Dep't of Human Servs., 117 Hawai`i
262, 314, 178 P.3d 538, 590 (2008) ("in the absence of any
indication as to retroactive application, [the statute will]
only be applied retroactively if such construction would result
in a mere remedial or procedural change").  The Hawai`i Supreme
Court has stated:

> Substantive rights are generally defined as
> rights which take away or impair vested rights
> acquired under existing laws, or create a new
> obligation, impose a new duty, or attach a new
> disability in respect to transactions or
> considerations already past, as distinguished
> from remedies or procedural laws which merely
> prescribe methods of enforcing or giving effect
> to existing rights.

Clark, 64 Haw. at 77, 636 P.2d at 1346-47 (footnote and internal
quotation marks omitted).  Thus, under Hawai`i case law,
§ 667-102 affects Plaintiffs' substantive rights because
applying it retroactively would "attach a new disability" to a
past transaction.

As further evidence that § 667-102 does not apply
retroactively to the foreclosure of the Unit, the Court notes
there was a similar statute to § 667-102 already in effect in
2010 – Haw. Rev. Stat. § 667-33.  However, § 667-33 was part of
Chapter 667, Part II; there was no corresponding statute in

Part I.  If the legislature intended for the terms of § 667-33 to apply to Part I, it would have included a similar statute within Part I.  Further, the benefits to foreclosing lienholders in Part II were only provided if the lienholder complied with the requirements of Part II.  Allowing lienholders to have the benefits of Part II without complying with the requirements of Part II would render the Part II requirements meaningless, which would be contrary to the well-settled principles of statutory interpretation.  See, e.g., Kaheawa Wind Power, LLC v. Cty. of Maui, 135 Hawai`i 202, 209, 347 P.3d 632, 639 (Ct. App. 2014) (discussing rules governing statutory construction (quoting In re Ainoa, 60 Haw. 487, 490, 591 P.2d 607, 609 (1979); Potter v. Hawaii Newspaper Agency, 89 Hawai`i 411, 422, 974 P.2d 51, 62-63 (1999))).

On the basis of the foregoing, this Court predicts that the Hawai`i Supreme Court would hold that § 667-102 does not apply retroactively to the foreclosure sale of Plaintiffs' Unit.  This Court therefore rejects the AOAO's argument that § 667-102 precludes Plaintiffs from seeking the return of the Unit as a remedy for their wrongful foreclosure claim.

**B.   Election of Remedies**

The AOAO next argues that, even if it would have been legally possible for Plaintiffs to obtain return of the Unit in this action, they can no longer do so because they have already

17

elected to pursue a damages remedy.  The Hawai`i Supreme Court

has stated:

> when there exists two or more concurrent but
> inconsistent remedies, as here, the equitable
> doctrine of election of remedies provides that:
>
>> [A] plaintiff need not elect, and cannot be
>> compelled to elect between inconsistent
>> remedies during the course of trial.  If,
>> however, a plaintiff has **unequivocally and
>> knowledgeably** elected to proceed on one of
>> the remedies he or she is pursuing, he or
>> she may be barred recourse to the other.
>> The doctrine acts as a bar precluding a
>> plaintiff from seeking an inconsistent
>> remedy as a result of his or her previous
>> conduct or election.
>
>> Cieri v. Leticia Query Realty, Inc., 80 Hawai`i
>> 54, 71, 905 P.2d 29, 46 (1995) (internal
>> quotation marks, citations, brackets, and
>> ellipses omitted) (emphasis in original).  **The
>> purpose of the election of remedies doctrine "is
>> not to prevent recourse to any remedy, or to
>> alternative remedies, but to prevent double
>> recoveries or redress for a single wrong."**  25
>> Am. Jur. 2d Election of Remedies § 3 at 665
>> (2004) (footnotes omitted).

Exotics Hawaii-Kona, Inc. v. E.I. Du Pont De Nemours & Co., 116

Hawai`i 277, 291, 172 P.3d 1021, 1035 (2007) (alteration and

first emphasis in Exotics Hawaii-Kona) (second emphasis added).

    The election-of-remedies doctrine is a procedural

rule, Bischoff v. Cook, 118 Hawai`i 154, 162, 185 P.3d 902, 910

(Ct. App. 2008), and therefore this Court is not required to

follow it.  See MacRae ex rel. Watters v. HCR Manor Care Servs.,

LLC, 691 F. App'x 476, 478 (9th Cir. 2017) (stating "the Erie

doctrine . . . provides that federal courts sitting in diversity jurisdiction follow state substantive law, but not state procedural law" (citing <u>Erie Railroad Co. v. Tompkins</u>, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938))); <u>Cortez v. Skol</u>, 776 F.3d 1046, 1054 n.8 (9th Cir. 2015) ("[A] federal court exercising supplemental jurisdiction over state law claims is bound to apply the law of the forum state to the same extent as if it were exercising its diversity jurisdiction." (citation and quotation marks omitted)).[11]

