UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

| | |
|---|---|
| RUDY AKONI GALIMA, ROXANA BEATRIZ GALIMA,<br><br>           Plaintiffs,<br><br>   vs.<br><br>ASSOCIATION OF APARTMENT OWNERS OF PALM COURT, BY AND THROUGH ITS BOARD OF DIRECTORS; DOE DEFENDANTS 1-10, BRYSON CHOW,<br><br>           Defendants. | CIV. NO. 16-00023 LEK-RT |

## ORDER DENYING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

This matter arises out of the foreclosure of

Plaintiffs Rudy Akoni Galima and Roxana Beatriz Galima's

("Plaintiffs") condominium apartment by Defendant Association of

Apartment Owners of Palm Court's ("AOAO") pursuant to the

nonjudicial foreclosure procedure available at that time within

Chapter 667, Part I of the Hawai`i Revised Statutes.[1]  On

December 31, 2019, partial summary judgment was granted in favor

---

[1] Unless otherwise specified, all references to
"Chapter 667, Part I" in this case refer to the versions of Haw.
Rev. Stat. §§ 667-5 to 667-10 in effect at the time of the
nonjudicial foreclosure on Plaintiffs' condominium unit.  See,
e.g., Galima v. Ass'n of Apartment Owners of Palm Court,
CIVIL 16-00023 LEK-KSC, 2017 WL 1240181, at *2 & n.3 (D. Hawai`i
Mar. 30, 2017) ("3/30/17 Order").  Sections 667-5, 667-5.7,
667-6, 667-7, and 667-8, which were in effect in 2010, were
repealed in 2012.  2012 Haw. Sess. Laws Act 182, §§ 50-54 at
684.

of Plaintiffs on their wrongful foreclosure claim because the
AOAO did not have an agreed upon power of sale provision or
other contractual agreement which authorized it to use
Chapter 667, Part I.  Subsequently, the State of Hawai`i
Legislature passed Senate Bill No. 551 – A Bill for an Act
Relating to Condominiums (which became law on July 10, 2019 and
is known as Act 282), and it states that the legislative intent
in 1999 and in subsequent legislative sessions regarding
nonjudicial foreclosures was that condominium associations
should be able to use the nonjudicial foreclosure process
regardless of whether an agreed upon power of sale existed in
the associations' governing documents.  The current motions
address the effect of Act 282 on Plaintiffs' remaining claims in
this case.[2]

The question raised therefore is:  Does Act 282
require the partial summary judgment as to the wrongful
foreclosure claim entered in favor of Plaintiffs and against the
AOAO and Defendant Bryson Chow ("Chow") to be eviscerated, and
instead require summary judgment to be entered in favor of the

---

[2] The AOAO first raised the issue of the effect of the
passage of Senate Bill 551 in the proceedings related to its
motion for summary judgment regarding damages, but this Court
declined to address the issue because the bill had not yet
become law.  Galima v. Ass'n of Apartment Owners of Palm Court,
CIV. NO. 16-00023 LEK-RT, 2019 WL 1982514, at *2 n.3 (D. Hawai`i
May 3, 2019) ("5/3/19 Order").

AOAO and Chow ("Defendants"), and against Plaintiffs?  It does
not.

**BACKGROUND**

The long and fact-intensive procedural history and
background of this case are set forth at length in previous
court orders and are familiar to the parties.[3]  A brief review of
certain rulings by this Court and the Hawai`i Intermediate Court
of Appeals ("ICA") regarding whether condominium associations
were permitted to use the nonjudicial foreclosure procedure, and
the reactionary enactment of Act 262 is helpful here.

I.  **Court Rulings**

The ruling pertinent to the issues at hand in the
3/30/17 Order regarding Defendants' respective motions to
dismiss is:

> Having examined the relevant statutes, their
> legislative history, and instructive case law
> regarding the foreclosure of mortgages, this
> Court PREDICTS that the Hawai`i Supreme Court
> would reject Defendants' proposed interpretation
> of [Haw. Rev. Stat.] § 514B-146(a) (2010) and
> would agree with Plaintiffs' proposed
> interpretation.  Thus, this Court CONCLUDES that,

---

[3] The relevant factual and procedural background of this
case is set forth in: the December 31, 2018 Order Granting in
Part and Denying in Part: Plaintiffs' Motion for Partial Summary
Judgment; Defendant AOAO's Motion for Summary Judgment; and
Defendant Chow's Motion for Summary Judgment ("12/31/18 Order");
and the May 3, 2019 Order Granting in Part and Denying in Part
Defendants' Motions for Summary Judgment Regarding Damages
("5/3/19 Order").  [Dkt. nos. 173, 246.]

because § 514B-146(a) (2010) required a
condominium association to foreclose upon its
lien "in like manner as a mortgage of real
property," an association could only use the
Chapter 667, Part I foreclosure procedure if it
had an agreement with the condominium owner
providing for a power of sale. . . .

2017 WL 1240181, at *9. The conclusion relied heavily on the

Hawai`i Supreme Court's careful review of pertinent legislative

history:

> The Hawai`i Supreme Court's discussion in
> Hungate [v. Law Office of David B. Rosen] of the
> legislative history behind the 2008 amendments to
> Chapter 667 is instructive.
>
> > [A]mendments to the foreclosure process set
> > forth in HRS chapter 667 Part I were
> > intended to "**expand[] the rights of
> > mortgagors**." Kondaur Capital Corp. v.
> > Matsuyoshi, 136 Hawai`i 227, 239, 361 P.3d
> > 454, 466 (2015) (explaining that amendments
> > to former HRS § 667-5 "added requirements
> > that mortgagees must fulfill in order to
> > accomplish a valid foreclosure sale"
> > resulting in a benefit to mortgagors by
> > "expand[ing] and bolster[ing] the
> > protections to which they are entitled").
>
> > . . . [A] close reading of the
> > **legislative history of the 2008 amendment
> > shows it was enacted to set additional
> > burdens on the *mortgagee* to protect the
> > mortgagor** . . . . The amendment's structure
> > or scheme attempted "to streamline and
> > ensure transparency in the non-judicial
> > foreclosure process *by requiring a
> > foreclosure mortgagee* to provide pertinent
> > information regarding the property to
> > interested parties." S. Stand. Comm. Rep.
> > No. 2108, in 2008 Senate Journal, at 917
> > (emphasis added).

2017 WL 747870, at *9 [(Hawai`i Feb. 27, 2017)[4]]
(italic emphases and some alterations in <u>Hungate</u>)
(bold emphases added); <u>see also</u> <u>id.</u> ("the statute
was amended to benefit the 'party in breach of
the mortgage agreement'" (quoting H. Stand. Comm.
Rep. No. 1192, in 2008 House Journal, at 1450)).
Section 514B-146(a) (2010) – which was in effect
in 2008 when the legislature enacted the 2008
amendments to Chapter 667 – provided that the
foreclosure of a condominium association lien was
to be treated like the foreclosure of a mortgage.
Because the legislature is presumed to have been
aware of that fact when it enacted the 2008
amendments to Chapter 667, the legislature is also
presumed to have intended that the additional
protections provided for mortgagors in the
amendments to Chapter 667 would also be available
to condominium owners subject to condominium
association liens.

<u>Id.</u> at *8 (footnote omitted).

Subsequently, in its 12/31/18 Order, the Court made

clear that the rulings in the 3/30/17 Order regarding the

requirements of § 514B-146(a) (2010) and Chapter 667, Part I

were rulings of law which apply throughout the case, absent an

intervening change in the controlling law.  12/31/18 Order, 2018

WL 6841818, at *8.  Summary judgment was granted in favor of

Plaintiffs as to the elements of their wrongful foreclosure

claim ("Count I") because the AOAO did not have an agreed upon

power of sale provision or other contractual agreement

authorizing it to utilize Chapter 667, Part I, and therefore the

---

[4] The Westlaw version of <u>Hungate</u> cited in the 3/30/17 Order
was later published.  139 Hawai`i 394, 391 P.3d 1.

foreclosure of Plaintiffs' unit pursuant to Part I violated

Chapter 667.[5]  Id. at *9.  Summary judgment was also granted in

favor of the AOAO as to Plaintiffs' unfair or deceptive acts or

practices claim ("Count III") and their fraud claim

("Count IV").  Id. at *11-12.  Additional rulings were made

which do not bear directly on the issues raised in the Motions.