However, this district court has followed the election-of-remedies doctrine from <u>Cieri</u> and <u>Exotics Hawaii-Kona</u>. <u>See, e.g.</u>, <u>Suzuki v. Helicopter Consultants of Maui, Inc.</u>, Civ. No. 13-00575 JMS-KJM, 2017 WL 2839499, at *1-2 (D. Hawai`i May 23, 2017); <u>Mauna Kea Beach Hotel Corp. v. Affiliated FM Ins. Co.</u>, CV No. 07-00605 DAE-KSC, 2008 WL 11345955, at *6 (D. Hawai`i Mar. 7, 2008). This Court agrees that following the Hawai`i election-of-remedies doctrine is appropriate in this case to determine whether the return of the Unit is foreclosed by Plaintiffs' election for their wrongful foreclosure claim because the federal election-of-remedies doctrine is

---

[11] This Court has federal question jurisdiction over Plaintiffs' FDCPA claim and supplemental jurisdiction over Plaintiffs' state law claims. <u>See</u> 3/30/17 Order, 2017 WL 1240181, at *5.

substantively the same as the Hawai`i doctrine.  See, e.g.,
Teutscher v. Woodson, 835 F.3d 936, 955-56 (9th Cir. 2016)
(describing the election of remedies under federal law).

The fact that the Third Amended Complaint alleges
neither a quiet title claim nor an ejectment claim does not
constitute an unequivocal election to proceed only on a damages
remedy because quiet title and ejectment are remedies implicit
in a wrongful foreclosure claim when the foreclosing entity is
still in possession of the property.  See Gamblin v. Nationstar
Mortg. LLC, Civ. No. 17-00557 ACK-RLP, 2018 WL 5831207, at *14
(D. Hawai`i Nov. 7, 2018) (noting quiet title and ejectment "are
remedies sought for Plaintiffs' wrongful foreclosure claims"
and, where the plaintiffs do assert quiet title and ejectment
claims, "[t]hese claims are essentially duplicative of
Plaintiffs' wrongful foreclosure claims against Defendants, and
cannot stand against mortgagees who assert neither title to nor
right of possession of the Property").

The Third Amended Complaint does not have a specific
prayer for the return of the Unit, but the fact that Plaintiffs
seek return of the Unit can be reasonably inferred from the
language in the prayer for relief.  Plaintiffs seek a judgment
for, inter alia: "their actual losses," which they list as
distinct from their request for "compensatory damages, treble
damages, [and] punitive damages"; and they also pray for "such

other and further relief as this Court deems just and proper against [the] AOAO." [Third Amended Complaint at pg. 9.] Thus, the Third Amended Complaint's prayer for relief is not an "unequivocal[] and knowledgeabl[e] elect[ion] to proceed on" a damages remedy alone. See Exotics Hawaii-Kona, 116 Hawai`i at 291, 172 P.3d at 1035. Nor is there anything else in the record that constitutes such an election. Therefore, the election-of-remedies doctrine does not preclude Plaintiffs from seeking the return of the Unit.

The AOAO also argues that Plaintiffs must elect prior to trial whether they are seeking the return of the Unit or damages. The election-of-remedies doctrine does not require a pretrial election. Cf. id. (stating the "plaintiff need not elect, and cannot be compelled to elect between inconsistent remedies during the course of trial"). The primary concern of the doctrine is the avoidance of double **recovery**. Id. If Plaintiffs ultimately prevail on Count I at trial, they will be required to elect their remedy prior to the entry of final judgment, but they are not required to make the election prior to, or during, trial.

The AOAO Motion is therefore denied as to the AOAO's requests for: a ruling that Plaintiffs are precluded from seeking the return of the Unit; and an order requiring

Plaintiffs to elect either the return of the Unit or the damages remedy prior to trial.

## II.  **Lost Rental Value**

At the hearing on the Motions, Plaintiffs conceded that lost rental value is only an available remedy if Plaintiffs recover the Unit.  See Trans. of 4/12/19 hrg. ("4/12/19 Hrg. Trans."), filed 4/24/19 (dkt. no. 222), at 24 ("So we would agree with [Chow's counsel] that, you know, if we take – if we say, You keep the property, we shouldn't be entitled to the rental income.").  Because Plaintiffs do not, and cannot, seek return of the Unit from Chow as a remedy for their FDCPA claim, lost rental income cannot be considered as a component of Plaintiffs' damages for that claim.  Similarly, if Plaintiffs ultimately elect the damages remedy for their wrongful foreclosure claim, they would not be entitled to include lost rental income as an element of their damages.  Therefore, the AOAO Motion is granted, to the extent that it seeks a ruling that lost rental income cannot be a component of Plaintiffs' damages, if they elect the damages remedy.  The Chow Motion is granted, to the extent that it seeks a ruling that lost rental income cannot be a component of Plaintiffs' damages as to Count II.  Nothing in this ruling, however, precludes Plaintiffs from seeking prejudgment interest in the event they ultimately

22

elect the damages remedy for their wrongful foreclosure claim
should they prevail at trial.