          In 2018, the ICA similarly interpreted § 514B-146 and

Chapter 667:

          a power of sale is an authority reserved by or
          granted to a person or entity to dispose of
          another person's vested property interest, for
          the first party's own benefit or the benefit of a
          third party.  See Victoria Ward[, Ltd. v. Zion
          Sec. Corp.], 36 Haw. [614,] 630 [(Terr. 1944)].
          We will not infer that such significant powers
          have been granted over an entire class of
          property in the absence of a clear legislative
          act or, with respect to a particular association
          or property, by express authorization in a
          contract entered into by, or otherwise binding
          on, the affected parties.  HRS chapter 667
          provides for various alternative processes or
          procedures through which a lienholder might
          foreclose on a property, but it does not grant a
          lienholder association with a power of sale over
          a unit owner's property.  Rather, such power of
          sale must otherwise exist in order for the
          association to lawfully avail itself of the
          nonjudicial foreclosure alternative.

_____

          [5] Plaintiffs, however, were not awarded summary judgment on
liability for Count I because there are triable issues of
material fact of material fact as to the AOAO's asserted
defenses.  12/31/18 Order, 2018 WL 6841818, at *9-11.

Sakal v. Ass'n of Apartment Owners of Hawaiian Monarch, 143 Hawai`i 219, 226, 426 P.3d 443, 450 (Ct. App. 2018), *reconsideration denied*, NOS. CAAP-15-0000529 and CAAP-15-0000573, 2018 WL 4483207 (Hawai`i Ct. App. Sept. 19, 2018), *and cert. granted*, SCWC-15-0000529, 2019 WL 245225 (Hawai`i Jan. 17, 2019).[6] The ICA concluded that "§ 514B-146 does not authorize an association to conduct a nonjudicial or power of sale foreclosure other than as provided in HRS chapter 667, which does not authorize a nonjudicial or power of sale foreclosure absent a power of sale." Id. at 228, 426 P.3d at 452. In reaching this conclusion, it noted there was no statutory language in Chapters 667, 514A, or 514B expressly granting a power of sale. Id. at 228 & n.18, 426 P.3d at 452 & n.18. "Nothing in the legislation or legislative history of Hawai`i condominium law supports a conclusion that, at any time, the Legislature enacted or intended to enact a statute granting

---

[6] Sakal is still pending before the Hawai`i Supreme Court and will be decided without oral argument. See Sakal, SCWC-15-0000529, Order Denying Request for Oral Argument & for Judicial Notice, filed 8/6/19 (stating the request for judicial notice of Act 282 was unnecessary). The Hawai`i Supreme Court has allowed the parties in Malabe v. Ass'n of Apartment Owners of Executive Center ex rel. Board of Directors to address issues related to Act 282. Malabe, SCWC-17-0000145, Order, filed 7/16/19 (ordering the parties to file supplemental briefs addressing whether Senate Bill 551 applies to the case). Oral argument was heard on September 19, 2019. Id., Minutes, filed 9/20/19. As of the date of this Order, the supreme court has not issued a decision in either Sakal or Malabe.

powers of sale over all condominiums in the State to their

respective associations." Id. at 228 n.18, 426 P.3d at 452

n.18.

## II.  Act 282

The State of Hawai`i Legislature passed Senate Bill

No. 551 — A Bill for an Act Relating to Condominiums - during

the 2019 regular session, it became law on July 10, 2019, and is

known as Act 282.  2019 Haw. Sess. Laws Act 282, at 779-83; 2019

House Journal, at 735 (Governor's Message re Act 282).  In its

description of Act 282's purpose, the legislature states, in

pertinent part:

> the intermediate court of appeals in Sakal v.
> Association of Apartment Owners of Hawaiian
> Monarch, 143 Haw. 219, 426 P.3d 443 (2018), held
> that the legislature intended that associations
> can only conduct nonjudicial foreclosures if they
> have specific authority to conduct nonjudicial
> foreclosures in their declaration or bylaws or in
> an agreement with the owner being foreclosed
> upon.
>
> The legislative history indicates this was
> not the intent of the legislature in 1999, nor in
> legislatures that have made subsequent
> amendments.  Therefore, this Act confirms the
> legislative intent that **condominium associations
> should be able to use nonjudicial foreclosure to
> collect delinquencies regardless of the presence
> or absence of power of sale language in an
> association's governing documents**.

Id., § 1 at 780 (emphasis added).  A similar statement is

contained in the legislature's findings.  Id., § 1 at 779.

Act 282 amended § 514B-146(a) as follows:

The lien of the association may be foreclosed by action or by nonjudicial or power of sale foreclosure [procedures set forth in chapter 667], regardless of the presence or absence of power of sale language in an association's governing documents, by the managing agent or board, acting on behalf of the association and in the name of the association; provided that no association may exercise the nonjudicial or power of sale remedies provided in chapter 667 to foreclose a lien against any unit that arises solely from fines, penalties, legal fees, or late fees, and the foreclosure of any such lien shall be filed in court pursuant to part IA of chapter 667.

2019 Haw. Sess. Laws Act 282, § 3 at 782.  In addition, it amended § 667-1 as follows:

""Power of sale" or "power of sale foreclosure" means a nonjudicial foreclosure when [the]:

(1)  The mortgage contains, authorizes, permits, or provides for a power of sale, a power of sale foreclosure, a power of sale remedy, or a nonjudicial foreclosure[.]; or

(2)  For the purposes of part VI, an association enforces its claim of an association lien, regardless of whether the association documents provide for a power of sale, a power of sale foreclosure, a power of sale remedy, or a nonjudicial foreclosure."

2019 Haw. Sess. Laws Act 282, § 4 at 782.  Act 282 also states:

Sections 3 and 4 of this Act shall be applied retroactively to any case, action, proceeding, or claim arising out of a nonjudicial foreclosure under section 667-5 (repealed June 28, 2012), Hawaii Revised Statutes, and parts II and VI of chapter 667, Hawaii Revised Statutes, that arose before the effective date of this Act and in which a final non-appealable judgment has not yet been entered.

<u>Id.</u>, § 5 at 782-83.

<strong>DISCUSSION</strong>

I.  <u>Preliminary Issues</u>

    A.  <u>Reconsideration</u>

         Although the Court directed the parties to address the
effect of Act 282 in the instant motions, they raise additional
arguments seeking dismissal or summary judgment on other
grounds, which have been previously litigated in this case.  For
example, Chow in his motion[7] reiterates his argument that the
plain language of the applicable statutes - in particular, Haw.
Rev. Stat. § 514A-82(b)(13) which incorporates as part of each
condominium's bylaws - authorized condominium associations to
utilize Chapter 667, Part I.[8]  [Mem. in Supp. of Chow Motion at

_____

         [7] Chow filed his Motion for Summary Judgment on October 18,
2019 ("Chow Motion").  [Dkt. no. 266.]  The AOAO's Motion for
Summary Judgment was filed on the same date ("AOAO Motion").
[Dkt. no. 263.]

         [8] For purposes of the motions to dismiss, this Court
concluded that Haw. Rev. Stat. Chapter 514B applied, but it
"note[d] that Haw. Rev. Stat. § 514A-90(a) (2010) was
substantially similar to § 514B-146(a) (2010)."  3/30/17 Order,
2017 WL 1240181, at *3 & n.6.  Thus, § 514A-82(b)(13) was not
addressed.  The 12/31/18 Order also did not address
§ 514A-82(b)(13).  Chow did not seek reconsideration of either
the 3/30/17 Order or the 12/31/18 Order on the ground that this
Court erred by failing to address his § 514A-82(b)(13) argument.
His attempt to litigate that argument again at this stage is an
untimely request for reconsideration.  Moreover, § 514A-
82(b)(13) was addressed, and an argument similar to Chow's was
rejected, in <u>Brown v. Porter McGuire Kiakona & Chow, LLP</u>, CIVIL
                                        (. . . continued)

8-9.]  To the extent that the Motions seek dismissal or summary judgment on any ground besides the effect of Act 282, the Motions are summarily DENIED as untimely attempts to seek reconsideration of this Court's prior orders.  See Local Rule LR60.1 (stating motions for reconsideration based upon "[m]anifest error of law or fact . . . must be filed and served within fourteen (14) days after the court's order is issued").

**B.    Notice to the State of Hawai`i**

As Plaintiffs raise a constitutional challenge to Act 262, Fed. R. Civ. P. 5.1(a) and (b) are controlling here:

>    (a)  Notice by a Party.  A party that **files a pleading, written motion, or other paper drawing into question the constitutionality** of a . . . state statute must promptly:
>
>>    (1)  file a notice of constitutional question stating the question and identifying the paper that raises it, if:
>>
>>>    . . . .
>>>
>>>    (B)  a state statute is questioned and the parties do not include the state, one of its agencies, or one of its officers or employees in an official capacity; and

---

16-00448 LEK-KJM, 2017 WL 3763843, at *3 (D. Hawai`i Aug. 30, 2017)("CV 16-488 8/30/17 Order").  The Galima analysis of Chapter 667, Part I was reaffirmed, despite the § 514A-82(b)(13) argument.  Id. at *7.  Even if it was required to address the § 514A-82(b)(13) argument belatedly raised in this case, this Court would follow the analysis set forth in the CV 16-448 8/30/17 Order.