A.  **Wrongful Foreclosure**

There is no Hawai`i case law addressing the issue of
whether a plaintiff can recover lost rental income if he
recovers the property in a wrongful foreclosure action.  This
Court must therefore predict how the Hawai`i Supreme Court would
decide the issue.

This district court has stated:

> In Hawaii, the common law tort of slander of
> title requires a party to establish "special
> damages" proximately resulting from a slander of
> title.  Isobe v. Sakatani, 279 P.3d 33, 42-43
> (Haw. Ct. App. 2012) (citing 50 Am. Jur. 2d Libel
> and Slander § 530 (2006); B&B Inv. Grp. v.
> Gitler, 581 N.W.2d 17, 20 (Mich. Ct. App. 1998)).
> Although the Hawaii courts have not extensively
> discussed the damages recoverable in an action
> for slander of title, the authorities to which
> the Isobe court cited provide some illumination.
> Specifically, attorney's fees and lost rent, both
> of which Plaintiff seeks here, are recoverable.
> See 50 Am. Jur. 2d Libel and Slander § 534
> (explaining that a plaintiff may recover "the
> attorney's fees incurred in removing the cloud
> upon the plaintiff's property title."); B&B Inv.
> Grp., 581 N.W.2d at 20 (stating that special
> damages include loss of rent). . . .

Bank of New York Mellon v. Perry, Case No. 17-cv-00297 DKW-RLP,
2019 WL 289069, at *1 (D. Hawai`i Jan. 22, 2019).  Whether a
wrongful foreclosure claim is akin to a slander of title claim
depends upon the specific facts of the claim.  Compare Gamblin,
2018 WL 5831207, at *8 n.10 ("Nor does the Court agree with

Defendants that 'the underpinnings of Plaintiffs' wrongful foreclosure claim mirror the elements for slander of title.' Plaintiffs' wrongful foreclosure claims do not turn on allegedly false claims made in the Notice of Intent to Foreclose or Mortgagee's Affidavit; rather, they are predicated on the allegedly improper loss of title, possession, and rental value of the Property that resulted from the foreclosure sale." (citations omitted)), with Martin v. GMAC Mortg. Corp., Civil No. 11-00118 LEK-BMK, 2011 WL 6002617, at *12 (D. Hawai`i Nov. 30, 2011) ("Plaintiffs may establish a slander of title claim based on wrongful foreclosure if they can prove that GMACM's lien and the foreclosure action was false or otherwise improper." (citing Johnson v. Ass'n of Apartment Owners of Ke Aina Kai Townhomes, CIVIL NO. 06-00106 HG-KSC, 2006 U.S. Dist. LEXIS 61106, at *27 (D. Haw. Aug. 25, 2006) (rejecting a slander of title claim based on wrongful foreclosure because it was undisputed that the defendant "had a statutory right to file a lien and foreclosure action. Plaintiffs cannot show that the filing of the lien and foreclosure action was 'false' or improper because it was sanctioned by existing law."))).

In the instant case, Plaintiffs have shown that the foreclosure of the Unit was improper because it was not sanctioned by the law in effect at the at time. Further, Plaintiffs' wrongful foreclosure claim is based on statements in

the foreclosure documents, which falsely assert that the AOAO had the authority to proceed under Chapter 667, Part I. Thus, Plaintiffs' wrongful foreclosure claim is akin to a slander of title claim, and this Court predicts that the Hawai`i Supreme Court would hold that, where the wrongful foreclosure claim is akin to a slander of title claim, the plaintiff may also recover lost rent when he recovers the property.

In re Kekauoha-Alisa, 674 F.3d 1083 (9th Cir. 2012), involved a claim alleging that the manner in which the lender conducted the foreclosure of the debtor's property constituted a deceptive practice, in violation of Haw. Rev. Stat. Chapter 480. The bankruptcy court awarded, as part the debtor's damages, lost rental value for the period when the debtor lost possession of the property. Id. at 1092-93. The Ninth Circuit noted that "[t]he damages the bankruptcy court awarded all flow from the foreclosure on Debtor's home,"[12] but the Ninth Circuit reversed