> (2)  serve the notice and paper on . . . the
> state attorney general if a state statute is
> questioned – either by certified or
> registered mail or by sending it to an
> electronic address designated by the
> attorney general for this purpose.
>
> (b)  Certification by the Court.  The court must,
> under 28 U.S.C. § 2403, certify to the
> appropriate attorney general that a statute has
> been questioned.

(Emphasis added.[9])  These requirements have been satisfied:

Plaintiffs filed a Notice of Constitutional Question and served

it on the State of Hawai`i Attorney General via certified mail

on November 7, 2019; [dkt. no. 274;] and a Certification to the

Attorney General of the State of Hawai`i Regarding a

Constitutional Challenge to a State Act was filed on January 31,

2020, [dkt. no. 279].  The certification was served on the

attorney general via certified mail.

    The attorney general has declined to intervene in this

action.  <u>See</u> Fed. R. Civ. P. 5.1(c) ("Unless the court sets a

later time, the attorney general may intervene within 60 days

after the notice is filed or after the court certifies the

challenge, **whichever is earlier**." (emphasis added)).

---

    [9] This Court ruled that none of Plaintiffs' filings prior to
Defendants' filing of the instant Motions triggered the
requirements of Rule 5.1(a).  [Minute Order, filed 8/6/19 (dkt.
no. 262), at 2.]

## C.  **Standing**

The AOAO contends Plaintiffs do not have standing to challenge the constitutionality of Act 282 because Plaintiffs have not suffered a concrete, particularized injury because of Act 282, which has yet to be applied to them.  The United States Supreme Court has stated:

> Our cases have established that the "irreducible constitutional minimum" of standing consists of three elements.  Lujan [v. Defenders of Wildlife], 504 U.S.[ 555,] 560, 112 S. Ct. 2130 [(1992)].  The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.  Id., at 560–561, 112 S. Ct. 2130; Friends of the Earth, Inc. [v. Laidlaw Envt'l Servs. (TOC), Inc.], 528 U.S. [167,] 180–181, 120 S. Ct. 693 [(2000)].  The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements.  FW/PBS, Inc. v. Dallas, 493 U.S. 215, 231, 110 S. Ct. 596, 107 L. Ed. 2d 603 (1990).[10] . . .

Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016).  An "injury in fact" is "the first and foremost" standing requirement.  Id. (brackets, citation, and internal quotation marks omitted).  "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or

---

[10] FW/PBS was overruled on other grounds by City of Littleton v. Z.J. Gifts D-4, LLC, 541 U.S. 774 (2004).

imminent, not conjectural or hypothetical.'" Id. at 1548

(quoting Lujan, 504 U.S., at 560, 112 S. Ct. 2130).

Plaintiffs face an imminent injury that is neither

conjectural nor hypothetical. They previously established, as a

matter of law, the elements of their wrongful foreclosure claim.

See 12/31/18 Order, 2018 WL 6841818, at *9. The AOAO and Chow

now contend Act 282 requires summary judgment entered against

Plaintiffs as to that same claim. If these arguments are

accepted, Plaintiffs lose the possibility of recovery on

Count I. A sufficiently imminent injury therefore exists to

confer standing upon Plaintiffs to challenge the validity of

Act 282.[11]

    D.   **Ripeness**

Related to the issue of standing is the issue of

whether the validity of Act 282 is ripe for adjudication.

> "While standing is primarily concerned with
> who is a proper party to litigate a particular
> matter, ripeness addresses when litigation may
> occur." Lee v. Oregon, 107 F.3d 1382, 1387 (9th
> Cir. 1997). "[I]n many cases, ripeness coincides
> squarely with standing's injury in fact prong."
> Thomas v. Anchorage Equal Rights Comm'n, 220 F.3d
> 1134, 1138 (9th Cir. 2000) (en banc). In fact,
> the ripeness inquiry is often "characterized as

---

[11] This does not constitute a ruling that Plaintiffs have
standing to assert an **affirmative claim** for relief arising from
Act 282. This Court makes no findings or conclusions regarding
whether Plaintiffs would have standing to assert an affirmative
claim.

standing on a timeline." Id. "A claim is not
ripe for adjudication if it rests upon
'contingent future events that may not occur as
anticipated, or indeed may not occur at all.'"
Texas v. United States, 523 U.S. 296, 300, 118 S.
Ct. 1257, 140 L. Ed. 2d 406 (1998) (quoting
Thomas v. Union Carbide Agric. Prods. Co., 473
U.S. 568, 580–81, 105 S. Ct. 3325, 87 L. Ed. 2d
409 (1985)).

Hawai`i v. Trump, 241 F. Supp. 3d 1119, 1133 (D. Hawai`i 2017)

(alteration in Trump). As noted within the standing analysis,

if Defendants' interpretation of Act 282 is accepted, the loss

to be suffered by Plaintiffs is not merely anticipated or

contingent but would require granting summary judgment in

Defendants' favor as to Count I, even though Plaintiffs were

previously granted partial summary judgment on that claim. The

issue of Act 282's validity is therefore ripe for adjudication.

## II.  Act 282's Effect on this Case

The portions of Act 282 most relevant to the instant

case are: § 1, the legislature's statement of its findings and

the purposes for Act 282; § 3 and § 4, the relevant statutory

amendments; and § 5, the provision that makes § 3 and § 4

retroactive. Turning first to § 1, because federal question

jurisdiction exists over Plaintiffs' FDCPA claim and

supplemental jurisdiction exists over their state law claims,

Hawai`i substantive law applies to the state law claims. See

3/30/17 Order, 2017 WL 1240181, at *5. Decisions by the Hawai`i

Supreme Court bind interpretation of state statutes and

15

legislative acts at issue in this case.  Id.  However, no
controlling decision currently exists and therefore this Court
must predict how the Hawai`i Supreme Court would decide the
issue of whether Act 282 applies in actions asserting wrongful
foreclosure under the 2010 version of Chapter 667, Part I.  See
id. (some citations omitted) (citing Trishan Air, Inc. v. Fed.
Ins. Co., 635 F.3d 422, 427 (9th Cir. 2011); Burlington Ins. Co.
v. Oceanic Design & Constr., Inc., 383 F.3d 940, 944 (9th Cir.
2004)).

    A.    Section 1

         In Act 282, § 1, the legislature found "that
condominium associations, since 1999, have been authorized to
conduct nonjudicial foreclosures regardless of the presence or
absence of power of sale language in an association's governing
documents."  2019 Haw. Sess. Laws Act 282, § 1 at 779; see also
supra Background Section II (quoting Act 282, § 1 at 780).  As
evidence of the legislative intent in 1999, and in relevant
years thereafter, Act 282 cited: Haw. Rev. Stat. § 667-40, which
was enacted in 1998; 1999 Haw. Sess. Laws Act 236, § 1 at 723
(legislative findings); Haw. Rev. Stat. §§ 514A-90 and 514-82,
which were enacted in 1999 and repealed as of January 1, 2019;
the pre-2012 Haw. Rev. Stat. § 667-5; Haw. Sess. Laws Act 164 at
755-816 (recodifying Chapter 514A); the Real Estate Commission's
Final Report to the Legislature – Recodification of

                              16

Chapter 514A, Hawaii Revised Statutes (Condominium Property

Regime), dated December 31, 2003;[12] and 2012 Haw. Sess. Laws

Act 182, § 3.2 at 636-45 (enacting Chapter 667, Part VI).

These sources were available to and examined by this

Court in determining whether Defendants were authorized to

utilize Chapter 667, Part I to foreclose upon Plaintiffs' unit

in 2010, and whether the defendants in CV 16-448 were authorized

to utilize Part I in 2011.  See, e.g., 3/30/17 Order, 2017 WL

1240181, at *3-9 (discussing whether Defendants were authorized

to utilize Part I, including § 667-5 (2010), or were required to

utilize Chapter 667, Part II); CV 16-448 8/30/17 Order, 2017 WL

3763843, at *4 (discussing the legislative history of

Chapters 514A and 514B, including 1999 Haw. Sess. Laws Act

236).[13]  After careful examination, it concluded that "the

statutes in question (as interpreted by the Hawai`i Supreme

---

[12] The Real Estate Commission's report is available at
http://files.hawaii.gov/dcca/reb/condo_ed/condo_recod/
condo_workingrecod/recod_final/2003-recod-report.pdf.

[13] At the time of 2017 WL 3763843, Benita J. Brown ("Brown")
and Craig and Kristine Connelly ("the Connellys") were all
plaintiffs in CV 16-448, which had two association defendants
and two law firm defendants.  However, Brown's and the
Connellys' claims were later severed, and Brown's claims against
the relevant defendants are now in CV 17-00554 LEK-RT.  See
CV 16-448, order, filed 11/3/17 (dkt. no. 106).  Brown's
condominium unit and the Connellys' condominium unit were each
foreclosed upon in 2011.  CV 16-448 8/30/17 Order, 2017 WL
3763843, at *1-2.