---

[12] The Ninth Circuit noted the damages award "appear[ed] to give Debtor an inappropriate windfall" because it was undisputed "that the Mortgage was in default and that the mortgagee was entitled to foreclose. The only question [wa]s whether the proper party foreclosed the Mortgage in the proper manner." Kekauoha-Alisa, 674 F.3d at 1093. Similarly, in the instant case, it is undisputed that Plaintiffs were delinquent in their association fees, and the AOAO was entitled to foreclose on their lien, if the AOAO had followed the proper procedure. However, the amount of the AOAO's lien was small in comparison to the value of the Unit at the time of the foreclosure sale. Although the amount of Plaintiffs' mortgage loans exceeded the value of the Unit at the time of the foreclosure sale, there is

(. . . continued)

25

the judgment and remanded the case because the bankruptcy court

failed to make findings regarding causation.  Id. at 1093.  The

Ninth Circuit stated remand was

> the appropriate course because the factual record
> may not be complete — Debtor suggests, for
> example, that she can prove that but for Lenders'
> improper postponement, she might have succeeded
> in curing her default.  This fact, if proven,
> might establish that Debtor's temporary loss of
> possession of the property was "fairly traceable"
> to Lenders' deceptive practice.  Flores [v.
> Rawlings Co., 117 Hawai`i 153, 167 n.23], 177
> P.3d [341,] 355 n.23 [(Hawai`i 2008).]
> Therefore, on remand the bankruptcy court must
> determine the difference, if any, between
> Debtor's situation had Lenders properly postponed
> the foreclosure sale and Debtor's actual
> situation, given that the sale was improperly
> postponed.  This framing properly narrows the
> inquiry to the damage caused by Lenders'
> deceptive postponement.  Id. at 357.

Id.  Although Kekauoha-Alisa did not involve a wrongful

foreclosure claim, the factual basis of the Chapter 480 claim

was a wrongful foreclosure.  Therefore, the analysis in

Kekauoha-Alisa supports Plaintiffs' position that lost rental

value can be part of the damages for a wrongful foreclosure

claim, where the plaintiff recovers the property and establishes

causation.

---

no indication in the record that either of Plaintiffs' mortgage
holders was attempting to foreclose.  See the discussion infra
of the AOAO's "under water" argument.

If Plaintiffs prevail on Count I and elect the return of the Unit as their remedy, they will also be entitled to an award of loss of reasonable rental value. The Unit's reasonable rental value may be established through, for example, evidence of historical rents for the Unit or other similar units, subject to the Federal Rules of Evidence. The AOAO would be entitled to offset, from the rental value of the Unit, the AOAO's reasonable monetary burden of ownership during the period when the AOAO had title and possession of the Unit. The reasonable monetary burden includes, but is not necessarily limited to, property taxes, association fees, and the cost of reasonable repairs and maintenance for the Unit.

The AOAO Motion is denied, insofar as this Court rules that, if Plaintiffs prevail on Count I and elect the return of the Unit as their remedy, Plaintiffs are also entitled to recover lost rental value, subject to an offset for the AOAO's reasonable burdens of ownership.

## B. **FDCPA Claim**

If Plaintiffs prevail on their FDCPA claim, they are entitled to recover, among other things, actual damages, which are those "sustained as a result of a defendant's conduct in violation of the statutes." See Slater v. PRA Recovery, Civil No. 12-00290 HG-RLP, 2012 WL 5269400, at *6 (D. Hawai`i Sept. 21, 2012) (citing 15 U.S.C. § 1692k(a)(1)), *report and*

*recommendation adopted*, 2012 WL 5269390 (Oct. 22, 2012); see

also, e.g., Alonso v. Blackstone Fin. Grp. LLC, 962 F. Supp. 2d

1188, 1201 (E.D. Cal. 2013) ("in the Ninth Circuit a plaintiff

may recover for actual damages . . . as long as she has tendered

evidence substantiating that she suffered [the damages] as a

result of the defendant's FDCPA violations" (citation omitted)).

It is undisputed that Plaintiffs were renting the Unit

prior to the foreclosure. See 12/31/18 Order, 2018 WL 6841818,

at *2. If Plaintiffs prevail on Count II at trial, including

establishing causation, Plaintiffs would be able to recover the

lost rental value of the Unit as part of their actual damages.

The measure of Plaintiffs' lost rental value damages for their

FDCPA claim is the same as the measure for that component of

their wrongful foreclosure damages, *i.e.*, the reasonable rental

value, offset by the reasonable monetary burden of ownership.[13]

Therefore the Chow Motion is denied, to the extent it seeks a

ruling that Plaintiffs are not entitled to recover lost rent as

an element of their damages for Count II.

---

[13] Plaintiffs would not be able to recover the same damages
from the AOAO as to Count I and from Chow as to Count II.
However, the Motions do not ask this Court to determine how
liability would be apportioned between the AOAO and Chow if
Plaintiffs prevail on both claims. This Court therefore makes
no findings or conclusions on that issue at this time.