Court) [we]re unambiguous; and a plain language reading of the statutes" dictated the finding that condominium associations are not authorized to conduct nonjudicial foreclosures without a power of sale. 3/30/17 Order, 2017 WL 1240181, at *7. Similarly, in CV 16-448, it concluded that the relationship between § 514A-82(b)(13) and Chapter 667 (2011) was "clear from a plain language reading." CV 16-448 8/30/17 Order, 2017 WL 3763843, at *4. Defendants' argument regarding the legislative history of § 514A-82(b)(13) and § 514A-90(a)/§ 514B-146(a) was therefore contrary to the plain language of those statutes. Id. at *7.

The ICA meticulously considered the legislative history cited in Act 282, § 1 as well. See, e.g., Sakal, 143 Hawai`i at 225-28, 426 P.3d at 449-52 (discussing, inter alia, 1999 Haw. Sess. Laws Act 226 and 2012 Haw. Sess. Laws Act 182, § 3.2); Malabe v. Ass'n of Apartment Owners of Exec. Ctr. ex rel. Bd. of Dirs., NO. CAAP-17-0000145, 2018 WL 6258564, at *2 (Hawai`i Ct. App. Nov. 29, 2018) (citing the Sakal discussion of "the plain language and legislative intent of both HRS § 667-5 and § 514B-146(a)"), cert. granted, SCWC-17-0000145, 2019 WL 2060931 (Hawai`i May 9, 2019), and, 2019 WL 2225392 (Hawai`i May 23, 2019). The original statutory language and acts are completely silent as to any legislative intent regarding authorizing condominium associations to use the nonjudicial

18

foreclosure process.  In short, the legislative history cited in

Act 282, § 1 is made from whole cloth and created many years

after the fact.

Section 1 is thus "subsequent legislative history" and

is not necessarily regarded with the same authority as the

original statutory language and acts:

> With regard to the use of subsequent
> legislation in interpreting statutes, "[t]here
> are no principles of construction which prevent
> the utilization by the courts of subsequent
> enactments or amendments as an aid in arriving at
> the correct meaning of a prior statute, and it is
> very common for a court, in construing a statute,
> to refer to subsequent legislation as impliedly
> confirming the view which the court has decided
> to adopt.["]  Gomes v. Campbell, 37 Haw. 252, 257
> (Haw. Terr. 1945) (quoting 50 Am. Jur. Statutes,
> § 337); see also Hawaii Providers Network v. AIG
> Ins. Co., 105 Hawai`i 362, 370 n.19, 98 P.3d 233,
> 241 n.19 (2004) ("It is important to note that
> while arguments predicated upon subsequent
> legislative actions must be weighed with extreme
> care, they should not be rejected out of hand as
> a source that a court may consider in the search
> for legislative intent.") (citation and internal
> quotation marks omitted); State v. Dudoit, 90
> Hawai`i 262, 268 n.3, 978 P.2d 700, 706 n.3
> (1999) ("This court employs **subsequent**
> legislative history only to **confirm** its
> interpretation of an earlier statutory
> provision.") (citation and internal quotation
> marks omitted).[14]

---

[14] This quote from Dudoit is taken from Macabio v. TIG
Insurance Co., 87 Hawai`i 307, 317, 955 P.2d 100, 110 (1998),
indicating that the Hawai`i Supreme Court's statement regarding
the use of subsequent legislative history applies to both
criminal and civil statutes.  See Dudoit, 90 Hawai`i at 268 n.3,
978 P.2d at 706 n.3.

State v. Dunbar, 139 Hawai`i 9, 20, 383 P.3d 112, 123 (Ct. App. 2016) (emphases and some alterations in Dunbar).  However, the quoted statement in Dudoit was immediately followed by the statement: "The legislature cannot change the intent behind a statute through subsequent **amendments that do not have retroactive effect**."  Dudoit, 90 Hawai`i at 268 n.3, 978 P.2d at 706 n.3.

　　　　Legislative override of a prior judicial construction of a statute can be perilous.  One justice of the Hawai`i Supreme Court recognized that "[a] legal environment in which any subsequent legislative statement can retroactively override the prior construction of a statute by this court is . . . problematic."[15]  State v. Brantley, 99 Hawai`i 463, 483, 56 P.3d 1252, 1272 (2002) (Acoba, J., dissenting).  However, the supreme court has recognized that the legislature can do so in the context of a valid retroactive amendment to the statute. Whether this Court can consider the subsequent legislative history in Act 282, § 1 depends upon validity of the

_____

[15] Neither this Court's rulings regarding the relevant statutes in this case nor the ICA's holdings in Sakal constitute rulings by the Hawai`i Supreme Court.  However, similar policy concerns exist when the legislature attempts to override judicial rulings by creating subsequent legislative history that is not supported by either the plain language of the relevant statutes or the statutes' contemporaneous legislative history.

legislature's attempt to make the amendments to § 667-1 and
§ 514B-146(a) retroactive to the 2010 statutes relevant to the
instant case.

B.    **Sections 3 Through 5**

Act 282, § 3 amended the version of § 514B-146(a) that
was in effect when the act was passed; § 4 did the same for
§ 667-1; and § 5 made those amendments retroactive.  The
legislature's decision to amend the existing versions of § 514B-
146(a) and § 667-1 is not at issue in this case, nor is the
legislative decision to apply the amendments retroactively to
prior versions of § 514B-146(a) and § 667-1 which were similar
with the versions in effect when Act 282 was passed.  However,
critical distinctions exist between the statutes that were in
effect at the time of the foreclosure on Plaintiffs' unit and
the versions of § 514B-146(a) and § 667-1 amended by Act 282.

1.    **Amendment of § 667-1**

First, Chapter 667, Part I (2010) does not contain a
definitions section comparable to the current § 667-1.  No
definition of "'[p]ower of sale' or 'power of sale foreclosure'"
exists in Part I (2010), which Act 282 amends.  See generally
Haw. Rev. Stat. §§ 667-5 to 667-10 (2010).  The only definition
of "'[p]ower of sale' or 'power of sale foreclosure'" appearing
in the 2010 version of Chapter 667 is in **Part II**.  See Haw. Rev.
Stat. § 667-21 (2010) (stating, *inter alia*, "'[p]ower of sale'

or 'power of sale foreclosure' means a nonjudicial foreclosure under this part when the mortgage contains, authorizes, permits, or provides for a power of sale, a power of sale foreclosure, a power of sale remedy, or a nonjudicial foreclosure").

The current version of § 667-1 contains multiple definitions - including that of "'[a]ssessment" and "'[m]ortgage.'"  However, Act 282, § 4 amends only § 667-1's definition of "'[p]ower of sale' or 'power' of sale foreclosure.'"  No other definition is affected.  This indicates that the Act 282, § 4 definition of "'[p]ower of sale' or 'power' of sale foreclosure'" does not replace all prior versions of § 667-1 in their entirety.  Instead, the Act 282, § 4 definition merely replaces any previous definition of these specific terms (within the definition section).  This means that the definitional replacement is effective for the version of § 667-1 existing in 2019 (that is, at the time Act 282 was enacted) as well as for all previous versions of § 667-1, but only those versions up to 2012, when the definitions section was first enacted.  See 2012 Haw. Sess. Laws Act 182, § 3.1 at 635- 36.[16]  Said another way, section 4 only replaces definitions

_____

[16] Act 182 redesignated the former § 667-1 as Haw. Rev. Stat. § 667-1.5 and added the current version of § 667-1.  2012 Haw. Sess. Laws Act 182, § 3.1 at 635-36; id., § 3.5 at 648. From 2012 to the present, § 667-1.5 and the other statutory
(. . . continued)

contained in versions of § 667-1 existing from 2012 to 2019 but cannot insert a definition where none previously existed.

Section 667-1 (2010), which was in effect at the time of the foreclosure on Plaintiffs' unit, is devoid of any definitional section.  It merely states: "The circuit court may assess the amount due upon a mortgage, whether of real or personal property, without the intervention of a jury, and shall render judgment for the amount awarded, and the foreclosure of the mortgage.  Execution may be issued on the judgment, as ordered by the court."  Because section 667-1 (2010) addresses a subject matter unrelated to the definition adopted in Act 282, § 4, § 667-1 (2010), it cannot be altered by Act 282, § 4.  The § 4 amendment to the definition of "'[p]ower of sale' or 'power of sale foreclosure'" does not apply to or affect the original language of § 667-1 (2010).[17]

This Court therefore predicts that the Hawai`i Supreme Court would hold that the amendment to § 667-1 in Act 282, § 4 does not apply to wrongful foreclosure claims challenging foreclosures conducted pursuant to Chapter 667, Part I (2010).

provisions regarding foreclosure by action have been within Chapter 667, Part IA.