## III. **Measure of the Damages Remedy**

If Plaintiffs prevail on Count I, they may ultimately elect the damages remedy in lieu of the return of the Unit. Again, this Court concludes that Santiago controls the determination of the measure of Plaintiffs' damages remedy. Although voiding the foreclosure sale in Santiago was impracticable because the Tavern had been sold to a third-party, voiding the foreclosure sale of the Unit would not be impracticable in this case if Plaintiffs elect the damages remedy. In determining the appropriate relief for the Santiagos' wrongful foreclosure claim, the Hawai`i Supreme Court stated:

> Jenkins v. Wise, 58 Haw. 592, 574 P.2d 1337 (1978), is instructive. In that case, even though this court found the purchaser to be in default, we disapproved of the circuit court's disposition that essentially effectuated a total forfeiture of the purchaser's interest, in part because the seller's "security interests in the property were never in jeopardy." Id. at 598, 574 P.2d at 1342. In this context, the court found that "where no injustice would thereby result to the injured party, equity will generally favor compensation rather than forfeiture against the offending party." Id. at 597, 574 P.2d at 1341. Thus, instead of cancelling the purchase contract and depriving the purchaser of the property and the significant amount of money that she already paid, this court ordered the purchaser of the property to pay the seller the entire unpaid balance of the purchase price and accrued interests in exchange for specific performance by the seller under the purchase contract. Id. at 604, 574 P.2d at 1345.

Similar to <u>Jenkins</u>, Tanaka's security interests in the Tavern were never in jeopardy. At the time of their ejectment, the Santiagos had made virtually full payment to Tanaka for the Tavern, including an $800,000 down payment and $585,161.60 in mortgage payments. Hence, we exercise our equitable power in awarding restitution to the Santiagos so as to prevent forfeiture of their interests. Accordingly, we conclude that **the Santiagos are entitled to restitution of their proven out-of-pocket losses from Tanaka's wrongful foreclosure of the Mortgage and subsequent sale of the Tavern**. <u>See</u> <u>Fleming v. Napili Kai, Ltd.</u>, 50 Haw. 66, 70, 430 P.2d 316, 319 (1967) (declaring that equity jurisprudence "is not bound by the strict rules of the common law, but can mold its decrees to do justice amid all the vicissitudes and intricacies of life" (quoting <u>Bowen v. Hockley</u>, 71 F.2d 781, 786 (4th Cir. 1934))). This amount is equal to the undisputed $800,000 down payment that the Santiagos paid for the Tavern, $585,161.60 in mortgage payments from September 2006 to March 2011, consisting of principal, interest, and fees, $17,518.31 that the Santiagos were required to pay in closing charges associated with the sale, and $10,110.88 in property taxes that the Santiagos paid after Tanaka had wrongfully sold the Tavern back to herself. . . .

<u>Santiago</u>, 137 Hawai`i at 158, 366 P.3d at 633 (emphasis added).

The AOAO makes much of the fact that the Unit was "under water" at the time of the foreclosure sale. <u>See</u> 4/12/19 Hrg. Trans. at 36. Plaintiffs purchased the Unit in 2006 with a $249,600 first mortgage loan and a $62,400 second mortgage loan. 12/31/18 Order, 2018 WL 6841818, at *1. The lien on the Unit for unpaid association fees that the AOAO recorded on April 1, 2010 was for $6,882.86. <u>Id.</u> at *2. The amount Plaintiffs owed to the AOAO grew, including late fees and attorneys' fees and

costs. According to a demand letter dated August 30, 2010, Plaintiffs owed $10,697.40. Id. at *2-4.

The parties have submitted evidence that, at the time of the foreclosure sale, the Unit was only worth $249,000. [Concise statement of facts in supp. of Chow Motion ("Chow CSOF"), filed 2/6/19 (dkt. no. 185), Decl. of Christopher T. Goodwin ("Goodwin Decl."), Exh. 7 (Pltf. Rudy Akoni Galima's response to the AOAO's request for answers to interrogs., dated 3/1/18) at Answer no. 5; Goodwin Decl., Exh. 8 (Pltf. Beatriz Galima's response to the AOAO's request for answers to interrogs., dated 3/1/18) at Answer no. 5; Diehl Decl., Exh. J (Individual Condo Unit Appraisal Report) at 4.] The AOAO therefore argues it had to foreclose to collect upon its lien, and Plaintiffs suffered no injury in the wrongful foreclosure because Plaintiffs had no equity in the Unit. However, there is no evidence in the current record that, at the time the AOAO initiated the Part I foreclosure process for the Unit, either the holder of Plaintiffs' first mortgage or the holder of their second mortgage: 1) was attempting to foreclose; or 2) asserted a claim against any proceeds that the AOAO's foreclosure sale of the Unit would generate.[14] Nor have the parties presented any

---

[14] Plaintiffs' counsel represented that, while Plaintiffs were attempting to complete a "short sale" of the Unit, they satisfied the second mortgage. [4/12/19 Hrg. Trans. at 46.]