[17] In theory, the Act 282, § 4 amended definition could be applied to § 667-21 (2010), which was a definitions section. This is irrelevant because Defendants did not conduct the foreclosure of Plaintiffs' unit pursuant to Chapter 667, Part II (2010).

## 2.   Amendment of § 514B-146(a)

Because the provisions of Act 282 are severable, § 3 may still apply in this case, even though § 4 does not.  See 2019 Haw. Sess. Laws Act 282, § 7 at 783.  This amendment to § 514B-146(a) in Act 282, however, suffers from similar defects to those of § 4.

Unlike § 667-1, § 514B-146 did exist in 2010 and addressed the same subject matter contained in the 2018 version amended by Act 282.  Because Act 282, § 3 restates § 514B-146(a) in its entirety, it appears that the amended version could simply replace the 2010 version of subsection (a).  However, § 514B-146 was amended multiple times between 2010 and 2019. See 2011 Haw. Sess. Laws Act 48, § 14 at 103; 2012 Haw. Sess. Laws Act 182, § 10 at 655-57; 2013 Haw. Sess. Laws Act 196, § 1 at 627-30; 2014 Haw. Sess. Laws Act 235, § 2 at 836-37; 2018 Haw. Sess. Laws Act 195, § 4 at 668-72.  To insert the Act 282, § 3 version of § 514B-146(a) into § 514B-146 (2010) would also incorporate all amendments to § 514B-146(a) adopted in 2012, 2013, 2014, and 2018,[18] even though none of those acts made the amendments to § 514B-146(a) retroactive.

For example, § 514B-146(a) (2010) stated:

---

[18] Act 48 added a new subsection (h) to § 514B-146; it did not amend subsection (a).  2011 Haw. Sess. Laws Act 48, § 14 at 103.

> All sums assessed by the association but unpaid
> for the share of the common expenses chargeable
> to any unit shall constitute a lien on the unit
> with priority over all other liens, except:
>
> > (1) Liens for taxes and assessments lawfully
> > imposed by governmental authority against
> > the unit; and
> >
> > (2) All sums unpaid on any mortgage of
> > record that was recorded prior to the
> > recordation of a notice of a lien by the
> > association, and costs and expenses
> > including attorneys' fees provided in such
> > mortgages.

In contrast, this portion of the current § 514B-146(a) includes a provision stating that, subject to certain exceptions, an association's lien for unpaid assessments expires six years after it is recorded, unless an enforcement proceeding was instituted prior to that date.  See also 2012 Haw. Sess. Laws Act 182, § 10.1 at 655 (adopting the provision regarding the expiration of the lien).  The paragraph of § 514B-146(a) that was amended in Act 282, § 3 also includes the requirement that the foreclosure of a lien "arising solely from fines, penalties, legal fees, or late fees" ("Penalty Lien") must be conducted pursuant to Chapter 667, Part IA.  That requirement cannot apply to § 514B-146(a) (2010) because Part IA did not yet exist.  See 2012 Haw. Sess. Laws Act 182, § 3.5 at 648 (designating as Part IA the portion of Part I that remained after the repeal of §§ 667-5, 667-5.7, 667-6, 667-7, and 667-8).

Although the lien expiration provision and the Penalty Lien provision have nothing to do with the issues in this case, these differences serve to illustrate how the statutory schemes of the current § 514B-146(a) and § 514B-146(a) (2010) are significantly different from one another. Moreover, the "nonjudicial or power of sale foreclosure" processes referred to in the current version of § 514B-146(a) are the processes described in in Haw. Rev. Stat. Chapter 667, Part II and Part VI. See Haw. Rev. Stat. §§ 667-21 to 667-41, 667-91 to 667-104. Neither apply here. Defendants did not conduct the foreclosure of Plaintiffs' unit pursuant to Part II, and Part VI was not enacted until 2012 (or two years after the foreclosure in this case). See 2012 Haw. Sess. Laws Act 182, § 3.2 at 636-45.

The only other nonjudicial or power of sale foreclosure existing in 2010 was Chapter 667, Part I, the relevant portions of which were repealed in 2012. See 2012 Haw. Sess. Laws Act 182, §§ 50-54 at 684. Act 282, § 3 does not expressly refer to Chapter 667, Part I, as it existed in 2010 nor does it expressly state that it revives the repealed statutes. If the current § 514B-146(a) language is inserted into § 514B-146(a) (2010), it would impliedly revive statutes previously repealed by prior legislatures. In other words, the legislature in 2012 revoked relevant portions of Chapter 667,

Part I and the current § 514B-146(a) cannot (without explicit intent and language) raise § 514B-146(a)(2010) fully from the dead.

It is important to note what and why portions of Chapter 667, Part I were revoked in 2012. The expiration of association liens, the limitation of Penalty Liens, and the adoption of a power of sale foreclosure process designed specifically for owners' associations were all recommendations made by the mortgage foreclosure task force established by the legislature in 2010 ("Task Force").[19] See Legislative Reference Bureau, Final Report of the Mortgage Foreclosure Task Force to the Legislature for the Regular Session of 2012, In Accordance with Act 162, Session Laws of Hawaii 2010 (December 2011) ("Final Task Force Report") at 30 (recommending the addition of what became Chapter 667, Part VI); id. 48 (recommending amendments to Haw. Rev. Stat. § 514A-90 to, inter alia, place time limits on liens and prohibiting Penalty Liens); id. at 51 (recommending parallel amendments to § 514B-146). Act 182's purpose was "to implement the recommendations of the mortgage foreclosure task force submitted to the legislature for the regular session of 2012, and other best practices to address

---

[19] Act 182 summarizes the establishment of the Task Force and its functions. 2012 Haw. Sess. Laws Act 182, § 1 at 630.

mortgage foreclosures and related issues." 2012 Haw. Sess. Laws Act 182, § 1 at 630. In recommending and enacting what became Chapter 667, Part VI, the Task Force and the legislature recognized that, while a nonjudicial method to foreclose upon association liens was necessary, so were limitations to protect the consumers' interests, namely the homeowners/association members whose units were being foreclosed. See Haw. Rev. Stat. § 667-104 (prohibiting certain conduct in the context of association lien foreclosure); Final Task Force Report at 47 (recommending the enactment of what became § 667-104). In other words, consumer protection for homeowners was paramount. The legislature found that insufficient protections for homeowners existed when associations conducted foreclosures under the version of Chapter 667, Part I in effect prior to Act 182.

Inserting the current § 514B-146(a) into § 514B-146(a) (2010) would revive the Part I process for associations without the limitations and homeowner protections enacted by legislatures in 2012 and in subsequent years. This would be an illogical and absurd result. Hawai`i statutes are not be interpreted in such a manner. 3/30/17 Order, 2017 WL 1240181, at *7 n.12 ("The Hawaii Supreme Court has recognized that state statutes should be interpreted in a manner that avoids absurd, contradictory, illogical, and inconsistent results." (some citations omitted) (citing Seki ex rel. Louie v. Haw. Gov't

Emps. Ass'n, AFSCME Local No. 152, AFL–CIO, 328 P.3d 394, 409–10 (Haw. 2014))).  This same principle must be applied to Act 282.

This Court therefore predicts that the Hawai`i Supreme Court would hold that the amendment to § 514B-146(a) in Act 282, § 3 does not apply to wrongful foreclosure claims challenging foreclosures conducted pursuant to Chapter 667, Part I (2010).

### 3.  Alternate Interpretation

It is not necessary to adopt Defendants' illogical interpretation of Act 282, §§ 3, 4, and 5.  Another interpretation exists which is logical and gives effect to all sections of the act.  Cf. Ass'n of Condo. Homeowners of Tropics at Waikele ex rel. Bd. of Dirs. v. Sakuma, 131 Hawai`i 254, 256, 318 P.3d 94, 96 (2013) ("Courts are bound to give effect to all parts of a statute, and that no clause, sentence, or word shall be construed as superfluous, void, or insignificant if a construction can be legitimately found which will give force to and preserve all words of the statute." (brackets, quotation marks, and citation omitted)).  Act 282, §§ 3 and 4 can be applied to the current versions of § 667-1 and § 514B-146(a). The retroactivity provision in § 5 can be applied in a logical manner to apply the §§ 3 and 4 amendments to earlier versions of § 667-1 and § 514B-146(a) that are substantially similar with the current versions.

In the case at hand, the issue is whether § 667-1 (2010) - or another comparable provision in Chapter 667, Part I (2010) - and § 514B-146(a) (2010) are substantially similar with the current versions of § 667-1 and § 514B-146(a). They are not.