(. . . continued)

evidence that either of Plaintiffs' mortgagees attempted to foreclose after the AOAO had title to and possession of the Unit.[15]  Plaintiffs have presented evidence that, after the foreclosure sale, they remain liable on the first mortgage loan. See 12/31/18 Order, 2018 WL 6841818, at *5.

Viewing the current record in the light most favorable to Plaintiffs, see Crowley v. Bannister, 734 F.3d 967, 976 (9th Cir. 2013), this Court finds that, like the creditors in Jenkins and Santiago, the AOAO's security interest was not in jeopardy at the time of the improper Chapter 667, Part I foreclosure of the Unit.  Therefore, pursuant to Santiago, if Plaintiffs prevail on Count I and elect the damages remedy, they will be "entitled to restitution of their proven out-of-pocket losses from [the AOAO]'s wrongful foreclosure."  See 137 Hawai`i at 158, 366 P.3d at 633.

However, because the nature of the AOAO's lien is fundamentally different from the mortgage that was foreclosed upon in Santiago, the measure of Plaintiffs' out-of-pocket

---

Because that fact is not apparent from the evidence in the current record, that fact has not been considered in this Court's analysis of the Motions.

[15] It appears from the state judiciary's public access website that, on September 25, 2013, Deutsche Bank National Trust Co. filed a foreclosure action against, inter alia, Plaintiffs and the AOAO in state court.  However, on January 24, 2014, the case was dismissed without prejudice, by stipulation.

losses from the wrongful foreclosure is different from the measure of the Santiagos' out-of-pocket losses. Here, it is undisputed that Plaintiffs were delinquent in their association fees and that the AOAO properly placed a lien on the Unit. This Court has ruled, as a matter of law, that the AOAO was not authorized to utilize Chapter 667, Part I and was instead required to utilize Part II. It is also undisputed that the AOAO did not follow the procedures required under Part II. Plaintiffs have presented evidence that, prior to the foreclosure, they were attempting to complete a short sale of the Unit. [Blood AOAO Decl., Exh. A (Decl. of Rudy Akoni Galima, dated 1/17/18) at ¶ 20.[16]] Based on the facts of this case, Plaintiffs' out-out-pocket loss from the AOAO's wrongful foreclosure of the Unit is the amount that the Unit would have sold for without the AOAO's illegal use of Part I.

Defendants have taken the position that the basis of Plaintiffs' damages is the hypothetical Part II Foreclosure Value. Plaintiffs' position appears to be that, in the additional time it would have taken for the AOAO to comply with the procedural requirements of Part II, Plaintiffs would have

---

[16] Rudy Galima's declaration was originally filed in support of Plaintiffs' motion for summary judgment, which was granted in part and denied in part in the 12/31/18 Order. See, e.g., 12/31/18 Order, 2018 WL 6841818, at *2 (citing declaration); see also Blood AOAO Decl. at ¶ 2.

been able to either complete the short sale or otherwise sell the Unit for its fair market value at the time. In other words, there would have been no Part II foreclosure sale. The determination of which theory is the correct measure of damages in this case involves factual issues. See Kekauoha-Alisa, 674 F.3d at 1092 ("The proper calculation of damages and causation are questions of fact under Hawaii law . . . ." (some citations omitted) (citing Kato v. Funari, 118 Hawai`i 375, 191 P.3d 1052, 1058 (2008) (damages are question of fact))). Summary judgment is not possible because there are genuine issues regarding the material facts relevant to the determination of the correct measure of damages. See Fed. R. Civ. P. 56(a). Further, the resolution of the factual issues necessary to determine the correct measure of damages will involve weighing competing evidence and making credibility determinations, both of which this Court cannot do on summary judgment. See Blankenhorn v. City of Orange, 485 F.3d 463, 470 (9th Cir. 2007) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505 (1986)).

This Court therefore concludes that, if Plaintiffs prevail on Count I and elect a damages remedy, Plaintiffs are entitled to recover the amount that the Unit would have sold for without the AOAO's illegal use of Part I. However, this Court

cannot determine the correct measure of that amount at this
time.