A logical interpretation of Act 282, §§ 3, 4, and 5 is possible (that is, that they apply only to earlier versions of § 667-1 and § 514B-146(a) substantially similar with the current versions). Therefore, the illogical interpretation advanced by Defendants in the instant Motions (that is, that they apply to § 667-1 (2010) - or another comparable provision in Chapter 667, Part I (2010) - and § 514B-146(a) (2010)) must be and is rejected.

### 4. <u>Separation of Powers</u>

Plaintiffs' primary constitutional argument is that Act 282 violates the separation of powers doctrine established in the United States Constitution and the Hawai`i Constitution. It does not. No final court judgment existed at the time Act 282 was enacted.

Article III, § 1 of the Hawai`i Constitution provides that the "legislative power of the State shall be vested in a legislature, which shall consist of two houses, a senate and a house of representatives. Such power shall extend to all rightful subjects of legislation not inconsistent with this

30

constitution or the Constitution of the United States."

Article I, § 1 of the United States Constitution is comparable.

"As a general rule, the role of the court in supervising the

activity of the legislature is confined to seeing that the

actions of the legislature do not violate any constitutional

provision." Schwab v. Ariyoshi, 58 Haw. 25, 37, 564 P.2d 135,

143 (1977). The Hawai`i Supreme Court has stated:

> We recognize that "[t]he separation of
> powers doctrine is not expressly set forth in any
> single constitutional provision, but like the
> federal government, Hawaii's government is one in
> which the sovereign power is divided and
> allocated among three co-equal branches." Hawaii
> Insurers Council v. Lingle, 120 Hawai`i 51, 69,
> 201 P.3d 564, 582 (2008) (internal quotation
> marks and citation omitted). The separation of
> powers doctrine is intended "to preclude a
> commingling of essentially different powers of
> government in the same hands and thereby prevent
> a situation where one department would be
> controlled by, or subjected, directly or
> indirectly, to, the coercive influence of either
> of the other departments." Pray v. Judicial
> Selection Comm'n of State, 75 Haw. 333, 353, 861
> P.2d 723, 732 (1993) (internal quotation marks
> and citation omitted).

Alakai Na Keiki, Inc. v. Matayoshi, 127 Hawai`i 263, 275, 277

P.3d 988, 1000 (2012) (alteration in Alakai).

The Hawai`i courts interpret the Hawai`i Constitution

in a manner that provides greater protections than that required

by corresponding provisions in the United States Constitution.

See, e.g., Pele Def. Fund v. Paty, 73 Haw. 578, 601, 837 P.2d

1247, 1262 (1992) (citing State v. Kam, 69 Haw. 483, 748 P.2d

372 (1988); <u>Hawaii Housing Authority v. Lyman</u>, 68 Haw. 55, 704

P.2d 888 (1985); <u>State v. Tanaka</u>, 67 Haw. 658, 701 P.2d 1274

(1985); <u>State v. Russo</u>, 67 Haw. 126, 681 P.2d 553 (1984), *appeal

after remand*, 69 Haw. 72, 734 P.2d 156 (1987)).[20]  There does not

appear to be any Hawai`i case law interpreting the separation of

powers doctrine in a more expansive manner than the doctrine is

interpreted under federal law, therefore it is assumed that

Hawai`i law regarding the separation of powers doctrine is

consistent with federal law.

The United States Supreme Court has identified the

following "types of legislation that require federal courts to

exercise the judicial power in a manner that Article III

forbids": 1) statutes that "prescribe rules of decision to the

Judicial Department of the government in cases pending before

it," although this is permissible when "Congress amends

applicable law"; 2) statutes that "vest review of the decisions

of Article III courts in officials of the Executive Branch";[21]

and 3) statutes "retroactively commanding the federal courts to

---

[20] <u>Kam</u> was abrogated in part on other grounds by <u>Tax
Foundation of Hawai`i v. State</u>, 144 Hawai`i 175, 192 & n.22, 439
P.3d 127, 144 & n.22 (2019), *reconsideration denied*, SCAP-
16-0000462, 2019 WL 1858284 (Hawai`i Apr. 25, 2019).

[21] This category also includes statutes allowing "direct
review of a judicial decision by officials of the Legislative
. . . Branch[]."  <u>Miller v. French</u>, 530 U.S. 327, 343 (2000).

32

reopen final judgments." Plaut v. Spendthrift Farm, Inc., 514
U.S. 211, 218 (1995) (brackets, citations, and internal
quotation marks omitted).  The first category does not apply in
this case because Act 282 amends currently applicable Hawai`i
law.  The second category does not apply because Act 282 does
not establish any mechanism for legislative officials or
executive officials to review judicial decisions.  Thus, only
the third category is applicable in this case.

Rulings in this case were made regarding Chapter 667,
Part I and § 514B-146 (2010) which resulted in a grant of
summary judgment in favor of Plaintiffs on their wrongful
foreclosure claim.  If Act 282 was to be interpreted in the
manner advocated by Defendants, these rulings would have to be
reopened.  However, these rulings are not final judgments.  See
Miller, 530 U.S. at 344.

A legislative act amending currently applicable law
and making the amendments retroactive is not unique.  Act 282,
however, includes the curiously unusual feature of retroactive
application of the amendments essentially to revive a statutory
scheme repealed seven years before Act 282 was passed.  This is
the legislature's unabashed effort to undo rulings by the ICA,
which are consistent with the rulings in this federal case.
However, the separation of powers doctrine allows the

legislature to do so until those rulings become part of a final judgment.  No final judgment exists yet in any of these cases.

This Court predicts that the Hawai`i Supreme Court would hold that the legislature's attempt in Act 282 to circumvent judicial decisions which are not yet final judgments in wrongful foreclosure litigation challenging foreclosures conducted pursuant to Chapter 667, Part I (2010) does not violate the separation of powers doctrine and thus is not constitutionally barred.

### 5.   Other Constitutional Arguments

Plaintiffs also argue Act 282 is unconstitutional because: it violates their rights under the Contracts Clause of the United States Constitution; it violates the Due Process Clause of the United States Constitution and the Hawai`i Constitution; it violates the Equal Protection Clause of the United States Constitution and the Hawai`i Constitution; and enforcing Act 282 would result in a taking, in violation of the United States Constitution and the Hawai`i Constitution.

### a.   Contacts Clause

The Contracts Clause restricts the power of States to disrupt contractual arrangements.  It provides that "[n]o state shall . . . pass any . . . Law impairing the Obligation of Contracts." U.S. Const., Art. I, § 10, cl. 1. . . .  [T]he Clause applies to any kind of contract.  See Allied Structural Steel Co. v. Spannaus, 438 U.S. 234, 244–245, n.16, 98 S. Ct. 2716, 57 L. Ed. 2d 727 (1978). . . .

At the same time, not all laws affecting
pre-existing contracts violate the Clause.  See
El Paso v. Simmons, 379 U.S. 497, 506–507, 85 S.
Ct. 577, 13 L. Ed. 2d 446 (1965).  To determine
when such a law crosses the constitutional line,
this Court has long applied a two-step test.  The
threshold issue is whether the state law has
"operated as a substantial impairment of a
contractual relationship."  Allied Structural
Steel Co., 438 U.S., at 244, 98 S. Ct. 2716.  In
answering that question, the Court has considered
the extent to which the law undermines the
contractual bargain, interferes with a party's
reasonable expectations, and prevents the party
from safeguarding or reinstating his rights.  See
id., at 246, 98 S. Ct. 2716; El Paso, 379 U.S.,
at 514–515, 85 S. Ct. 577; Texaco, Inc. v. Short,
454 U.S. 516, 531, 102 S. Ct. 781, 70 L. Ed. 2d
738 (1982).  If such factors show a substantial
impairment, the inquiry turns to the means and
ends of the legislation.  In particular, the
Court has asked whether the state law is drawn in
an "appropriate" and "reasonable" way to advance
"a significant and legitimate public purpose."
Energy Reserves Group, Inc. v. Kansas Power &
Light Co., 459 U.S. 400, 411–412, 103 S. Ct. 697,
74 L. Ed. 2d 569 (1983).

Sveen v. Melin, 138 S. Ct. 1815, 1821–22 (2018) (some

alterations in Sveen).

### 1)    **First Step**

The first step "has three components: whether there is

a contractual relationship, whether a change in law impairs that

contractual relationship, and whether the impairment is

substantial."  Gen. Motors Corp. v. Romein, 503 U.S. 181, 186

(1992).

"This Court previously recognized that 'a condominium's governing documents are contractual obligations between the condominium association and a condominium owner.'" 12/31/18 Order, 2018 WL 6841818, at *8 (brackets omitted) (quoting CV 16-448 8/30/17 Order, 2017 WL 3763843, at *8). A contractual relationship did exist between Plaintiffs and the AOAO. See id. at *5 ("Plaintiffs were members of the AOAO while they owned the Unit." (citations omitted)). Under that contract, Plaintiffs were obligated to pay association fees and, when they failed to do so, the AOAO had the ability to obtain a lien and seek satisfaction. Implicit in the AOAO's contractual right to lien recovery is the obligation that the AOAO act in good faith and pursue the recovery in a legally permissible manner. Cf. Kutkowski v. Princeville Prince Golf Course, LLC, 129 Hawai`i 350, 359, 300 P.3d 1009, 1018 (2013) ("'Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.'" (quoting Restatement (Second) of Contracts § 205 (1981)).