Further, this Court rejects the AOAO's argument that
the amount the Unit would have sold for without the AOAO's
illegal use of Part I must be off set by Plaintiffs' obligations
on their mortgages. Plaintiffs' mortgage loans are separate
legal obligations which are not before the Court in this action.
Plaintiffs' mortgage holders are not parties to this case. Nor
has any, much less admissible, evidence been presented that the
mortgage holders have sought to foreclose and recover
satisfaction of their liens. Further, although title to the
Unit is at issue in this case, the determination of the proper
title holder of the Unit does not place Plaintiffs' mortgages at
issue because Hawai`i follows the lien theory regarding
mortgages, not a title theory. See Heejoon Chung v. U.S. Bank,
N.A., CIVIL NO. 16-00017 ACK-RLP, 2016 WL 9525596, at *3 (D.
Hawai`i Nov. 1, 2016) (distinguishing between the title theory,
which Hawai`i followed in the early 1900's, and the lien theory,
which Hawai`i has followed since 1939).[17] Thus, it is not for
this Court to decide whether, or to what extent, Plaintiffs'

---

[17] "The lien theory is codified by Hawaii Revised Statute
Section 506-1, which states that a mortgage on real property
shall create only a lien 'and shall not be deemed to pass
title.'" Heejoon Chung, 2016 WL 9525596, at *3 (quoting Haw.
Rev. Stat. § 506-1).

mortgagees can assert a claim to any monetary award Plaintiffs may obtain as to Count I. This Court concludes that, if Plaintiffs prevail on Count I and elect the damages remedy, their damages are not reduced by the amounts of Plaintiffs' mortgage obligations.[18]

To the extent the AOAO Motion also asserts this Court must off-set the amount Plaintiffs still owe on the AOAO's lien, that argument is also rejected. The AOAO did not assert a counterclaim against Plaintiffs. See AOAO's Answer to Third Amended Complaint, filed 6/5/17 (dkt. no. 89). Further, on November 4, 2015, the AOAO filed a Complaint (Assumpsit-Money Owed) against Plaintiffs in a state district court to collect: $9,331.83 in maintenance fees; $943.16 in late fees; and $6,744.88 in attorneys' fees and costs ("Collection Complaint").[19] [Blood AOAO Decl., Exh. I.] To the extent that

---

[18] As to this argument, and others, the AOAO has presented a myriad of cases from other jurisdictions, which the AOAO argues support its positions. Those cases are not persuasive, either because: 1) there is controlling Hawai`i law on point; or 2) where there is no controlling Hawai`i law, this Court can predict how the Hawai`i Supreme Court would decide the issue, in light of related principles in controlling Hawai`i law or in other authorities interpreting and applying Hawai`i law. Thus, it is not necessary for this Court to consider the AOAO's case law from other jurisdictions.

[19] It appears from the state judiciary's public access website that the Collection Complaint was dismissed without prejudice by the state court, *sua sponte*, on December 6, 2018.

the AOAO asks this Court to issue rulings regarding the AOAO's entitlement to amounts it sought in the Collection Complaint, this Court declines to do so because such a ruling would be impermissible under the Rooker-Feldman doctrine. See Bianchi v. Rylaarsdam, 334 F.3d 895, 898 (9th Cir. 2003); see also Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923); D.C. Court of Appeals v. Feldman, 460 U.S. 462 (1983).[20]

Finally, if Plaintiffs prevail on Count I and elect a damages remedy, the amount that the Unit would have sold for without the AOAO's illegal use of Part I will also be the starting point for Plaintiffs' actual damages if they prevail on Count II and they establish causation.

---

[20] The Ninth Circuit stated:

> Rooker-Feldman is a powerful doctrine that prevents federal courts from second-guessing state court decisions by barring the lower federal courts from hearing de facto appeals from state-court judgments: If claims raised in the federal court action are "inextricably intertwined" with the state court's decision such that the adjudication of the federal claims would undercut the state ruling or require the district court to interpret the application of state laws or procedural rules, then the federal complaint must be dismissed for lack of subject matter jurisdiction. See Feldman, 460 U.S. at 483 n.16 & 485, 103 S. Ct. 1303. Simply put, "the United States District Court, as a court of original jurisdiction, has no authority to review the final determinations of a state court in judicial proceedings." Worldwide Church of God v. McNair, 805 F.2d 888, 890 (9th Cir. 1986).

Bianchi, 334 F.3d at 898.

## IV.  Other Components of Plaintiffs' Damages

Although the Motions do not seek rulings as to the following potential components of Plaintiffs' damages, this Court provides the analysis below in order to provide guidance to the parties.

Plaintiffs argue that, if they prevail on Count I and elect a damages remedy, they would be entitled to prejudgment interest on the award.  The Hawai`i Supreme Court has stated:

> Prejudgment interest is "essentially compensatory in nature" and is "given on money demands as damages for delay in payment, being just compensation to the plaintiff for a default on the part of his debtor." Sussel v. Civil Serv. Comm'n, 74 Haw. 599, 618–19, 851 P.2d 311, 321, reconsideration denied, 74 Haw. 650, 857 P.2d 600 (1993) (quoting Lucas v. Liggett & Myers Tobacco Co., 51 Haw. 346, 349, 461 P.2d 140, 143 (1969)).  See also Amfac, Inc. [v. Waikiki Beachcomber Inv. Co.], 74 Haw. [85,] 137, 839 P.2d [10,] 36 [(1992)] ("The purpose of [HRS § 636-16[21] is] to allow the court to designate the commencement date of interest in order to correct the injustice when a judgment is delayed for a long period of time for any reason, including litigation delays." (Citations and internal quotation marks omitted.)).