As this case currently stands, the AOAO obtained Plaintiffs' unit as a result of a nonjudicial foreclosure (a process to which the AOAO was not legally permitted to use at the time the contract was entered) and Plaintiffs sought damages resulting from this foreclosure by filing the instant action. Act 282 became law and now retroactively validates the AOAO's

nonjudicial foreclosure of Plaintiffs' unit and extinguishes

Plaintiffs' ability to recover for their wrongful foreclosure

claim.  Thus, the act does "interfere[] with a party's

reasonable expectations, and prevents the party from

safeguarding or reinstating his rights."  See Sveen, 138 S. Ct.

at 1822 (citations omitted).  A change in law does "trigger

Contract Clause scrutiny if [it] impair[s] the obligation of

pre-existing contracts, even if they do not alter any of the

contracts' bargained-for terms."  Gen. Motors, 503 U.S. at 189

(citations omitted).

All three parts of the first step of the analysis have

therefore been met.

## 2)  **Second Step**

The second step of the analysis - whether Act 282 is a

reasonable way to address a significant and legitimate public

purpose – requires scrutiny of the act's purpose which is to

"confirm[] the legislative intent that condominium associations

should be able to use nonjudicial foreclosure to collect

delinquencies regardless of the presence or absence of power of

sale language in an association's governing documents."  2019

Haw. Sess. Laws Act 282, § 1 at 780.  Because Act 282 benefits a

favored group and not a basic societal interest, it does not

appear to be enacted for the public good.  See, e.g., Allied

Structural Steel Co., 438 U.S. at 242 (stating it previously

upheld a mortgage moratorium law against a Contract Clause
attack because the state law "was enacted to protect a basic
societal interest, not a favored group," and was "appropriately
tailored to the emergency that it was designed to meet" (citing
Home Building & Loan Ass'n v. Blaisdell, 290 U.S. 398, 445-447
(1934))).  Most telling is that Act 282 serves to revive the
Part I process solely for condominium associations and without
the homeowner/consumer protections enacted by legislatures in
2012 and in subsequent years.  The Court therefore finds Act 282
does not address a significant and legitimate public purpose.

Act 282 therefore is unconstitutional because it
violates Plaintiffs' rights under the Contracts Clause of the
United States Constitution.

### b.   Due Process

As to the Due Process Clause in the Fourteenth
Amendment, the United States Supreme Court has stated: "Where a
state law . . . is challenged on due process grounds, we inquire
whether the State has deprived the claimant of a protected
property interest, and whether the State's procedures comport
with due process."  Lujan v. G & G Fire Sprinklers, Inc., 532
U.S. 189, 195 (2001) (citation omitted).

> The Fourteenth Amendment protects this
> interest, however, only from a deprivation by
> state action.  Private use of state-sanctioned
> private remedies or procedures does not rise to
> the level of state action.  See, e.g., Flagg

> Bros., Inc. v. Brooks, 436 U.S. 149 (1978). . . .
> But when private parties make use of state
> procedures with the overt, significant assistance
> of state officials, state action may be found.
> See, e.g., Lugar v. Edmondson Oil Co., 457 U.S.
> 922 (1982); Sniadach v. Family Finance Corp., 395
> U.S. 337 (1969).

Tulsa Prof'l Collection Servs., Inc. v. Pope, 485 U.S. 478, 485–86 (1988). Enacting a law does not constitute the type of "overt, significant assistance of state officials" that converts a private party's use of the remedies provided in the act into state action. See, e.g., Lugar, 457 U.S. at 932-33 (stating the Supreme Court "has consistently held that constitutional requirements of due process apply to garnishment and prejudgment attachment procedures whenever officers of the State act jointly with a creditor in securing the property in dispute"). Act 282's enactment cannot constitute state action and Plaintiffs' due process argument fails under federal law.

The analysis of whether there was a violation of the Due Process Clause of the Hawai`i Constitution has some distinctions from that under federal law. See, e.g., Lono v. Ariyoshi, 63 Haw. 138, 145, 621 P.2d 976, 981 (1981) (discussing the plaintiff's arguments based on the Hawai`i Constitution after holding that the state statute and state agency rule being challenged "did not clothe plaintiff with the requisite liberty interest which would have triggered the application of the procedural requirements under the fourteenth amendment of the

United States constitution"). No case law establishing that the
interpretation of the Due Process Clause of the Hawai`i
Constitution as to the state action requirement differs from
federal law has been brought to this Court's attention.
Plaintiffs' due process argument fails under Hawai`i law for the
same reasons under federal law.

c.  **Equal Protection**

A violation of the Equal Protection Clause of the
Fourteenth Amendment also requires state action. See, e.g.,
Akina v. Hawai`i, 141 F. Supp. 3d 1106, 1127 (D. Hawai`i 2015)
(citing Lugar, 457 U.S. at 935, 102 S. Ct. 2744 n.18).
Plaintiffs' federal equal protection argument is therefore
rejected for the same reasons as their federal due process
argument.

However, the Equal Protection Clause of the Hawai`i
Constitution appears to be interpreted differently.  In Shibuya
v. Architects Hawaii Ltd., the Hawai`i Supreme Court allowed the
individual plaintiff and one of the putative joint tortfeasors –
the only remaining defendant in the case – to pursue an equal
protection challenge to the statute of limitations barring the
plaintiff's claims against the other putative tortfeasors.  65
Haw. 26, 28-29, 647 P.2d 276, 278-79 (1982) (describing the
background of appeal).  The supreme court held that the
plaintiff and the remaining defendant had standing to pursue the

equal protection challenge, id. at 34, 647 P.2d at 282, and ultimately held that the statute violated the state Equal Protection Clause,[22] id. at 43, 647 P.2d at 288. Although Shibuya does not discuss the issue of whether state action is required, the fact that the supreme court addressed the equal protection challenge at all indicates that state action is not required. Because Shibuya has not been overruled and has precedential effect, and because Plaintiffs have standing to bring constitutional challenges to Act 282, Plaintiffs are entitled to bring an equal protection challenge to Act 282 under the Hawai`i Constitution.

In Shibuya, the Hawai`i Supreme Court stated:

> "The equal protection obligation . . . is not an obligation to provide the best governance possible." Schweiker v. Wilson, 450 U.S. 221, 230 (1981). "To be sure, the constitutional demand is not a demand that a statute necessarily apply equally to all persons." Rinaldi v. Yeager, 384 U.S. 305, 309 (1966). Yet even where a statute does not employ "a classification that is inherently invidious or that impinges on fundamental rights," the mandate is "that legislation classify the persons it affects in a manner rationally related to legitimate governmental objectives." Schweiker v. Wilson, supra, 450 U.S. at 230. To satisfy this "rational basis" test, "the classification must

---

[22] Although the holding was based on the state Equal Protection Clause, the supreme court's analysis was guided by United States Supreme Court decisions regarding the Equal Protection Clause in the Fifth Amendment and the Fourteenth Amendment. Shibuya, 65 Haw. at 43, 647 P.2d at 288.

be reasonable, not arbitrary, and must rest upon
some ground of difference having a fair and
substantial relation to the object of the
legislation, so that all persons similarly
circumstanced shall be treated alike."
F.S. Royster Guano Co. v. Virginia, 253 U.S. 412,
415 (1920).

65 Haw. at 35, 647 P.2d at 283 (footnote omitted).  Plaintiffs

argue Act 282 violates the state Equal Protection Clause because

there is no rational basis to "treat[] associations differently

from all other lien holders by allowing associations use of

Part I [(2010)] even though they do not hold mortgages

containing powers of sale, while denying that right to other

lien holders, such as holders of mechanic's and materialman's

liens."  [Mem. in opp. to AOAO Motion ("AOAO Opp."), filed

11/7/19 (dkt. no. 272), at 25 (citation omitted).]

Act 282 states:

The legislature finds that condominiums
provide a valuable housing resource in Hawaii,
especially with limited space available for new
development.  The structure of condominium
ownership requires each owner to share in the
total cost of maintaining common areas such as
building exteriors, landscaping, pool, and
recreation rooms, in addition to paying insurance
premiums.  All owners pay for such maintenance
through fees or dues.  The legislature further
finds that it is crucial that condominium
associations be able to secure timely payment of
dues to provide services to all residents of a
condominium community.