---

[21] Haw. Rev. Stat. § 636-16 states:

> In awarding interest in civil cases, the judge is authorized to designate the commencement date to conform with the circumstances of each case, provided that the earliest commencement date in cases arising in tort, may be the date when the injury first occurred and in cases arising by breach of contract, it may be the date when the breach first occurred.

The plaintiffs-appellees maintain, somewhat
hyperbolically, that prejudgment interest is
"virtually mandatory" and is a "right" recognized
at common law.  More moderately, the plaintiffs-
appellees acknowledge that this court has stated
that "prejudgment interest is to be allowed
wherever it is properly proved."  Sussel, 74 Haw.
at 618, 851 P.2d at 313 (citing City and County
of Honolulu v. Caetano, 30 Haw. 1 (1927)).
However, it is clearly within the discretion of
the circuit court to deny prejudgment interest
where appropriate, for example, where: (1) the
defendant's conduct did not cause any delay in
the proceedings, see Amfac, Inc., 74 Haw. at 137,
839 P.2d at 36; (2) the plaintiff himself has
caused or contributed to the delay in bringing
the action to trial, see Schmidt v. Board of
Directors of the Association of Apartment Owners
of the Marco Polo Apartments, 73 Haw. 526, 534–
35, 836 P.2d 479, 484 (1992); or (3) an
extraordinary damage award has already adequately
compensated the plaintiff, see Leibert v. Finance
Factors, Ltd., 71 Haw. 285, 293, 788 P.2d 833,
838 (holding that it was an abuse of discretion
for the circuit court to award prejudgment
interest to a treble damages award),
*reconsideration denied*, 71 Haw. 664, 833 P.2d 899
(1990).

Roxas v. Marcos, 89 Hawai`i 91, 153, 969 P.2d 1209, 1271 (1998)

(some alterations in Roxas).

The AOAO Motion also seeks a ruling that Plaintiffs

are barred from relying on a conversion theory of damages at

trial.  Based on the analysis, *supra*, it is not necessary to

address Plaintiffs' alternate damages theory based on

conversion.  However, this Court notes that the AOAO had notice

that Plaintiffs' wrongful foreclosure claim was based, in part,

on a conversion theory.  See Third Amended Complaint at ¶ 34.

39

Finally, although the Chow Motion focuses on the portion of Plaintiffs' actual damages related to the value of the Unit, this Court notes that emotional distress damages are also available as part of actual damages under the FDCPA.  See, e.g., McCollough v. Johnson, Rodenburg & Lauinger, LLC, 637 F.3d 939, 957–58 (9th Cir. 2011) (holding there was sufficient evidence to support the jury's award of $250,000 in actual damages, based on the plaintiff's testimony and that of his examining psychologist).  However, in considering whether the plaintiff is entitled to emotional distress damages (and, if so, how much), the court must "consider[] the frequency and persistence of noncompliance by Defendants, the nature of such noncompliance, and the extent to which such noncompliance was intentional."  Slater v. PRA Recovery, Civil No. 12-00290 HG-RLP, 2012 WL 5269400, at *6 (D. Hawai`i Sept. 21, 2012) (citing 15 U.S.C. § 1692k(b)), report and recommendation adopted, 2012 WL 5269390 (Oct. 22, 2012).

The Court raises these issues solely to provide guidance to the parties.  The Court makes no findings or conclusions as to whether or not Plaintiffs would be entitled to interest or conversion damages if they prevail on Count I, or emotional distress damages if they prevail on Count II.  The Court notes that the Motions did not present any issues related to damages for Count V.

## CONCLUSION

On the basis of the foregoing, Chow's Motion for Summary Judgment Regarding the Measure of Damages Under the Fair Debt Collection Practices Claim in Count II of the Third Amended Complaint [Dkt. 88] and the AOAO's Motion for Partial Summary Judgment Limiting Plaintiffs' Measure of Damages Arising out of Their Claim for Wrongful Foreclosure, both of which were filed February 6, 2019, are HEREBY GRANTED IN PART AND DENIED IN PART. The Motions are GRANTED insofar as Plaintiffs have conceded that, if they prevail on their wrongful foreclosure claim and elect the damages remedy, they would not be entitled to recover lost rental value as part of their damages. Further, in that instance, Plaintiffs would also be precluded from including lost rental value in their damages for their FDCPA claim. The Motions are DENIED in all other respects.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAI`I, May 3, 2019.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

RUDY AKONI GALIMA, ET AL. VS. AOAO OF PALM COURT, ET AL; CV 16-00023 LEK-RT; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT REGARDING DAMAGES