In 1999, the legislature noted "that more
frequently associations of apartment owners are
having to increase maintenance fee assessments
due to increasing delinquencies and related

42

enforcement expenses.  This places an unfair
burden on those non-delinquent apartment owners
who must bear an unfair share of common
expenses . . . ."  Moreover, lengthy delays in
the judicial foreclosure process exacerbated the
financial burden on association owners.  The
legislature determined that associations needed a
more efficient alternative, such as power of sale
foreclosures, to provide a remedy for recurring
delinquencies.

2019 Haw. Sess. Laws Act 282, § 1 at 779 (alteration in

Act 282).[23]  The fact that one owner's failure to pay condominium

association dues increases the proportion of common expenses

that the other owners must pay through their association dues

distinguishes liens for unpaid condominium association dues from

other types of liens, such as a mechanic's lien or a

materialman's lien.  This is a reasonable basis to treat holders

------------------

[23] Because Act 282, §§ 3 and 4 cannot be retroactively
applied to § 667-1 (2010) and § 514B-146(a) (2010), § 1 is
subsequent legislative history and arguably should not be
considered in the analysis of whether Act 282 violates the Equal
Protection Clause of the Hawai`i Constitution.  See supra
Discussion Section II.A.  However, the constitutional analysis
is in the alternative to the statutory interpretation analysis.
Even if this Court did not consider Act 282, § 1 in determining
whether there is a rational basis for the distinction between
lienholders, there are ample similar statements in the other
acts addressing issues related to condominium association liens
for delinquent assessments.  See, e.g., 2012 Haw. Sess. Laws
Act 182, § 1 at 630 (stating "[m]atters involving condominium
and other homeowner associations, including association liens
and the collection of unpaid assessments" were "among the[]
major issues" the Task Force addressed "over several public
meetings during the legislative interim of 2011"); 1999 Haw.
Sess. Laws Act 236, § 1 at 723 (legislative finding quoted in
Act 282, § 1).

of liens for delinquent condominium association dues differently from other lien holders, and there is "a fair and substantial relation[ship]" between the additional remedy accorded holders of liens for delinquent condominium association dues and the preservation of condominium ownership as a valuable housing resource.  See Shibuya, 65 Haw. at 35, 647 P.2d at 283.  There is a rational basis for the differential treatment, and Act 282 does not violate the Equal Protection Clause of the Hawai`i Constitution.

Plaintiffs also assert an equal protection violation because Act 282, §§ 3 through 5, "improperly grants immunity to [the] AOAO and other associations that committed wrongful foreclosures while discriminating against homeowners by arbitrarily, capriciously and unreasonably **depriving them of their property rights**."  [AOAO Opp. at 25 (emphasis added) (some citations omitted) (citing Shibuya v. Architects Hawaii, Ltd., 65 Haw. 26, 43, 647 P.2d 276, 288 (1982) (holding that equal protection is "a requisite 'both in the privileges conferred and the liabilities imposed.'")).]

Act 282 does deprive Plaintiffs of their property.  In this case, Plaintiffs were obligated to pay association fees for their condominium unit; became delinquent in their payment of those fees; the AOAO placed a lien on their unit based, in part, on those delinquencies; and they lost the unit when the AOAO

44

foreclosed upon that lien.  Act 282 will cause Plaintiffs' loss

of the unit in foreclosure in that it authorizes a foreclosure

not permitted by law at the time that the AOAO foreclosed on the

unit.  However, this is not disparate treatment between classes.

In <u>Shibuya</u>, the legislature bestowed immunity from a negligence

action to certain members of the construction industry

(architects, contractors and material suppliers) and denied it

to others (equipment manufacturers).  While troubled "by the

injustice of barring a suit," the Hawai`i Supreme Court

recognized that "fairness for defendants and the prompt

assertion of claims are proper legislative concerns, and

legislation must often favor a segment of society over others."

<u>Shibuya</u>, 65 Haw. at 40-41, 647 P.2d at 286.  It found that the

statute was constitutionally infirm in its treatment of a

manufacturer defending itself in litigation from a supplier of

materials, but did not do so in the treatment of a claimant for

damages (the plaintiff) and the defendants (construction

industry members).  <u>Shibuya</u> is thus not applicable here, and

Act 282 does not violate the Equal Protection Clause.

### d.  **Taking**

Plaintiffs' final constitutional argument is that

Act 282 would eliminate their "vested claims without providing

them just compensation," constituting a taking, in violation of

the Fifth Amendment of the United States Constitution and

45

article I, § 20 of the Hawai`i Constitution.  [AOAO Opp. at 25.]

The Fifth Amendment states, in pertinent part, "nor shall

private property be taken for **public use**, without just

compensation."  (Emphasis added); see also Stop the Beach

Renourishment, Inc. v. Fla. Dep't of Envtl. Prot., 560 U.S. 702,

713 (2010).[24]  Plaintiffs' unit was not taken for public use;

---

[24] In Stop the Beach Renourishment, the United States
Supreme Court stated:

> though the classic taking is a transfer of
> property to the State or to another private party
> by eminent domain, the Takings Clause applies to
> other state actions that achieve the same thing.
> Thus, when the government uses its own property
> in such a way that it destroys private property,
> it has taken that property.  See United States v.
> Causby, 328 U.S. 256, 261–262 (1946); Pumpelly v.
> Green Bay Co., 13 Wall. 166, 177–178 (1872).
> Similarly, our doctrine of regulatory takings
> "aims to identify regulatory actions that are
> functionally equivalent to the classic taking."
> Lingle v. Chevron U.S.A. Inc., 544 U.S. 528, 539
> (2005).  Thus, it is a taking when a state
> regulation forces a property owner to submit to a
> permanent physical occupation, Loretto v.
> Teleprompter Manhattan CATV Corp., 458 U.S. 419,
> 425–426 (1982), or deprives him of all
> economically beneficial use of his property,
> Lucas v. South Carolina Coastal Council, 505 U.S.
> 1003, 1019 (1992).  Finally . . . , States effect
> a taking if they recharacterize as public
> property what was previously private property.
> See Webb's Fabulous Pharmacies, Inc. v. Beckwith,
> 449 U.S. 155, 163–165 (1980).

560 U.S. at 713.  These cases clearly establish that, to
constitute a taking, there must be a government action that
deprived the plaintiff of his property or the use of his
property.

(. . . continued)

46

Plaintiffs lost their unit in foreclosure which resulted in personal use and gain by the AOAO.  The pending claim does not constitute property for purposes of the Fifth Amendment takings analysis.  See Bowers v. Whitman, 671 F.3d 905, 914 (9th Cir. 2012) ("The reason an accrued cause of action is not a vested property interest for Takings Clause purposes until it results in a 'final unreviewable judgment,' is that it is inchoate and does not provide a certain expectation in that property interest." (citation omitted)).  As there is not yet a "final unreviewable judgment" regarding the wrongful foreclosure claim, nor is there a "final unreviewable judgment" in another case holding that only a condominium association that had express agreement with the condominium owner providing for a power of sale could utilize Chapter 667, Part I (2010), this issue is not ripe.  Plaintiffs' argument that Act 282 violates the Takings Clause of the United States Constitution cannot be sustained.

As with the Fifth Amendment Takings Clause, article I, § 20 of the Hawai`i Constitution states: "Private property shall not be taken or damaged for public use without just compensation."  Plaintiffs argue the Takings Clause of the Hawai`i Constitution is interpreted differently and would prohibit the retroactive application of the statutory amendments

in Act 282 to this case.  See AOAO Opp. at 26 ("Retroactive application of a law that changes the substantive vested rights of a party is prohibited." (citing Kaho`ohanohano v. Dep't of Human Servs., 117 Haw. 262, 317, 178 P.3d 538, 591 (2008) (constitutionality of retroactive elimination of tort claim))). However, Kaho`ohanohano did not address whether retroactive application of a law constituted a taking, in violation of article I, § 20 of the Hawai`i Constitution, and thus cannot support Plaintiffs' position that the takings analysis under the Hawai`i Constitution is different from the takings analysis under the United States Constitution.

C.    **Ruling and Remaining Issues**

Based on principles of statutory interpretation, there is no portion of Act 282 applicable to the statutes at issue in the instant case, and thus Defendants' proposed interpretation of Act 282 is rejected.  Further, Act 282 cannot be enforced because it violates Plaintiffs' constitutional rights under the Contracts Clause of the United States Constitution.  As a result, it is not necessary to address Defendants' arguments regarding Plaintiffs' FDCPA claim and their IIED claim.

**CONCLUSION**

On the basis of the foregoing, the AOAO's Motion for Summary Judgment and Chow's Motion for Summary Judgment, both filed October 18, 2019, are HEREBY DENIED.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, April 10, 2020.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

RUDY AKONI GALIMA, ET AL. VS. ASSOCIATION OF APARTMENT OWNERS OF PALM COURT, ET AL.; CIVIL 16-00023 LEK-RT; ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

49